# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| **OUTMEMPHIS; MICHELLE ANDERSON; JANE DOE 2; JANE DOE 3; and JANE DOE 4,**<br><br>    **Plaintiffs,**<br>v.<br><br>**BILL LEE, in his official capacity as Governor of Tennessee; JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter of Tennessee; DAVID RAUSCH, in his official capcity as Director of the Tennessee Bereau of Investigation; and FRANK STRADA, in his offical capacity as Commissioner of the Tennessee Department of Correction,**<br><br>    **Defendants.**<br>------------------------------------------------------<br>**UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**STATE OF TENNESSEE, and TENNESSEE BUREAU OF INVESTIGATION,**<br><br>    **Defendants.** | **Case Nos.    2:23-CV-2670**<br>**2:24-cv-02101[1]**<br><br>**Chief Judge Lipman** |

## REPLY IN SUPPORT OF
## STATE OFFICIAL DEFENDANTS' MOTION TO STAY

---

[1] At the joint status conference on April 3, 2024, the Court granted the State Official Defendants' Motion for Leave to file a Reply, to which they attached a copy of their proposed Reply. (Dkt. 79-1.) Also at the conference, the Court consolidated the cases. The State Officials have made minor formatting alterations—such as changing the header of the Reply and changing the labels of the parties in the text of the Reply—to the proposed Reply to account for the consolidation of the cases. None of the substance of this Reply has been altered in relation to the proposed Reply attached to the State Official Defendants' Motion for Leave.

1

For the reasons addressed in Governor Lee's, Attorney General Skrmetti's, TBI Director David Rausch's, and TDOC Commissioner Frank Strada's ("State Official Defendants") Memorandum in support of their Motion to Stay[2] (Dkt. 77-1), these proceedings should be stayed until July 15, 2024. OUTMemphis's, Michelle Anderson's, and Jane Does #2-4's ("private plaintiffs") opposition to that motion is premised on a compilation of legal and factual errors. The State Official Defendants reply to address a few primary errors.

## ARGUMENT

### I. Plaintiffs Misread the Amendments.

The gravamen of the private plaintiffs' opposition to a stay is based on a misreading of the short bill that significantly alters the operative law in this case, 2024 Tenn. Pub. Acts, c. 545. Critically, the private plaintiffs inaccurately claim that the amendment "simply means that no one convicted of Aggravated Prostitution for the first time *after July 1, 2024* will have to register as a sexual offender." (Dkt. 78, at 2.) They are plainly wrong.

Public Chapter 545 is very clear. Come July 1, 2024, the subsections currently codified at Tenn. Code Ann. §§ 40-39-202(20)(A)(iii) and 40-39-202(31)(X) will be "amended by deleting the section in its entirety." 2024 Tenn. Pub. Acts, c. 545, §§ 2-3. Those subsections, respectively, define aggravated prostitution committed before July 1, 2010, as a "sexual offense," Tenn. Code Ann. § 40-39-202(20)(A)(iii), and aggravated prostitution committed on or after July 1, 2010, as a "violent sexual offense," Tenn. Code Ann. § 40-39-202(31)(X). That is important because the restrictions and obligations imposed by the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 apply to "offenders"—a term

---

[2] The State of Tennessee and Tennessee Bureau of Investigation ("State Entity Defendants") filed their own Motion to Stay (No. 2:24-cv-02101, Dkt. 19), to which the federal government has responded in opposition. The State Entity Defendants intend to file a separate reply in support of their own Motion.

2

defined by the Act as meaning "sexual offender, violent sexual offender and violent juvenile sexual offender," Tenn. Code Ann. § 40-39-202(9). *See, e.g.,* Tenn. Code Ann. §§ 40-39-203(a)(1) ("the offender shall register"); -211 ("no sexual offender . . . or violent sexual offender . . . shall knowingly establish a primary or secondary residence"); -213 ("Every offender . . . shall be responsible for obtaining a valid driver license or photo identification card that has been properly designated . . ."). So, come July 1, 2024, when aggravated prostitution is completely removed from the definition of "offender," "sexual offender," and "violent sexual offender"—the provisions applicable to those classes of individuals will, by *immediate* operation of statute, no longer be triggered by an aggravated prostitution conviction.

Beyond being just wrong about what the law says, the private plaintiffs' feigned confusion[3] about what might happen after July 1, 2024, actually supports Defendants' arguments for a stay. Even if the new law was as confusing as the private plaintiffs suggest, that would be all the more reason to avoid wasting time and resources on the private plaintiffs' imaginative theories that are not embraced by the operative complaint.

