1

1          IN THE UNITED STATES DISTRICT
       FOR THE WESTERN DISTRICT OF TENNESSEE
2                  WESTERN DIVISION
3 ═══════════════════════════════════════════════

OUTMEMPHIS; JANE DOE 1; JANE DOE2;
4 JANE DOE 3; and JANE DOE 4,

5          Plaintiffs,
   Vs.                                NO. 2:23-cv-2670
6
   BILL LEE, in his official capacity as
7 Govenor of Tennessee; JONATHAN
   SKRMETTI, in his official capacity as the
8 Attorney General and Reporter of
   Tennessee; DAVID RAUSCH, in his official
9 Capacity as Director of the Tennessee
   Bureau of Investigation; and FRANK STRADA,
10 In his official capacity as Commissioner
   Of the Tennessee Department of Correction,
11
12          Defendants.

   UNITED STATES OF AMERICA
13
14          Plaintiff,

   Vs.                                NO. 2:24-cv-2101
15
   THE STATE OF TENNESSEE AND THE
16 TENNESSEE BUREAU OF INVESTIGATION,

17          Defendants.
18 ═══════════════════════════════════════════════

            STATUS CONFERENCE (TEAMS)
19
       BEFORE THE HONORABLE SHERYL H. LIPMAN
20
                  Wednesday
21
               3rd of April, 2024
22

23
            CANDACE S. COVEY, RDR, CRR
24              OFFICIAL REPORTER
            FOURTH FLOOR FEDERAL BUILDING
25            MEMPHIS, TENNESSEE 38103


            UNREDACTED TRANSCRIPT

1                A P P E A R A N C E S

2

3  Appearing on behalf of the Plaintiffs:

4          ALEXIS AGATHOCLEOUS
           RACHEL MEEROPOL
5          JON DAVIDSON
           American Civil Liberties Union
6          125 Broad Street
           New York, NY 10004
7          (929)585-0061

8          MILO INGLEHART
           Transgender Law Center
9          594 Dean Street
           Suite 11
10         Brooklyn, NY 11238
           (510)587-9696
11
           JEFF PREPTIT
12         ACLU of Tennessee
           P.O. Box 120160
13         Nashville, TN 37202
           (423)383-3577
14

15  Appearing on behalf of the State of Tennessee:

16         CODY BRANDON
           Tennessee Attorney General's Office
17         P.O. Box 20207
           Nashville, TN 37202
18         (615)532-7400

19         DAVID RUDOLPH
           Tennessee Attorney General's Office
20         40 South Main Street
           Suite 1014
21         Memphis, TN 38103
           (901)543-4162
22
           JOHN GLOVER
23         Tennessee Attorney General's Office
           500 Charlotte Avenue
24         Nashville, TN 37202
           (615)253-1103
25

                    UNREDACTED TRANSCRIPT

3

```
 1   Appearing on behalf of the United States:

 2              STEPHANIE BERGER
                DOJ-CRT
 3              150 M Street NE
                Washington, DC 20002
 4              (202)353-5101

 5              ALI SZEMANSKI
                U.S. Department of Justice
 6              Civil Rights Division, Disability Rights Section
                150 M Street NE
 7              Washington, DC 20002
                (202)568-3884

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNREDACTED TRANSCRIPT

```
1              Wednesday

2              April 3, 2024

3        The Proceedings in this case began on this date,

4   Wednesday, 3rd day of April, 2024, at 9:30 a.m., when and

5   where evidence was introduced and proceedings were had as

6   follows:

7              ----------------------

8

9        THE COURT:  Good morning.  Looks like we've got a

10  of folks.  Let me sort of start taking roll.

11             So this is the status conference of Out Memphis

12  versus Bill Lee, et al., 23-2670, and the status/scheduling

13  conference in USA v State of Tennessee and TBI, which is

14  24-2101.

15             All right.  For Out Memphis -- why don't we

16  just -- who is here for Out Memphis?

17       MS. MEEROPOL:  Good morning, Your Honor.  Rachel

18  Meeropol for Plaintiffs and Out Memphis.  I'm joined by my

19  colleagues at ACLU National, ACLU of Tennessee and the

20  Transgender Law Center.

21       THE COURT:  All right.  If you would introduce

22  everyone so we have exactly who is here for those entities.

