# EXHIBIT 1

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0111p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JOHN DOE #1; JOHN DOE #2; JOHN DOE #4; JOHN DOE #5; JOHN DOE #6; JOHN DOE #7; JOHN DOE #8; JOHN DOE #9,

    *Plaintiffs-Appellees*,

  *v*.

WILLIAM BYRON LEE, Governor of the State of Tennessee, in his official capacity; DAVID B. RAUSCH, Director of the Tennessee Bureau of Investigation, in his official capacity,

    *Defendants-Appellants*.

No. 23-5248

---

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
Nos. 21-cv-590; 21-cv-593; 21-cv-595–598; 21-cv-624; 21-cv-671;
Aleta Arthur Trauger, District Judge.

Argued: December 7, 2023

Decided and Filed: May 15, 2024

Before: SILER, NALBANDIAN, and DAVIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Gabriel Krimm, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. W. Justin Adams, SPENCER FANE LLP, Nashville, Tennessee, for Appellees. **ON BRIEF:** Gabriel Krimm, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. W. Justin Adams, Edward M. Yarbrough, Jonathan P. Farmer, SPENCER FANE LLP, Nashville, Tennessee, for Appellees. Mark E. Brown, MENEFEE & BROWN, P.C., Knoxville, Tennessee, for Amicus Curiae.

## OPINION

SILER, Circuit Judge.  Plaintiffs are eight men sentenced for sexual offenses between 1982 and 1994.  Under the 2004 Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act ("the Act") and its subsequent amendments, they are required to comply with various reporting requirements and geographical restrictions imposed on all sex offenders.  Tennessee considers these laws instrumental in combating recidivism among a class of defendants it views as particularly dangerous to the most vulnerable within its society—its children.  But Plaintiffs view the laws as a violation of the Constitution's Ex Post Facto Clause.  The district court agreed with the Plaintiffs and issued a sweeping injunction prohibiting Governor Lee and Director Rausch from enforcing the entire Tennessee code against the Plaintiffs.

For the reasons laid out below, we disagree with the district court.  Therefore, we REVERSE IN PART the district court's judgment that the Act violates the Ex Post Facto Clause and REMAND with orders to VACATE the declaratory judgment, DISSOLVE the injunction against Governor Lee, DISMISS Governor Lee from the suit based on a lack of standing, and to MODIFY the injunction against Director Rausch consistent with this opinion.

### I.
### A.

Tennessee's first sex offender registration law, known as the Sexual Offender Registration and Monitoring Act ("SORMA") became effective January 1, 1995, and required individuals convicted of certain sexual offenses to register with the Tennessee Bureau of Investigation ("TBI") "within ten days of release without supervision from probation, parole, or incarceration," and to update essential information with the Bureau regularly thereafter.  *See Doe v. Haslam*, No. 3:16-CV-02862, 2017 WL 5187117, at *2 (M.D. Tenn. Nov. 9, 2017).  That law has been amended multiple times, was superseded by the current Act, and the current Act has been further amended.  *See generally id*.  Because our Ex Post Facto analysis necessarily

involves a discussion of each amendment's substance and timing, a brief look at the statutory and procedural history is helpful.

**1982-1994** – All Plaintiffs were convicted of sexual crimes.

**1994** – SORMA was signed into law, effective January 1, 1995.  The initial Act imposed basic reporting and registration requirements on most prior sexual offenders, including Plaintiffs.  All information was kept confidential to the TBI, and reporting was done by mail.

**1996** – SORMA amended to expand class of offenders to whom it applies.

**1997** – SORMA further extended to cover offenders "who [] completed diversion and had their records expunged," or committed some non-sexual offenses against minors. It also "permitt[ed] TBI to require that registrants provide current photographs." *Id*.

**2000** – Amended to impose mandatory 180-day sentence for falsification, to make registration life-long for certain extreme offenses, and to require offenders to report to the county where they live or go to school within 10 days of moving.