## II. Plaintiffs Gloss Over the Centrality of SOR Requirements to their Allegations.

The private plaintiffs also jump the gun by trying to proactively brief whether, come July 1, their claims will be moot. (Dkt. 78, at 4.) They fault the State Official Defendants for not

---

[3] Plaintiffs own lawyer—who offers to testify for his clients if asked to do so—has submitted a declaration about the effects of a different amendment to support Plaintiffs' conjecture about how the TBI will react to Public Chapter 545. (Dkt. 78-1.) But, as Plaintiffs admit, they are entirely without knowledge about whether their speculation is founded on "TBI inaction, substantial noncompliance-based denials, or something else entirely." (Dkt. 78, at 4.) Plaintiffs insinuate that the TBI is to be blamed. Of course, the most obvious "something else entirely" Plaintiffs leave out is that the individuals their lawyer submitted a declaration about have simply declined to request termination—something the TBI has no control over. That sort of speculation about facts is one reason why counsel is cautioned against acting "as an advocate at trial" if the lawyer is also "likely to be a necessary witness." Tennessee Supreme Court Rule 8, Rule of Professional Conduct 3.7; *see General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 712 (6th Cir. 1982) ("The experience of the bar and its collective voice in the ABA Canons demands the separation of the roles of advocate and witness.").

advancing a full-throated mootness argument in their Motion to Stay. But whether the private plaintiffs' claims are in fact moot is a question that is not yet ripe nor dispositive of the question of whether to stay the case.

The State Official Defendants asserted that "the new statutory amendments will likely render several of [Plaintiffs'] claims moot." (Dkt. 77-1, at 5.) Based on the analysis in Part I, *supra*, the State Official Defendants believe that prediction will come true. But it is a prediction, and it is not necessary for the State Official Defendants to prove now that the private plaintiffs' claims are moot. The burden for the State Official Defendants in this motion is to show a "pressing need for delay, and that neither the other party nor the public will suffer harm from entry of the order." *Ohio Env't Council v. United States District Court, S. Dist. of Ohio*, 565 F.2d 393, 396 (6th Cir. 1977). The State Official Defendants have done that by showing that discovery about the current state of affairs is likely to be obsolete or in need of significant duplication and that neither party will be prejudiced by the requested stay.

By spending their time proto-briefing the question of mootness, the private plaintiffs ignore that their own Amended Complaint makes changes to the SOR statutes critical to this litigation. As noted in the State Official Defendants' Memorandum, *every single count* of the private plaintiffs' complaint refers to the impact of registration as support for their claims. (Dkt. 62, ¶¶ 373, 379, 384, 389, 395, 402, 408, 417, 427, 432.) And the facts about what Tennessee law requires of individuals convicted of aggravated prostitution are about to be substantially altered come July 1. That change in circumstances is more than enough to justify a stay until July 15, 2024. (Dkt. 77-1, at 4-5 (collecting authorities)).

### III. Plaintiffs Misstate the Argument Raised by Governor Lee and General Skrmetti

The private plaintiffs inexplicably and inaccurately state that "Defendants simultaneously seek to stay the Court's resolution of the Motion to Dismiss *and* stay discovery pending that

4

(stayed) determination." (Dkt. 78, at 7.) The State Official Defendants did no such thing. In the State Official Defendants' Memorandum, Defendants asserted very plainly that, independent of the effect of enacted legislation, "Sovereign Immunity Requires at Least a Partial Stay of Discovery." (Dkt. 77-1, at 6; *see also* Dkt. 77-1, at 6 ("discovery must be stayed"), 7 ("courts routinely defer discovery from defendants who have moved for dismissal")). That narrower proposition is true whether the entire proceedings are stayed or not.

The private plaintiffs overcomplicate two simple, independent arguments. In Part I of the State Official Defendants' Memorandum, Defendants showed why a stay of all proceedings is warranted. In Part II of their Memorandum, Governor Lee and General Skrmetti showed why discovery must be stayed as to them. As explained in the Memorandum, because discovery must be stayed as to two defendants, and because courts often halt all discovery when sovereign immunity is raised by some defendants, the State Official Defendants' argument in Part I is strengthened. If the Court agrees with Defendants in Part II that a stay of discovery is warranted as to some or all State Official Defendants, the prejudice to the private plaintiffs of a full stay of proceedings, as requested in Part I, is even further diminished.