23       MS. MEEROPOL:  Yes.  We have Alexis Agathocleous

24  and Jon Davidson joining me from ACLU National, Jeff Preptit

25  from ACLU of Tennessee, and Milo Inglehart from the
```

UNREDACTED TRANSCRIPT

1    Transgender Law Center.

2              **THE COURT:**  I'm checking people off.  The last

3    person, Sheila -- what did you say, Sheila --

4              **MS. MEEROPOL:**  Milo.  Milo with an M.

5              **THE COURT:**  Milo Inglehart?

6              **MS. MEEROPOL:**  Yes.

7              Milo, please correct me if I'm mispronouncing

8    your last name.

9              **THE COURT:**  They say no.

10             And then for the State, for the Governor, let's

11   see who we've got.

12             **MR. BRANDON:**  Good morning, Your Honor.  This is

13   Cody Brandon from the Tennessee Attorney General's Office.

14             **THE COURT:**  Okay.

15             **MR. BRANDON:**  I'm here this morning on behalf of

16   Defendants in both cases, if it saves Your Honor any

17   repetition.

18             **THE COURT:**  Right.

19             **MR. BRANDON:**  I also have David Rudolph from our

20   Memphis office and John Ross Glover from our Nashville office

21   on the call with us.

22             **THE COURT:**  All right.  Let me get rid of my

23   e-mail so that we don't have those things popping up.

24             All right.  And then for the United States.

25             **MS. BERGER:**  Good morning, Your Honor.  I'm

UNREDACTED TRANSCRIPT

1    Stephanie Berger on behalf of Plaintiff, United States, and

2    I'm joined by my colleague, Ali Szemanski.

3            **THE COURT:**  Okay.  Great.

4            Has everyone been introduced?

5            All right, awesome.

6            So the first issue I'll address is the motion to

7    stay.  So this morning, we got from Defendants in the Out

8    Memphis case, obviously defendants in both, but I think it

9    was filed in the Out Memphis case, the motion to file a reply

10   brief.  They indicate, I believe, that the Plaintiffs, at

11   least in the Out Memphis case, don't oppose the filing of the

12   reply brief.

13           Do the Plaintiffs in the United States case

14   oppose the filing of the reply brief?

15           **MS. BERGER:**  No, Your Honor.  We haven't seen a

16   request to file a reply brief, but we would not oppose that.

17           **THE COURT:**  Okay.  Mr. Brandon.

18           **MR. BRANDON:**  Yes, Your Honor.  Having received

19   the United States's response just late yesterday afternoon, I

20   haven't had time to consult with Ms. Berger.  I appreciate

21   the preemptive agreement on leave to file a reply.  We do

22   intend to file a motion for leave and attach the reply in the

23   US case, as well.  It will cover substantially similar

24   material, but there obviously are some small points of

25   difference that need to be addressed with the US case.

1        **THE COURT:**  All right.  Let me -- so in the Out

2   Memphis case, the motion, which is ECF 79, I'm going to

3   grant, and Defendants need to file the motion -- or the --

4   excuse me, the reply as a separate docket entry within three

5   days of today.  So today is Wednesday, certainly by Monday.

6   I hope you can file it by the end of this week.

7        **MR. BRANDON:**  Of course, Your Honor.

8        **THE COURT:**  In the other case, the United States

9   case, I am granting your oral motion to file the reply brief,

10  so that saves you a step.  So get that on the docket within

11  three days of today, as well.  Okay?

12        **MR. BRANDON:**  Understood, Your Honor.

13        **THE COURT:**  All right.  Anything else on the

14  reply brief part of that?

15        I'll say for the record what I -- before I saw

16  that this morning, what I intended to say this morning about

17  the motion to stay is, at this point, I don't see any reason

18  to not go forward with the scheduling conference.  That's not

19  a ruling on the motion to stay, but I don't see any reason --

20  as I -- I'll just leave it at that.  I don't see any reason

21  to not go forward with the motion to stay -- I mean, excuse

22  me, with the scheduling conference.

23        All right.  The other issue is the motion to

24  consolidate, which is why we asked the Out Memphis people to

25  join us this morning.  There was some indication, I guess, in

1  the Out Memphis side of -- in the Out Memphis case that -- I

2  guess opposition because you wanted to sort of make sure

3  that -- well, the way I viewed it is you wanted to know sort

4  of the details of what consolidation meant before agreeing to

5  it.

6          Would that be a fair statement?

7          **MS. MEEROPOL:**  That's fair, Your Honor.  And I'm

8  happy to sort of share our concerns now, if that would be

9  helpful.

10          **THE COURT:**  Yes, it would be.  Thank you.

11          **MS. MERROPOL:**  Okay.  So in general, you know, if

12  the Court thinks consolidation would be efficient, we don't

13  oppose it.  We do think some of those efficiencies could be

14  obtained, whether or not the cases are consolidated.  So for

15  example, we seem to be going forward on a similar schedule.

16  We can coordinate status conferences.  Depositions should

17  be -- identical witnesses be identified.  It feels as though

18  all of those efficiencies can happen whether or not the cases

19  are consolidated.  So it's not entirely clear to us what

20  efficiency would come with consolidation.

21          And then we have three concerns with respect to

22  how consolidation might operate.  First we noticed a footnote

23  in the Rule 26(f) report in the United States's case,

24  indicating that if the Court were to order consolidation, the

25  schedule might change.  We don't understand why consolidation

9

1    would result in any change in the schedule, especially since

2    it appears as though those schedules are coordinated so far.

3    And we don't want any delay in the case.

4           Second, we've agreed to a relatively streamlined

5    discovery plan, for example, on the eight depositions.  So we

6    would be concerned that consolidation not operate to limit

7    the number of depositions that we are entitled to and other

8    discovery mechanisms.

9           Third, our case involves quite a few

10   constitutional claims that the United States isn't bringing.

11   So we think it wouldn't make sense to have any joint briefing

12   on dispositive motions, that that would present, you know,

13   logistical difficulties without any benefit.

14          Those are the three concerns we have with respect

15   to consolidation.

16          **THE COURT:**  Okay.  Mr. Brandon.

17          **MR. BRANDON:**  Yes, Your Honor.  And I guess I'll

18   lead by saying I understand Ms. Meeropol's concerns and don't

19   intend to make those concerns a reality, I guess.  The main

20   benefit of consolidation in the Defendant's opinion for both

21   cases is for case management purposes.

22          The footnote in the scheduling order, I think,

23   was intended to refer to the fact that in a consolidated

24   case, it would be appropriate to adjust details of the

25   scheduling order, just to make sure that both cases lined up.

UNREDACTED TRANSCRIPT

1   For instance, there's differences in the deadline to complete

2   written discovery in both cases, and I think it would make

3   sense to sync up those calendars, not in a way that I think

4   would do prejudice to any party, but just to keep everything

5   on the same track.

6         As Ms. Meeropol alluded to, there's agreements