**2002** – Amended to require offenders working or studying at "institution[s] of higher learning" to report such work within 10 days and to make that information public for offenders convicted after October 27, 2002. *Id.*

**2003** – Amended, for the first time, to include restrictions on where offenders "could live, work, or travel." *Id*.  The amendments prohibited registrants from living or working within 1000 feet of a school or childcare facility, or the home of their victim(s) or their family members, among other geographical restrictions.

**2004** – The General Assembly repealed SORMA and replaced it with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act.  This Act continues in force today.  The Act largely continued the same classification system but also divided registrants into two classes—sexual offenders or violent sexual offenders—based on their offense of conviction.  The new Act also dispensed with SORMA's reporting-by-mail scheme and required registrants to report and register in person to a designated law enforcement agency.  Some changes allowed as little as 48 hours to report, and the Act increased the amount of information to be reported and imposed fees.

**2005** – Amended the new Act to increase the fees and add reportable information requirements.

**2006** – Prohibited registrants convicted of crimes against minors from living or working near schools and other children's facilities.

**2007** – Added more events reportable within 48 hours and made all registrants' information public, regardless of offense.

**2008** – Added more reportable information and disclosed some information—such as email addresses—to certain businesses. The amendments also prohibited registrants who offended against minors from dressing in certain costumes around minors.

**2009** – Excluded all registrants, regardless of offense, from schools, playgrounds, and other public facilities if the registrant has reason to believe that children are present, and prohibited registrants from "standing or sitting idly within 1,000 feet of such locations" without a legitimate reason. *Id.* at *3.

**2010** – Increased information required to be reported, required all registrants to carry a photo ID, and prohibited more than two registrants from living in the same house.

**2011** – Imposed reporting restrictions related to international travel and permitted libraries to ban registrants.

**2014** – Prohibited all registrants from living or working within 1,000 feet of a school or other children's facilities, authorized local authorities to notify residents when a registrant lives within an area, and imposed lifetime registration requirement on offenders whose victims were twelve years old or under.

**2015** – Expanded the information registrants were required to report and prohibited all registrants from "being alone with a minor in a 'private area.'" *Id.*

In summary, the current law does three things: First, it establishes reporting rules which require registrants to appear in-person quarterly at a local law enforcement agency and update information such as their residential address, vehicles, life details, and social security number. Second, it publishes this information—including identity, criminal history, physical traits, address, employer, driver's license number, vehicle license plates, etc.—for public use. Third and finally, it restricts Plaintiffs' geographical movement, particularly where they can live, work, and stay.

**B.**

Plaintiffs claim that Tennessee's imposition of these requirements against them violates the Constitution's Ex Post Facto Clause. They therefore filed an action for declaratory and injunctive relief against Governor Lee and TBI Director Rausch, asking the court to enjoin the Defendants from enforcing the Act against the Plaintiffs and to issue a declaratory judgment prohibiting other state actors from doing the same. The Defendants answered, disagreeing on the merits and contesting the district court's power to hear the case based on standing and qualified immunity, claiming that "[t]he Governor is not a proper party to this complaint." R. 67 at 11.

The district court granted Plaintiffs' motion for summary judgment and denied that of Defendants. *See Does #1-9 v. Lee*, 659 F. Supp. 3d 865, 894-95 (M.D. Tenn. 2023). The district court determined that our opinion in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016) controlled, and therefore the Act imposed retroactive punishments in violation of the Ex Post Facto Clause. *John Does #1-9*, 659 F. Supp. 3d at 885-89. The court enjoined Defendants from enforcing the Act's provisions against Plaintiffs and issued a declaratory judgment against unnamed parties who might also enforce the Act. *Id.* at 894-95.