**IV.    Plaintiffs Omit Critical Facts when Alleging "Sandbagging."**

The private plaintiffs finally accuse the State Official Defendants of "sandbagging" because Defendants advocated for a standard-track scheduling order at the parties' scheduling conference in November of last year. But the private plaintiffs' selective quotations misstate the State Official Defendants' position in November of last year and fail to acknowledge clearly critical facts.

First, of course, the State Official Defendants were unaware in November of 2023 that the Governor would sign a bill amending significant portions of the statutes challenged in this case in March of 2024. The Governor signed Public Chapter 545 on March 11, 2024, and Defendants

5

filed their Motion to Stay on March 29, 2024.  That two-week interval, during which Defendants conferred openly with Plaintiffs about the effect of the amendment on this litigation, can hardly be called "sandbagging."

Second, the State Official Defendants have been frank with the private plaintiffs' counsel since early Rule 26(f) discussions about their skepticism that the private plaintiffs could seek any discovery from Governor Lee or General Skrmetti.  The State Official Defendants advocated for a standard-track scheduling order as opposed to the private plaintiffs' proposed order that would have segregated litigation on the private plaintiffs' ADA claims from the rest of this case.  The reason to choose a standard-track schedule, as Defendants asserted prominently in their position statement, was that "the discovery necessary to defend against all of Plaintiff's claims will substantially, if not entirely, overlap with the discovery necessary to defend against Plaintiffs' ADA claims."  (Dkt. 47, at 9.)  The private plaintiffs' proposed order was not an offer to stay discovery as to Governor Lee and General Skrmetti, but rather to expedite the State Official Defendants' defense of specific claims of their complaint while leaving others to be relitigated later if the private plaintiffs did not achieve a satisfactory outcome in their first bite at the apple.  Defendants were not required to assent to inefficient expedited litigation in order to maintain the protections of sovereign immunity.  Moreover, it was reasonable for Governor Lee and General Skrmetti to wait to seek a stay until after putting sovereign immunity at issue in their Motion to Dismiss and receiving written discovery requests directed solely at them from the private plaintiffs.  *Cf. Ogden v. Michigan Dept. of Corrections*, No. 07-cv-10111, 2009 WL 10680505, at *3 (E.D. Mich. Mar. 20, 2009) (permitting sovereign immunity defense to be raised by motion filed more than two years after commencement of litigation) (citing *Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 362 (E.D. Va. 2004).

It is still more efficient to conduct discovery on all claims at the same time instead of bifurcating some claims from others. But that discovery must wait until Governor Lee's and General Skrmetti's assertions of sovereign immunity are resolved. *See Everson v. Leis*, 556 F.3d 484, 491 (6th Cir. 2009) (explaining that sovereign immunity protects a defendant from "the rigors of litigation itself, including the potential disruptiveness of discovery"). Because sovereign immunity mandates at least a partial stay of discovery, and because the changes to the law coming on July 1, 2024, warrant a stay of all proceedings, the Court should stay proceedings until July 15, 2024.

## CONCLUSION

The State Official Defendants' Motion to Stay should be granted.

Respectfully Submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Cody N. Brandon*
CODY N. BRANDON (BPR# 037504)
Managing Attorney
Senior Assistant Attorney General

JOHN R. GLOVER (BPR # 037772)
Assistant Attorney General

DAVID RUDOLPH (BPR# 13402)
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
PO Box 20207
Nashville, TN  37202
Off. (615) 532-7400
Fax (615) 532-4892
Cody.Brandon@ag.tn.gov
John.Glover@ag.tn.gov
David.Rudolph@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2024, a true and exact copy of the foregoing was served via the court's electronic filing system upon counsel as follows:

Stella Yarbrough (BPR No. 033637)
Jeff Preptit (BPR No. 038451)
Lucas Cameron-Vaughn (BPR No. 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.rog
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Alex Agathocleous (NY Bar 4227062)
Alexis Alvarez (NY Bar 5854278)
Jon W. Davidson (CA Bar 89301)
Rachel Meeropol (NY Bar 4100954)
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclus.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Lynly S. Egyes (NY Bar 4838025)
Milo Inglehart (NY Bar 5817937)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert (NY Bar 5366554)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for the private plaintiffs*

Stephanie Berger
Ali Szemanski

U.S. Department of Justice
150 M Street NE
Washington, DC 20002
*Counsel for the United States*

　　　　　　　　　　　　　　　　　　　　*/s/ Cody N. Brandon*
　　　　　　　　　　　　　　　　　　　　CODY N. BRANDON

Case 2:24-cv-02101-SHL-tmp   Document 24   Filed 04/03/24   Page 9 of 9   PageID 122