7   about the number of depositions to be taken in the private

8   case.  I don't think that those would be imposed on the US or

9   altered, but I think it would be good if a scheduling order

10  addressed how depositions would be managed in both cases.

11        So any changes to the scheduling order, the

12  Defendants anticipate obviously setting aside the motion to

13  stay.  We're really just acknowledging that for case

14  management purposes, there may be small details that have to

15  be worked out with the logistics of having two cases on the

16  docket.  But we do think there's a number of benefits in, for

17  example, lining up the deadlines for written discovery or

18  fact witness discovery that Defendants can arrange for

19  depositions of witnesses with both Plaintiffs' counsel,

20  whether those occur at the same time with all counsel in the

21  room or occur with separate counsel in the room, but are

22  arranged with dates that aren't conflicting with each other.

23        If we have differing deadlines or -- you know,

24  hopefully we don't have any motions to move deadlines in the

25  scheduling order in the future, but if they moved in one case

UNREDACTED TRANSCRIPT

1   and we ended up having a fact witness deposition deadline two

2   months ahead in one case of what we have in the other, it

3   just seems like a recipe for a bit of confusion and chaos,

4   and ultimately prejudice to the Defendants in terms of

5   duplicating efforts in both cases without having them managed

6   on the same docket.

7          I think as we noted in the motion to consolidate,

8   we think it's probably premature to address things like joint

9   trial and, you know, joint briefing.  I don't think it would

10  be necessary for dispositive motions unless the parties agree

11  that that be a more efficient -- the primary purpose of

12  consolidation would be for case management purposes.

13         **THE COURT:**  I think Ms. Meeropol's point that

14  everything could be coordinated without consolidation, you

15  know, is an interesting way to put it, but the other -- the

16  other side of that is, you know, why not consolidate it to

17  just make it clear on the record that things are being done,

18  you know, for example, a deposition is being taken, you know,

19  in both cases.

20         I think consolidation makes sense, and I think we

21  can work around Ms. Meeropol's concerns, which are real

22  concerns.  So I'm going to grant the motion to consolidate

23  the cases.  And I'll add on top of it, it's really helpful

24  for us, for the Court, to make it clear that, you know, if I

25  have a hearing in one, it's a hearing in both because they're

12

1    consolidated cases.  It really makes it a lot easier to

2    manage things.

3              Let's talk about, though, the things that -- the

4    issues that Ms. Meeropol raised.  Mr. Brandon is right.  I

5    think he -- you made it sound like there may be other dates

6    that are different than just the one.  I saw only the one

7    date that is different in the two schedules, and that is the

8    document production and interrogatory date for the DOJ action

9    is proposed to be October 28th.  And it's July 12th in the

10   Outright Memphis case.

11             I guess, Ms. Meeropol, do you -- is there any

12   issue with just -- with having written discovery, October 28

13   as the deadline in the Outright Memphis case?

14             And let me say on the front end, Outright Memphis

15   got a schedule that you, frankly, would not have gotten if --

16   if I were doing the scheduling conference.  I really

17   appreciate Judge Claxton stepping in for me.  It really

18   helped with a number of things going on at that point in

19   time.  But man, y'all got a dream schedule.

20             I don't know why -- tell me, before we get into

21   the details of some of this stuff, why do you all need this

22   much time for expert discovery?  And gosh, why do you need --

23   I think it's six months between -- maybe it's not six months.

24   I don't know.

25             Why do you need that much time for expert

UNREDACTED TRANSCRIPT

1    discovery?  Because it seems to me, as I understand the case,

2    you could start expert discovery now, because you know what

3    your expert discovery is all about.

4          **MS. MEEROPOL:**  Well, Your Honor, the period for

5    expert discovery is based on our sense that there's going to

6    be a significant number of experts necessary for the registry

7    claims, specifically, not for other claims.  And so, we just

8    wanted to make sure that we had adequate time to engage in

9    all of that work and then analyze all of that work prior to

10   any potential motions for summary judgment.

11          I would have to take a look at the schedule now,

12   especially with the new deadline potentially applicable for

13   written discovery, which I don't see as a problem, to

14   determine if there's any way to shave, you know, a month or

15   so off it, which we're certainly open to try.  I would be

16   happy to take a look at that and see if we could shave

17   deadlines there if you like.

18          **THE COURT:**  No.  I mean, I thought about it, but

19   I don't -- because you all got this schedule, I guess, was

20   this -- I don't remember when you all had the hearing.  But

21   because you've got the schedule, I'm not going to say we

22   should change it at this point.

23          But I will say, there is no way anyone's getting

24   an extension of time in this case.  There's no reason for it.

25   You've got plenty of time to get done what you need to get

1   done.  But no, I appreciate the offer to look at the

2   schedule, but I'm not asking you to change it at this point.

3   I just was curious because, again, seems like you know what

4   you're going to look to your experts to do right now.  So you

5   really have more -- from the time you got this schedule, you

6   have more than a year to even disclose experts, which is

7   obviously, in my mind, an inordinate amount of time.  But

8   I'll leave it where it is.

9           So October 20 -- as I said, October 28 is the

10  only difference I saw in the two schedules.  So any issue

11  with that, Ms. Meeropol?

12          **MS. MEEROPOL:**  No.  That's fine, Your Honor.

13          **THE COURT:**  Okay.  And so, I don't see anything

14  else that would change with the schedule.

15          In terms of the streamline deposition plan in the

16  Out Memphis, what I heard Mr. Brandon say, and tell me if

17  this is right, is that -- and maybe I need to hear from the

18  United States on this issue, but what I heard is you all

19  won't disturb that.  Is that right?

20          **MR. BRANDON:**  I think that's right, Your Honor.

21  I believe maybe in our 26(f) report, we addressed, you know,

22  the number of depositions and interrogatories.  I think

23  that's -- in our perspective, that's fine to keep the same

24  for the Out Memphis and proceed with that.  And we'll just

25  really work on schedule coordination in terms of the cases

1   being consolidated.

2          **THE COURT:**  And what is the United States's

3   position on that issue?

4          **MS. BERGER:**  Your Honor, the United States has no

5   problem with coordinating to the greatest extent possible for

6   depositions and discovery and all those things.

7          **THE COURT:**  Okay.  I'm not sure I heard that you

8   all agree to the same plan as Outright Memphis.

9          **MS. BERGER:**  I believe we had ten depositions in