**II.**

Because the district court decided this case on summary judgment, we review de novo. *Fortney & Weygandt, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 595 F.3d 308, 310 (6th Cir. 2010). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Governor Lee argues that the Plaintiffs lack standing, that he is protected by sovereign immunity, that the district court was wrong on the merits, and that the remedy is overly broad and unjustified. Director Rausch argues that because he only enforces part of the Act, the district court's review and injunction should have been more limited. Plaintiffs counter that Defendants waived the defense of sovereign immunity, that this matter is on all fours with *Snyder*, and that the remedy was appropriate.

Plaintiffs bear the burden of proving that their suit is a "Case[]" or "Controversy" within the jurisdiction of the United States courts. U.S. Const. art. III, § 2, cl. 1; *see also Lujan v. Defs.*

No. 23-5248 *Doe #1, et al. v. Lee, et al.* Page 6

of Wildlife*, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements."). To do so, they must establish "the irreducible constitutional minimum of standing" by showing that: (1) they suffered an "injury in fact;" (2) the injury is "fairly . . . trace[able]" to conduct of Governor Lee and Director Rausch, and (3) the court's powers of decision would provide them redress. *Lujan*, 504 U.S. at 560-61. Without these elements, the district court lacks authority to hear the case. Because standing goes to the fundamental power of the court to hear the matter, it may be raised for the first time on appeal. *Bench Billboard Co. v. City of Cincinnati*, 675 F.3d 974, 983 (6th Cir. 2012).

To establish standing to sue the governor of a state, Plaintiffs must do more than allege that Governor Lee may harm them, or that he theoretically possesses the power to do so; "[w]e need specific, plausible allegations about what the Governor has done, is doing, or might do to injure plaintiffs." *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022). Without such a showing, Plaintiffs fail to allege the second and third elements of standing: traceability and redressability. *Id*. at 1032 (stating that even with a showing of harm, no order of the court against the Governor would remedy plaintiffs' injuries).

While it is true that governors often possess a general "take care" power to see that the laws of the state are enforced, it is well established that such power is insufficient, by itself, to confer standing. *Id*. Therefore, although Tennessee's governor is tasked with such a duty by virtue of Article III, Section 10 of the Tennessee Constitution, a "general allegation about the Governor's 'take care' power does not suffice to invoke federal jurisdiction." *Nabors*, 35 F.4th at 1031.

Plaintiffs argue that not only does Governor Lee have a "general duty to uphold the law," he also has the power "to initiate ouster proceedings against any state or local official" who commits misconduct or fails in his duty. The latter authority, they say, means that he "has the power to compel state or local officials to enforce the Act." Resp. Br. at 31. They assert that this general executive power to fire employees confers standing.

This is a distinction without a difference. While it is true that the Governor possesses power as the chief executive to remove employees from their posts, or at least to initiate such

proceedings, this does not give him a role in the enforcement of individual criminal laws beyond his general "take care" duty.  Plaintiffs' argument is simply another way of invoking the Governor's general executive powers, which are insufficient alone to confer standing.  *See Nabors*, 35 F.4th at 1031-32.  Like the plaintiffs in *Nabors*, "they have not explained how the *Governor* caused the injury," a traceability problem, nor have they shown "what a federal court could order the Governor to do or refrain from doing to give them relief—a redressability defect."  *Id*. at 1032 (emphasis in original).  Therefore, no Article III case or controversy exists against Governor Lee, so we will remand to the district court for dismissal as to him.  Because Plaintiffs lack standing to sue Governor Lee, we do not reach the sovereign immunity argument.

On the other hand, Plaintiffs do possess standing to sue Director Rausch.  For one, Defendants contrast the position of Governor Lee, whom Plaintiffs do not have standing to sue, with that of Director Rausch, who "*has* been charged with implementing certain state sex offender regulations."  Op. Br. at 28.  Thus, Defendants apparently concede that Plaintiffs have standing to sue Director Rausch.  Moreover, Director Rausch is tasked with a number of statutory duties related to the administration of Tennessee's sex offender statutes against the Plaintiffs.  *See infra* III.A.  This responsibility serves to fulfill all three elements of standing; a potential injury-in-fact flowing from his administration of the statute, which is traceable to him through his responsibility, and redressable by a court order.  *Lujan*, 504 U.S. at 560-61.  Thus, Director Rausch is subject to suit and possible injunction regarding those portions of Tennessee's statutes that come under his responsibility or enforcement authority.[1]