10   our scheduling order and they have eight.  So I think that

11   would be the only difference.

12          They might actually have more requests for

13   production than us, as well.  I think they might have 30

14   interrogatories and we have 25.  So to the extent that you're

15   wanting to line all of those up to be exactly the same, there

16   are a few differences there.

17          **THE COURT:**  Well, I guess let's talk about that.

18   Is there any -- just because the cases are consolidated, I'm

19   not sure there's a reason that something couldn't happen in

20   one case that the parties in the other case don't feel like

21   they need to do.  I'm trying to think that through.

22          Ms. Meeropol, what do you think, since this is

23   your issue?

24          **MS. MEEROPOL:**  We have no concerns with our

25   schedule, our number of interrogatories and depositions as it

1   is or the United States having something slightly different.

2   It doesn't present any concerns to us.

3            **THE COURT:**  All right.  So that issue is taken

4   care of.

5            In terms of the joint briefing on dispositive

6   motions, I think we don't -- you know, we don't make a final

7   decision on that at this point.  I'll tell you that to the

8   extent that the issues being briefed are the same in both

9   cases, it sure would help if that briefing is at least

10  coordinated, but I recognize there could be different issues.

11           Let's just talk about that as we get closer or

12  you all talk about that and see if you can work it out.  And

13  if you -- if there are questions about it, we can deal with

14  it at the time.

15           This doesn't -- to me, this doesn't tell us

16  anything about where we might be going with trial.  I'm

17  not -- we're not making any other decisions about this --

18  coordination of a trial at this point.  The concept of the

19  consolidation for me is, it helps us to keep the cases

20  together.  For you all, the way I see it is it just makes it

21  clear that the discovery you're taking can be -- should be

22  coordinated so that it applies in both cases.

23           Any questions about what consolidation means at

24  this point?

25           **MS. MEEROPOL:**  No, Your Honor.  Thank you.

UNREDACTED TRANSCRIPT

1          **MS. BERGER:**  None from us, Your Honor.

2          **THE COURT:**  Okay.  And Mr. Brandon?

3          **MR. BRANDON:**  All clear.  Thank you, Your Honor.

4          **THE COURT:**  All right.  And so, for the record,

5    this means we're -- I'm granting ECF 76 in the Out Memphis

6    case, and -- I think I had -- too many documents.

7          **MS. MEEROPOL:**  Your Honor, I believe ECF 76 may

8    be the motion for the stay.  I apologize if that's incorrect.

9          **THE COURT:**  It's -- I'm looking at it.  It's the

10   motion to consolidate in Out Memphis.

11         **MS. MEEROPOL:**  Okay.  Apologies.

12         **THE COURT:**  No worries.

13         But I can't find the ECF number for the motion to

14   consolidate in the United States' case.  Does someone have

15   that handy?

16         **MS. BERGER:**  Your Honor, I believe it's 15.

17         **THE COURT:**  Okay.

18         **MR. BRANDON:**  I think that's correct.

19         **THE COURT:**  All right.  So ECF 15 in the United

20   States of America versus State of Tennessee then is granted.

21         Let me ask a couple questions about the case

22   substantively.  So as I understand the challenge -- the

23   challenges here, I saw three primary challenges; one to the

24   registration requirement for the aggravated prostitution

25   charge, one to the fact that it makes the charge go from a

1    misdemeanor to a felony, and then finally that someone who's

2    charged with aggravated prostitution is ineligible for

3    judicial diversion.

4              Are those the three primary arguments?  Am I

5    missing something?

6              **MS. MEEROPOL:**  Well, I can begin, Your Honor.  I

7    think it's the entire enforcement of the aggravated

8    prostitution charge as a whole here in terms of

9    discriminating on the basis of disability, because of

10   disability functioning as an element in that charge.  And

11   then separately, yes, the fact that it then qualifies an

12   individual for registration.

13             **THE COURT:**  Ms. Berger.

14             **MS. BERGER:**  I think that's right, Your Honor.  I

15   agree with Ms. Meeropol's representation.

16             **THE COURT:**  Okay.  And I guess my description

17   maybe skipped a step.  So the idea is that because the

18   aggravated prostitution in the Plaintiff's eyes includes an

19   element of disability, because of the HIV status, then the

20   impact of being charged with that -- there are three ways in

21   which the impact of being charged with that has on the person

22   in your eyes.  It's -- and it's the three things that I

23   mentioned; is that correct?

24             **MS. MEEROPOL:**  Those three things, certainly.

25   There's a stigma attached to disability discrimination, as

1   well, that I think is important to acknowledge and impacts

2   our clients considerably.

3        **THE COURT:**  Okay.

4        **MS. MEEROPOL:**  And then I think Your Honor's

5   description also took into account the qualification for sex

6   offender registration, of course, which is a separate claim

7   but also operates significantly in terms of what aggravated

8   prostitution means.

9        **THE COURT:**  Right.  That was the registration

10  requirements.

11       And some of this goes to the issue of the stay.

12  So to the extent that the new legislation changes the

13  registration requirement -- and again, I'll, you know, hear

14  from the Defendants in the reply brief or anything else you

15  want to add.  I guess you attached the reply brief, but

16  frankly, I didn't have a chance to read it.

17       But the point on the stay is -- from the

18  Plaintiff's perspective, I guess, is the new legislation goes

19  to the registration requirements but not the statute as a

20  whole; is that correct?

21       **MS. MEEROPOL:**  Somewhat, Your Honor.  So it's

22  true that the new legislation means that individuals who are

23  convicted of aggravated prostitution after July 1st, 2024

24  will not need to register.  However, it doesn't have an

25  immediate impact on individuals like our clients who are

1    already registered.

2            And I think this is actually -- this sort of

3    misunderstanding between the parties is crystalized in

4    Defendants' proffered reply brief.  So I'd love to take a

5    minute to sort of lay out where I think the disconnect is, if

6    that might be helpful to Your Honor.

7            **THE COURT:**  Sure.

8            **MS. MEEROPOL:**  Thanks.

9            So, you know, the Defendants are pointing to

10   Sections 2 and 3 of SB 181, which are the provisions that

11   remove the requirement for individuals convicted of

12   aggravated prostitution to register as sexual offenders or

13   violent sexual offenders, and seem to be implying in the

14   reply that that means something for individuals who are

15   already on the registry as of the current date.

16           However, we know from Section 5 of SB 181 exactly

17   how those individuals, which include our clients, will be

18   impacted, because Section 5 of the new law directs the

19   individuals already on the registry for aggravated

20   prostitution before 2024 may request termination through TBI.

21   And then that provision of the code then goes on to clarify