### III.

### A.

Now that we have figured out the proper parties before us, we turn to the merits.  The United States Constitution prohibits the imposition of ex post facto laws.  U.S. Const. art. I, § 10, cl. 1 ("No State shall . . . pass any . . . ex post facto Law.").  A law qualifies as ex post facto if it "changes the legal consequences of acts committed before its effective date."  *Doe v. Bredesen*, 507 F.3d 998, 1003 (6th Cir. 2007) (quotations omitted).  Evaluating a law requires a statutory

---

[1]Appellants admit that a "challenge to [Rausch's] authorities could fit within *Ex parte Young*."  Op. Br. at 31.

analysis of whether the law's requirements are civil or punitive—in other words whether "the intent of the legislature was to impose punishment" or "to enact a regulatory scheme that is civil and nonpunitive." *Id*. (quoting *Kansas v. Hendricks*, 521 U.S. 346, 361 (1997)); *see also Snyder*, 834 F.3d at 699 (stating that the Constitution "does not bar *all* retroactive lawmaking, but only retroactive punishment."). Answering this question is a matter of statutory interpretation which looks first to the legislature's stated intent and then to various objective factors to deduce the character of the legislation. *Bredesen*, 507 F.3d at 1003-04. The legislature's characterization of its handiwork is given significant deference, and "an ostensibly civil and regulatory law, such as [this], does not violate the Ex Post Facto Clause unless the plaintiff can show 'by the clearest proof' that 'what has been denominated a civil remedy' is, in fact, 'a criminal penalty.'" *Snyder*, 834 F.3d at 700 (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003)).

In analyzing the retroactive effect of a law, we apply the *Mendoza-Martinez* factors. *See Smith*, 538 U.S. at 97 (citing *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963)). Of particular importance are those factors measuring whether the challenged law (1) "has been regarded in our history and traditions as a punishment," (2) "imposes an affirmative disability or restraint," (3) "promotes the traditional aims of punishment," (4) "has a rational connection to a nonpunitive purpose," and (5) "is excessive with respect to this purpose." *Id*.

Under this framework, the Supreme Court has found that retroactive laws requiring sexual offenders to report to law enforcement and register are constitutional. *Id*. at 105-06. According to the Court, these schemes are simply regulatory, and any stigma that results from the collection and dissemination of this information is incidental to the legitimate purposes of the statute. *Id*. at 98-99. We upheld SORMA, Tennessee's predecessor registration statute, in *Cutshall v. Sundquist*, finding that its reporting and registration requirements did not violate the Ex Post Facto Clause. 193 F.3d 466, 476-77 (6th Cir. 1999). That law, passed in response to a federal law threatening to withdraw federal funding from states that did not pass similar laws, required offenders to report personal information to Tennessee authorities, including their names, date of birth, residence, employment, driver's license number, and other information. *Id*. at 470. Much of this information was then eligible for release to the public. *Id*. at 471.

We also upheld an early version of Tennessee's current registry statute against a nearly

identical challenge. *See Bredesen*, 507 F.3d at 1007. The law required the plaintiff "to comply with the registration, verification, and tracking requirements of the TBI Sexual Offender Registry ('SOR') for the rest of his life." *Id*. at 1001. Plaintiff's chief complaint was not the registration and reporting requirements but the GPS tracking device he was required to wear. *Id*. at 1002. The court again found that, although undoubtedly cumbersome and inconvenient, the device did not immediately identify him as "a criminal, let alone a sex offender." *Id*. at 1005. Therefore, there was no reason to deviate from its previous conclusion—and that of other circuits—that the law did not violate the Ex Post Facto Clause. *Id*. at 1007. At the time the suit was filed, the law did not impose any restrictions on where registrants could live, work, or move.