22   what a termination request will look like, and it's not

23   automatic.

24           It requires a background check -- first of all,

25   it requires an individual seeking termination affirmatively.

1  Secondly, it requires a background check by TBI, a TBI

2  finding of substantial compliance or no substantial

3  noncompliance, it's not clear which.  There's a five-year ban

4  if an individual is found not to be qualified for

5  termination.  And there's no sort of published guidelines as

6  to how TBI determines whether there is substantial compliance

7  or not.

8          And we've seen how this process operates because

9  a similar process is now available to individuals who were on

10  the registry for criminal exposure to HIV.  And we see that

11  it does not result in individuals immediately coming off the

12  registry.

13          Fundamentally, this means that Tennessee is

14  retaining the authority to impose the registry restrictions

15  against our clients and others who are on the registry solely

16  for aggravated prostitution.

17          Now, if TBI disagrees that they retain that

18  statutory authority, I believe that SB 181 means that

19  individuals who are solely on the registry as a result of

20  aggravated prostitution have the right to immediate removal

21  from the registry, we are thrilled to hear that and we would

22  like to hear that on the record and we think in that case,

23  you know, it would really make sense for us to get together

24  and see if we can settle our registry claims.  But that is

25  not the way we currently read this new law.

1          **THE COURT:**  Mr. Brandon.

2          **MR. BRANDON:**  Yes, Your Honor.  Two related

3     points, I guess.  I think Ms. Meeropol is right that there's

4     maybe some different perspectives as to the operation of

5     Public Chapter 545 between the Plaintiffs and the Defendant.

6          Ultimately as set out in the Defendant's reply, I

7     think a clear reading of the statute as amended is that

8     aggravated prostitution is removed from the definition of

9     sexual offense and violent sexual offense.  So the parts of

10    the registration act that are triggered specifically as to

11    sexual offenders and violent sexual offenders, like, for

12    example, the reporting requirements in Section 40-39-203 and

13    the geographic restrictions in 40-39-211 that specifically

14    read no sexual offender or no offender, which are all defined

15    terms for the statute, no longer apply to someone because of

16    an aggravated prostitution conviction.

17          So there is a very immediate effect that, in our

18    opinion, Public Chapter 545 has on this litigation, on

19    Plaintiffs and on others that are convicted of aggravated

20    prostitution in that they are -- those Sections 211, 203 and

21    others like it that apply to offenders no longer apply to

22    people who have been convicted of aggravated prostitution,

23    because they are not offenders.

24          I think Ms. Meeropol's position is a

25    misunderstanding, and this goes back not to -- I don't mean

1   to, you know, broach issues that aren't really at discussion

2   today, but it's an issue that's highlighted in the

3   Defendant's motion to dismiss of a misunderstanding about the

4   responsibilities of the TBI versus local registering agencies

5   and local prosecutors in enforcement of the registration act.

6           Ms. Meeropol, I think, just mentioned that, you

7   know, Tennessee retains the authority to enforce the

8   registration act, but really that -- that's a misnomer.

9   Local registering agencies perform some of the functions

10  under the act.  Local prosecutors perform some of the

11  functions under the act.  The TBI's role is really reserved

12  to publishing the website and maintaining the registry

13  database.

14          And again, not to revisit that, but I think there

15  is an immediate impact in that aggravated prostitution is no

16  longer defined as a sexual offense and violent sexual

17  offense, meaning people convicted of aggravated prostitution,

18  setting aside if they've been convicted of another qualifying

19  offense, are no longer sexual offenders or violent sexual

20  offenders.  And that the provisions of the act that are

21  triggered specifically by a person being an offender aren't

22  triggered by an aggravated prostitution conviction anymore.

23          **THE COURT:**  Well, based on that statement, it

24  does sound like it would at least be useful for you all to

25  have a conversation about whether there is some way to talk

UNREDACTED TRANSCRIPT

24

1   through the registration requirement part of the case.

2          It's not exactly the statement Ms. Meeropol said

3   that if the state says this, then we should work out

4   requirement -- the registration requirement part of the case,

5   but it's close.  So it seems like a conversation about that

6   aspect of the case would be useful.

7          It does seem to me that there are other -- that

8   that's not the whole case, that there are other aspects of

9   the case, which is what I was trying to get to at the very

10  beginning.  But, you know, please don't let the pendency of

11  the motion to stay get in the way of any useful conversation

12  you all can have about a part of the case you may be able to

13  agree to.

14         Ms. Berger, I didn't turn to you.  Did you have

15  anything to add here?

16         **MS. BERGER:**  Yes, Your Honor.  I just wanted to

17  reiterate there definitely does seem to be some disagreement

18  regarding the effect that the law will have on how the

19  registry will take effect moving forward or be changed moving

20  forward, especially since, as Mr. Brandon represented, there

21  may be some role for local enforcement involved in this.  But

22  the law itself does still say that an individual needs to

23  apply to the Tennessee Bureau of Investigation in order to

24  terminate their registry requirements, and it's not -- that

25  process as outlined in law does not seem to be automatic.  So

UNREDACTED TRANSCRIPT

1    to the extent that we can have discussions to determine

2    whether it is or is not automatic, I think -- I agree that

3    that would be helpful.

4            I think one additional piece that I wanted to

5    point out that is unique to the United States' case is that

6    the registry requirements remain important to us even if they

7    are somewhat changed by this law, because we have uniquely a

8    compensatory damages relief piece in our complaint.  And so,

9    even if the registry requirements are changed by this law,

10   they are still highly relevant to the damages that

11   individuals have experienced as a result of previously being

12   on the registry.

13           **THE COURT:**  Okay.  I guess what -- Mr. Brandon,

14   what I heard you say, and maybe I have this wrong, but that

15   the -- putting aside what -- who is the right entity and

16   whether it's local or -- I'm going to set that issue aside

17   for a minute.  But what I was -- what I heard you say is that

18   the -- all of the enforcement -- all of the requirements that

19   come with being on the registry would no longer be able to be

20   enforced against people convicted just of aggravated

21   prostitution because that would no longer be an offender.

22           So while I guess technically the pre July 1, 2024

23   people would be on the registry, they wouldn't have to do

24   anything because of the change in the definition of

25   "offender".  Is that what you're saying?