In 2016, we enjoined enforcement of two amendments to Michigan's sex offender registry law, known as SORA. *Snyder*, 834 F.3d at 705-06. In that case, two sex offenders challenged the 2006 and 2011 amendments to SORA which prohibited registrants "from living, working, or 'loitering' within 1,000 feet of a school" and required "all registrants to appear in person 'immediately' to update information such as new vehicles or 'internet identifiers' (*e.g*., a new email account)." *Id*. at 698. We observed that the "law has had a significant impact on each of [the plaintiffs] that reaches far beyond the stigma of simply being identified as a sex offender on a public registry." *Id*. Applying the *Mendoza-Martinez* factors, we noted that although the Supreme Court's decision in *Smith v. Doe* allowed for publicly available registries of prior offenders, Michigan's amendments went beyond that. *Id*. at 701-05. In contrast with Alaska's law evaluated in *Smith*, where offenders were "free to move where they wish and to live and work as other citizens, with no supervision," Michigan's registrants were subjected to onerous conditions that closely resembled "banishment and public shaming, and [had] a number of similarities to parole/probation." *Id*. at 703 (quotations omitted). Based on this finding that the amendments imposed punishment instead of simply establishing a civil registry, we concluded that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Id*. at 706.

As the parties outline in their extensive briefs, Tennessee considerably expanded its new registry law in the years following its enactment and this court's upholding of it. Starting in 2006, through the latest round of amendments in 2015, Tennessee has added child-access

restrictions ranging from prohibiting all registrants from the premises of schools, daycares, etc. where there was reason to believe children were present to prohibiting all registrants from being alone with a minor in a "private area" unobservable by any other adult.

**B.**

Plaintiffs ask this court to uphold the district court's decision enjoining the entirety of the law based on *Snyder*. Defendants, on the other hand, ask the court to uphold Tennessee's law in whole or in part for two reasons: (1) because Plaintiffs overread *Snyder* and the law is constitutional in its entirety, or (2) because *Snyder* only overruled two amendments to Michigan's SORA, not the entire law, this court should do the same.

Because of the weight given to *Snyder* by both parties in their briefs and at oral argument, as well as by the district court in its opinion granting summary judgment, it is worth lingering here to emphasize its facts and holding. Plaintiffs argue repeatedly that Tennessee's overall statutory regime is identical to Michigan's SORA at issue in *Snyder*, and that our hands are therefore bound. The district court took a similar view, treating *Snyder* as a case dealing with Michigan's SORA in its entirety, and seemed to imply that the panel enjoined the entire law. *See John Does #1-9*, 659 F. Supp. 3d at 885-89. The district court repeatedly characterized *Snyder* as broadly enjoining "the Michigan law." *See id*. at 885. But this is incorrect. In *Snyder* we evaluated only the 2006 and 2011 amendments to SORA—amendments prohibiting offenders from "living, working, or loitering within 1,000 feet of a school" and requiring immediate, in-person appearance to update critical information. *Snyder*, 834 F.3d at 698 (internal quotations omitted). And in the penultimate paragraph of the opinion, we explicitly held that "[t]he retroactive application of SORA's 2006 and 2011 amendments to Plaintiffs is unconstitutional, and it must therefore cease." *Id*. at 706. While it is true that we examined the entirety of the regulatory regime in determining its punitive nature, our final judgment simply rendered the two challenged amendments unenforceable. *Id*. at 705-06 (discussing SORA's overall punitive effect as justification for enjoining the 2006 and 2011 amendments).