```
 1            MR. BRANDON:  I think that's right, Your Honor,

 2   in terms of -- I think Public Chapter 545, the amendment is

 3   very clear that things like the geographic restrictions

 4   where -- you know, on residents and employment within a

 5   thousand feet of a school or the quarterly or yearly

 6   reporting obligations that apply specifically to people who

 7   are defined as offender, sexual offender, violent sexual

 8   offender have no application to someone that is not a sexual

 9   offender or violent sexual offender.  And people convicted of

10   aggravated prostitution alone, with no other qualifying

11   convictions, are no longer those offenders.

12            THE COURT:  Well, if that covers all of the

13   things someone is supposed to do because they're on the

14   registry, I hope you will think about whether that is also

15   saying those folks should automatically come off the

16   registry, but I'm going to --

17            MR. BRANDON:  Understood, Your Honor.

18            THE COURT:  -- leave it to you all to talk about

19   that.

20            The other, I guess, substantive issue I want to

21   talk about is just the big picture here.  It strikes me that

22   these are all legal issues.  What issues would there be for a

23   trial?

24            MS. MEEROPOL:  I don't want to make any promises

25   right now, Your Honor, at this stage of the case, but we do
```

1    expect that this case would be appropriate for summary

2    disposition.

3            **THE COURT:**  Okay.  Anyone -- and I'm not going to

4    take you off the trial calendar or anything like that.  I'm

5    just curious.  This is just me trying to sort of

6    conceptualize the case.  Any different opinion?

7            **MS. BERGER:**  Your Honor, the United States also

8    thinks that this would be a good case for summary judgment

9    disposition.  I think one piece where there could potentially

10   be a difference, since we do have the damages claim, if there

11   needed to be some sort of trial or finding of fact related to

12   the amount of damages, that could potentially be a bifurcated

13   issue or something that we would address in a different way

14   at a later stage.

15           **THE COURT:**  Okay.  Mr. Brandon?

16           **MR. BRANDON:**  Yes, Your Honor.  I think being

17   realistic, this case seems like it's headed for summary

18   judgment.  I certainly don't want to foreclose the potential

19   that there could be fact issues.  You know, the first thing

20   that comes to mind is disagreements between experts, that

21   that may have to be resolved by a factfinder in terms of if

22   there's differing expert opinions about some of the medical

23   material here or I heard Ms. Meeropol say earlier maybe

24   experts about the impact of the registry.  And so, there may

25   be differences that have to be resolved by a factfinder

1    there.

2            All that said, you know, Defendants are also of

3    the position that there's a number of legal questions that

4    can be resolved at the motion to dismiss stage, and certainly

5    that might be followed up with the summary judgment stage

6    that are unrelated to the merits.  And so, I think it's very

7    realistic to think that this case will be finished at summary

8    judgment.

9            **THE COURT:**  Okay.  And I didn't mean to step over

10   your motion to dismiss.

11           All right.  Those are all the sort of substantive

12   questions I have about it since I wasn't -- since I didn't do

13   the scheduling conference in the Outright Memphis case.  So

14   I'm ready to talk about the schedule a bit.

15           And I guess the initial -- just because of the

16   timing, there are other bits of the elements of the -- I'll

17   call it the DOJ action that -- where the dates are different,

18   because you're just getting started.  So looking at the dates

19   for the DOJ action schedule, you all had April 26 as initial

20   disclosure date, which makes, frankly, no sense to me since

21   you've already done disclosures in the other case.

22           So why would it -- you know, by rule, it's no

23   more than two weeks from the date of this conference.  So why

24   on earth would you need actually longer when I suspect you

25   already know what your initial disclosures are?

1          And for this, I'm talking just to the people in

2    the DOJ case.

3          **MS. BERGER:**  Sure.  Your Honor, we were trying to

4    sort of track ourselves onto the same kind of timeline that

5    was going on in the Out Memphis litigation, as well.  But

6    your point is taken, and if we need to shorten the initial

7    disclosures a bit, I think, you know, that's something that

8    we're willing to do.  You know, we understand that.

9          But disclosures, we haven't made our initial

10   disclosures yet, and obviously we can take a look.  We also

11   don't have -- you know, we haven't seen the -- so we haven't

12   seen Defendants, but of course, you know, we would see

13   theirs, as well.

14         **THE COURT:**  Right.

15         I guess, Mr. Brandon, you're -- you shouldn't

16   have an issue at all since you've already done them once.

17         **MR. BRANDON:**  Yeah.  I think that'd be fine for

18   us, Your Honor.  There may be slight differences given the

19   differences in Defendants that are sued, but we're prepared

20   to make initial disclosures at an earlier date.

21         **THE COURT:**  All right.  Let's make that April 17,

22   which is two weeks from the date of today.

23         Then motions to join parties and amend pleadings,

24   you all suggested July 2nd, which is longer than what we have

25   in our sample schedule to kind of work off of.  Why wouldn't

30

1  it be June 3rd, which is more in line with what we think --

2  what we estimate in a typical case?

3          Again, I don't know -- I don't know who else

4  would be joining this case.  It seems like we've got

5  everyone.  And in terms of amended pleadings, you know,

6  you -- that may be something, I don't know, but June 3rd

7  seems to be plenty of time for that.

8          Ms. Berger, your thoughts?

9          **MS. BERGER:**  Yes, Your Honor, especially since

10  we're moving the deadline for initial disclosures back a bit.

11  So if there are any additional parties or anything we learn

12  about in those that would bear a fact, we think we can agree

13  to June 3rd.  That makes sense.

14          **THE COURT:**  Okay.  So that's join parties and

15  amend pleadings, and then --

16          **MR. BRANDON:**  Your Honor, sorry.  If I could --

17          **THE COURT:**  Yeah.

18          **MR. BRANDON:**  -- just raise, I do think at least