Indeed, our precedent demanded such a result, for if we had enjoined the entire regulatory regime, we would have prohibited enforcement of provisions previously blessed by both the

Supreme Court and this circuit. As discussed *supra*, the Supreme Court allows states to impose and enforce regulatory regimes which require sexual offenders to register with the state and supply pertinent personal information, which is then made available to the public, often widely so. *Smith*, 538 U.S. at 105-06 (upholding Alaska's sex offender statute while dismissing the Court of Appeals' concerns about the "wide dissemination" of offenders' information). This kind of statute is purely regulatory, aimed at combating recidivism, and based entirely on past criminal conduct. *Id*. at 105. Even before *Smith*, this court upheld similar schemes, including the predecessor statute to Tennessee's Act at issue here. *See Cutshall*, 193 F.3d at 472-73. And after *Smith*, our court upheld the current Act's ankle monitor provision, noting that "registration, reporting, and surveillance [requirements] are not of a type that we have traditionally considered as a punishment," and that any social stigma from strangers seeing the GPS monitoring device was not cognizable because the device was unobtrusive and bound to become even smaller with advancing technology. *Bredesen*, 507 F.3d at 1005.

But *Snyder* placed some limits on what states could impose. Alaska's statute at issue in *Smith* only tracked and publicized offenders' information; they were otherwise "free to move where they wish and to live and work as other citizens, with no supervision." *Snyder*, 834 F.3d at 703 (quoting *Smith*, 538 U.S. at 101). But under Michigan's SORA, "registrants [were] subject to numerous restrictions on where they [could] live and work and, much like parolees, they [were required to] report in person, rather than by phone or mail." *Id*. Immediate in-person reporting of a range of detailed personal information and significant geographic restrictions crossed the line of constitutionality.[2]

Synthesizing these cases requires us to reach one conclusion: any provisions of Tennessee's Act analogous to those discussed in *Smith*, *Bredesen*, and *Cutshall* pass

---

[2]We note that *Snyder* does not call into question Tennessee's in-person reporting requirements. First, Tennessee's requirements existed at the time *Bredesen* was decided, and we found no constitutional issue there. We are, of course, bound by prior panel precedent and have no ability to depart from *Bredesen*. *See, e.g.*, *Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995). Also, Michigan's reporting requirements at issue in *Snyder* are not on all fours with Tennessee's requirements; Michigan's were more onerous, requiring in-person reporting whenever a sex offender got a new email address or planned to take a trip. *See* Mich. Comp. Laws § 28.725. And Michigan requires "all registrants to appear in person 'immediately' to update information such as new vehicles or 'internet identifiers.'" *Snyder*, 834 F.3d at 698. Therefore, *Snyder*'s injunction of Michigan's in-person reporting requirements does not require the same result here.

constitutional muster. But those which mirror Michigan's 2006 and 2011 amendments to SORA, enjoined by *Snyder*, must fail. Full analysis of the *Mendoza-Martinez* factors is not necessary because the provisions of Tennessee's Act are either the same as or directly mirror those discussed in this court's prior cases; this dispute can be resolved simply by applying our binding precedent. "The Acts' registration, reporting, and surveillance components are not of a type that we have traditionally considered as a punishment." *Bredesen*, 507 F.3d at 1005. So, a registry kept by the state and disclosed publicly is constitutionally sound. *Smith*, 538 U.S. at 90-91. But,

> A regulatory regime that severely restricts where people can live, work, and "loiter," that categorizes them into tiers ostensibly corresponding to present dangerousness without any individualized assessment thereof, and that requires time-consuming and cumbersome in-person reporting . . . is something altogether different from and more troubling than Alaska's first-generation registry law.

*Snyder*, 834 F.3d at 705. Such requirements treat registrants like "moral lepers" and "consign[] them to years, if not a lifetime, of existence at the margins, not only of society, but often . . . from their own families." *Id*. Therefore, while these punishments may be inflicted on those convicted after the Act's effective date, they may not be retroactively enforced upon the Plaintiffs.