19  from Defendant's perspective, having a date after July 1st

20  made some sense in offering the parties a chance to reassess

21  what parties need to be defendants to this lawsuit or

22  plaintiffs to the lawsuit and if complaints needed to be

23  amended or other pleading -- if there's answers by then, I

24  don't know if there will be, but if there's other pleadings

25  that need to be amended after the new law takes effect, that

UNREDACTED TRANSCRIPT

1    later deadline would accommodate that reality.

2              Of course, if that's necessary, we could address

3    moving the deadline.  It was just an attempt to make that

4    realistic possibility.

5              **THE COURT:**  Right.

6              What I hate to do is set a deadline based on

7    something that might happen in the future.  If it does happen

8    in the future, then to me that's a change in circumstance and

9    you can always do those same things by motion.

10             **MR. BRANDON:**  Certainly, Your Honor.  That's

11   understood.

12             **THE COURT:**  Okay.  All right.

13             And then motion to dismiss, Plaintiff had

14   April 10th; is that right?  I guess --

15             **MS. BERGER:**  Yes, Your Honor.

16             **THE COURT:**  Okay, because that was the deadline

17   to answer, I guess.  Defendants have July 19.

18             Again, I'm inclined to follow what our typical

19   pattern is, which would make it July 8th.  If there's --

20   again, I guess I'm expecting to hear from you, Mr. Brandon,

21   that you're looking -- I think you even said you were looking

22   at July 19th because of the -- when the statute goes into

23   effect.

24             And this is one of -- one of the reactions I had

25   to that argument in general is, you at least know what the

 1    words of the statute are now.  And so, you know, to wait

 2    19 days or whatever after it goes into effect doesn't really

 3    make sense to me because you're not going to know any more

 4    about enforcement, I'm guessing, in those 19 days -- if

 5    that's sort of what you're looking for, you're not going to

 6    know any more than you do today, I think, because I -- I'm

 7    not sure anything is going to happen between July 1 and

 8    July 19th.

 9              Maybe -- God knows I've been wrong before, and I

10    certainly could be wrong about that.  But again, I don't see

11    any reason to do something different than what we would

12    normally do because of the possibility of something that

13    might come up.  If it comes up, tell me about it and we'll

14    talk it through.

15              And what am I missing, Mr. Brandon?

16         **MR. BRANDON:**  Probably not anything, Your Honor.

17    I think this is a case of perhaps us overthinking things a

18    little bit and trying to account for those possibilities, and

19    understanding, of course, that we can address a change in

20    circumstances if that comes up.  Then we can plan to do that.

21         **THE COURT:**  You know, my statement before about

22    I'm not changing any of these deadlines, don't ask for any

23    extensions, I would say doesn't apply to this -- these

24    initial dates because of -- you know, you're right, there

25    could be something, I just don't see it, tied to the actual

1   implementing the statute or that immediate period.  But, you

2   know, tell me if I'm wrong about that.

3           My comment really was about this discovery period

4   and the time for experts.  That, it seems like you all have

5   plenty of time.

6           The rest of your dates, again, other than that

7   October 28th date, I believe, are the same.  Is that right,

8   Ms. Berger or Mr. Brandon?

9           **MS. BERGER:**  I think that's right, Your Honor.

10          **MR. BRANDON:**  I believe that's right.

11          **THE COURT:**  And then, yeah, this ADR, I'll tell

12  you I typically plug in the date that our ADR plan calls for,

13  which is 12 weeks from the date of this conference.  I guess

14  I get why there was a punting on that issue.  Does anyone

15  wish to be heard on that?  Anyone think we should do

16  something different at this point on the ADR deadline?

17          **MS. BERGER:**  The United States just wants to

18  represent that we're always open to discussing settlement.

19  So to the extent that the State's position changes at all, we

20  are willing to add in that component.

21          **MR. BRANDON:**  Your Honor, I guess just to be --

22  we've -- I think we've openly talked with both the US and the

23  ACLU in terms of what the effects of the amendment are.  We

24  do intend to be open if there is any possibility of

25  settlement or, you know, alternative dispute resolution going

1   forward, we certainly want to save the parties and the

2   Court's time.  But given the nature of the suit, that it's a

3   challenge to statute at its core, there's, in our view,

4   usually very limited opportunities for, you know, settling a

5   statute, if that's the -- if the effort is a repeal of a

6   statute, there's not much work that we can do on that end.

7         So realistically, in cases like this, we often

8   find that mediation or other alternative dispute resolutions

9   can not be as effective, but we're certainly happy to go

10   through those and explore possibilities and keep the lines

11   open with our opposing counsel to the extent that we can make

12   progress in those areas.

13       **THE COURT:**  I'm curious, and I'm -- I ask this --

14   don't take this as a question within the context of this

15   case, but it just -- I'm curious.

16         If the Attorney General's Office determined that

17   any statute was unconstitutional, you all issue opinions all

18   the time, if you determined a statute was unconstitutional,

19   which theoretically you could end up at that position

20   following a mediation, you -- you've got to tell the

21   legislature that.  Why wouldn't -- again, in a theoretical

22   case, why wouldn't that be something that could come out of a

23   mediation?

24       **MR. BRANDON:**  It's certainly possible, Your

25   Honor.  I guess I would just say unlikely in that we do try

```
1   to do as much of our diligence on the front end before

2   wasting the parties' and the Court's times, even in initial,

3   you know, litigation.  If our opinion is that the statute is

4   unconstitutional, then that's sort of -- that's an assessment

5   that we're capable of making earlier in the process that

6   isn't often changed by the development of facts on the

7   ground, but certainly possible that it could be, and I want

8   to acknowledge that chance.