At argument, Plaintiffs' counsel relied on *Doe v. DeWine* to argue that a plaintiff can challenge an entire statutory scheme even if a defendant only enforces or oversees select provisions of it. 910 F.3d 842, 848-49 (6th Cir. 2018). When plaintiffs sued defendants who had "no power" to give plaintiffs the relief they requested, we said in *DeWine* that, "in addition to striking the laws as unconstitutional, the district court could order Defendants to remove Doe's information from the state-wide registry and public-facing sex-offender database they maintain, and relieve her from any registration requirements until an opportunity for a reclassification hearing becomes available." *Id*. at 850. This, Plaintiffs argue, allows us to enjoin enforcement of the entire scheme as unconstitutional, even though they can only sue Director Rausch.

But *DeWine* does not mean we skip Tennessee's typical elision analysis. Comity in our federal system demands that we not needlessly upend the work of Tennessee's elected legislature. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) ("The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process

from being used to usurp the powers of the political branches."); *Younger v. Harris*, 401 U.S. 37, 44 (1971) (discussing "the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments"). We therefore proceed to determine whether elision is appropriate in this case.

## C.

The district court refused to engage in a provision-by-provision analysis of Tennessee's regulatory regime to determine which portions violate the Ex Post Facto Clause and which do not. It did this in part because it misread *Synder* as a case enjoining the entire Michigan SORA, which, as discussed above, is incorrect. But it also claimed that attempting to sever unconstitutional provisions from constitutional ones by proceeding provision-by-provision would be a quixotic quest. *Does #1-9*, 659 F. Supp. 3d at 891-94. Specifically, the court worried that eliding the constitutional and unconstitutional portions of the statute would require the court to step into the legislature's shoes and affirmatively create new classes of offenders in addition to the violent and non-violent classes into which Plaintiffs were already placed. *Id*. at 892-93. While this concern is admirable, it is misplaced because elision does not involve the creation of new provisions.

The district court correctly stated that severability and elision are "determined by the law of [the] state." *Byrd v. Tennessee Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 626 (6th Cir. 2018). And the Tennessee Code specifically provides that "the sections, clauses, sentences and parts of the Tennessee Code are severable . . . if the code would otherwise be unconstitutional or ineffective." Tenn. Code Ann. § 1-3-110. At root, elision is appropriate "when a conclusion can be reached that the legislature would have enacted the act in question with the unconstitutional portion omitted." *Willeford v. Klepper*, 597 S.W.3d 454, 471 (Tenn. 2020). But the district court found the answer a "vexing question," because "[t]here is no particular section, subsection, or clause of the Act that can be excised to create the supposedly constitutional *status quo* that the defendants envision." *Does #1-9*, 659 F. Supp. 3d at 893. This, despite the fact that Tennessee's legislature built the current statutory regime through at least ten individual bills in as many years, much of it protected by binding case law.

Elision is appropriate here because the Tennessee legislature clearly would have "enacted the act in question with the unconstitutional portion omitted." *See Willeford*, 597 S.W.3d at 471. In fact, that is exactly what it did. As discussed above, the original sex offender registry statute, passed in 1994, created a simple registration, tracking, and publication system. *See Haslam*, 2017 WL 5187117, at *1. This regime was clearly constitutional under *Smith* and *Cutshall*. So also were subsequent amendments tightening penalties for failure to report in a timely manner. *Id*. at *2. In 2003, the first geographical restrictions were imposed, and these were never constitutionally tested. *Id*. These restrictions continue into the new Act, which replaced SORMA and itself added restrictions over the years. To elide the statute, the district court must look at each restriction, compare it to the guidance issued in *Smith*, *Cutshall*, *Bredesen*, and *Synder*, apply the *Mendoza-Martinez* factors where those cases come up short, and issue a remedy tailored to the statute. While technical and potentially difficult, such challenges do not make elision impossible or require the court to step into the shoes of the legislature. *See, e.g.*, *Brown v. Alexander*, 516 F. Supp. 607, 620-21 (M.D. Tenn. June 12, 1981) (severing unconstitutional provisions from a Tennessee law).