9          THE COURT:  Well, I mean, that's, in essence, the

10  same thing as I heard from someone in a scheduling conference

11  yesterday.  We believe we win, so we shouldn't have to go to

12  mediation or we -- you know, whatever shouldn't happen in the

13  case.

14          I mean, I'd like to think that most people going

15  into litigation believe that they're right, which is

16  essentially what you're saying.  So how is that statement

17  different than any party believing they're right going into

18  the litigation?

19          MR. BRANDON:  I think, Your Honor -- and I don't

20  want to be evasive in answering the question, but I also

21  don't want to be too specific in terms of internal processes

22  or decisionmaking or that sort of thing.  But I think given

23  the special, you know, duty of the attorney general to defend

24  state statutes, that there's perhaps a different obligation

25  than private parties in terms of what compromises that
```

UNREDACTED TRANSCRIPT

1   they're able or willing to make despite their belief in

2   ultimate success.

3           I know that's a very general answer, but I'm

4   afraid I can't say much more than that, Your Honor.

5           **THE COURT:**  That's fine.  That's fine.  I just --

6   as I was thinking about it, I was curious about your

7   position.  I'm not sure I'm convinced, but I hear you, and

8   that's fine.  I'll leave the ADR statement as we have it --

9   as you all proposed and as is in the Outright Memphis

10  schedule.

11          Let me come back to one issue that, at least in

12  my mind, is not completely settled.  So we do have some

13  initial dates that are different in the United States case

14  from the Outright Memphis case, which really says the

15  document production and interrogatory deadline could be

16  different in the two schedules.

17          Is there any -- so in the Outright Memphis case,

18  do we need to change the document production and

19  interrogatory deadline?  I don't know, maybe we do because

20  you're now going to do written discovery sort of coordinated.

21  So maybe we do need to change that deadline.

22          **MS. MEEROPOL:**  I think that probably makes the

23  most sense, Your Honor, although we're fine with either way.

24          **THE COURT:**  All right.  As I talk it through, I

25  realize we do need to change that.  So we will -- we'll do a

UNREDACTED TRANSCRIPT

1   very short order in the Outright Memphis case that just

2   acknowledges that the document production and interrogatory

3   deadline is now October 28.  That will -- and then we'll pick

4   up the rest of the dates as you all proposed -- you all in

5   the United States' case, as you all proposed it in your

6   proposed scheduling order, other than the initial ones that

7   I've changed a little bit, but the rest we'll pick up as

8   proposed.

9          Then you all have on eDiscovery that you don't

10  have an agreement, but you'll comply with the local rule.

11  I'm assuming there really isn't much eDiscovery.  You have no

12  consent to trial by magistrate.  You've got an agreement on

13  the return of inadvertently produced privileged information.

14  And you all have the trial dates and so forth already in

15  here, which are the same as the Outright Memphis case.

16         Anything I've missed or anything you all think we

17  need to -- anything else you all think we need to discuss?

18         Let me start with Ms. Berger.  Anything else?

19         **MS. BERGER:**  Your Honor, I just had a technical

20  question about, if the cases are consolidated, does that

21  change at all how we file things?  Do we still have the

22  separate dockets so we would file things on our own docket?

23         **THE COURT:**  No.  It would help if you file things

24  with both docket numbers on it, so both case captions, both

25  docket numbers.  And then when you go in to file it, I

1   confess, I don't know how to do that, but I think you -- you

2   end up filing it in both cases at the same time.  I think

3   there's some way to do that.  Someone correct me if I'm wrong

4   on that.  Okay.

5           **MR. BRANDON:**  I believe -- now, I'll admit that I

6   defer to some other folks in my office on filing, but I

7   believe there's an option to spread entries across two cases,

8   and that's probably the way to handle it.  Don't hold me to

9   it.

10          **THE COURT:**  That sounds right to me, too.

11          **MS. BERGER:**  We can all figure it out together.

12          **THE COURT:**  Okay.  Ms. Meeropol, anything else

13  from you?

14          **MS. MEEROPOL:**  No, Your Honor.  Thank you.

15          **THE COURT:**  All right.  And Mr. Brandon, anything

16  else from you?

17          **MR. BRANDON:**  No, Your Honor.

18          **THE COURT:**  And I didn't intentionally leave out

19  everyone else.  It's just those people kept talking.  Anyone

20  else have anything you want to add here?

21          All right.  We will get the scheduling order

22  entered in the DOJ case, I'm sure today.  We'll get that one

23  change in the Out Memphis schedule also done today, and we

24  will -- someone will figure out whatever needs to be done to

25  actually consolidate the cases today, as well, I think.

UNREDACTED TRANSCRIPT

39

1                    All right.  Thank you all very much.  I

2       appreciate your time, and have a lovely rest of your day.

3                    (Adjournment.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNREDACTED TRANSCRIPT

40

1                        **C E R T I F I C A T E**

2

3

4          I, CANDACE S. COVEY, do hereby certify that the

5    foregoing 40 pages are, to the best of my knowledge, skill

6    and abilities, a true and accurate transcript from my

7    stenotype notes of the Teams Status Conference on the 3rd day

8    of April, 2024, in the matter of:

9

10   Out Memphis, et al.

11   vs.

12   Bill Lee, et al.

13   And

14   USA

15   Vs.

16   TBI

17   Dated this 19th day of April, 2024.

18

19

20

21                              S/Candace S. Covey

22                         CANDACE S. COVEY, LCR, RDR, CRR
                           Official Court Reporter
23                         United States District Court
                           Western District of Tennessee
24

25

                      UNREDACTED TRANSCRIPT