## IV.

Defendants also complain that the remedy provided by the district court—enjoining enforcement of the entire statutory code section by entities not tasked with its enforcement and issuing a declaratory judgment binding nonparties—is overly broad. We note that with Governor Lee dismissed from the suit, half the overbreadth problem is already cured.

### A.

According to Tennessee law, Director Rausch, the sole Defendant left in this case, is responsible for designing and issuing the forms which registrants use to report their information, Tenn. Code. Ann. § 40-39-205(a), creating and maintaining the registry database, *id*. § 40-39-206(a), disseminating that information to prosecutors and law enforcement, *id*. § 40-39-206(b), facilitating other agencies' entry of new data into the registry, *id*. § 40-39-204(a), and managing the repository of original registry forms, *id*. § 40-39-204(d). All of these functions fall squarely within the legitimate regulatory scheme which Tennessee is constitutionally allowed to provide

and maintain. *See supra*, part II.B.  The potentially unconstitutional portions—those provisions categorizing offenders and prohibiting them from living, working, and traveling within certain areas—are enforced by a diffusion of state officers and prosecutors which are not parties here. Based on the record before this court, we cannot say with finality that Director Rausch does not enforce any unconstitutional provisions of the Tennessee Act, but the district court can make that determination on remand.

The only injunction potentially warranted against Director Rausch would be a limited one prohibiting him from exercising his limited record-keeping powers under Tennessee law in a way that violates Plaintiffs' rights under our Ex Post Facto Clause analysis.  Therefore, to the extent his office categorizes registrants based on the crime of their conviction and without an individualized assessment, that function may be questionable under *Snyder*.  *See Snyder*, 834 F.3d at 705 ("A regulatory regime that . . . categorizes [people] into tiers ostensibly corresponding to present dangerousness without any individualized assessment . . . is something altogether different from and more troubling than Alaska's first-generation registry law.").  But Director Rausch cannot be enjoined from enforcing provisions of the Act which he does not enforce—in fact, just to state the proposition highlights the circularity of such an injunction.[3] That would be a clear redressability issue, thereby throwing standing into question. *See Lujan*, 504 U.S. at 560-61.

**B.**

Plaintiffs make little effort to defend the propriety of the declaratory judgment, simply noting that under Federal Rule of Civil Procedure 57, a declaratory judgment may complement an injunction.  That is true.  But they neglect the fact that the Declaratory Judgment Act, which gives federal courts the power to issue such judgments, does not modify the constitutional standards of jurisdiction and standing and would therefore only bind the parties to this action. *See* 28 U.S.C. § 2201; *see also Skyworks, Ltd. v. CDC*, 542 F. Supp. 3d 719, 728 (N.D. Ohio 2021) ("Accordingly, the Court concludes that a declaratory judgment binds the parties, but only

---

[3]It is also questionable if Director Rausch can be forced to provide a remedy he is statutorily prohibited from providing.  *See* Tenn. Code Ann. § 40-39-209 (providing that "no record shall be removed from the [registry] unless ordered by a court of competent jurisdiction as part of an expunction order").

the parties, wherever they may be."). Here, the relevant officials "are nonparties who would not be bound by the judgment. Thus, the [ex post facto] issue would not be settled between [Plaintiffs] and the officials who matter—which would leave the declaratory judgment powerless to remedy the alleged harm." *Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (internal citations omitted).

## V.

Tennessee's sex-offender registration laws are broad and complicated, regulating offenders in many ways previously endorsed by the courts, but also in ways thrown into question by *Snyder*. Because we disagree with the district court's application of the Ex Post Facto Clause to Tennessee's statute, and because we find that Plaintiffs lack standing to sue Governor Lee, we **AFFIRM IN PART** and **REVERSE IN PART** and **REMAND** with directions to **DISSOLVE** the injunction against Governor Lee and **DISMISS** him from this action, to **VACATE** the declaratory judgment against all parties, and to **MODIFY** the injunction against Director Rausch consistent with this opinion.