# EXHIBIT 2

**U.S. Department of Justice**

Civil Rights Division

*Appellate Section*
*Ben Franklin Station*
*P.O. Box 14403*
*Washington, DC 20044-4403*

October 17, 2022

Lyle W. Cayce
United States Court of Appeals
 for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place, Suite 115
New Orleans, LA 70130-3408

     Re: *United States* v. *Mississippi*, No. 21-60772 (5th Cir.), argued October 5, 2022—
          Letter Responding to Questions at Oral Argument Pursuant to Federal Rule of
          Appellate Procedure 28(j)

Dear Mr. Cayce:

     As requested at argument, this letter provides additional information in response to questions from the judges on the panel and also provides citations that the undersigned counsel committed to furnish.

    1. In the 1990s, the United States began filing suits under the Civil Rights of Institutionalized Persons Act (CRIPA), that alleged violations of the integration mandate of Title II of the Americans with Disabilities Act of 1990 (ADA) and its implementing regulations, in addition to unconstitutional conditions in facilities, and sought systemic remedies.[1] More recently, the United States has filed cases under Title II of the ADA, both with and without CRIPA claims, alleging violations of the integration mandate and seeking systemic relief, including in resolved cases against Arkansas, Georgia, Delaware, Louisiana, New York, North Carolina, Rhode Island, and Virginia.[2] All those cases were resolved with court-enforceable

---

     [1] See, *e.g.*, *United States* v. *Virginia*, No. 97-cv-897 (E.D. Va. filed June 10, 1997).

     [2] *United States* v. *Arkansas*, No. 4:09-cv-33 (E.D. Ark. filed Jan. 16, 2009); *United States* v. *Arkansas*, No. 4:10-cv-327 (E.D. Ark. filed May 6, 2010); *United States* v. *Georgia*, No. 1:10-cv-249 (N.D. Ga. filed Jan. 28, 2010); *United States* v. *Delaware*, No. 1:11-cv-591 (D. Del. filed July 6, 2011); *United States* v. *Louisiana*, No. 3:18-cv-608 (M.D. La. filed June 6, 2018); *United States* v. *New York*, No. 1:13-cv-4165 (E.D.N.Y. filed July 23, 2013); *United States* v. *North Carolina*, No. 5:12-cv-557 (E.D.N.C. filed Aug. 23, 2012); *United States* v. *Rhode Island*, No. 1:13-cv-442 (D.R.I. filed June 13, 2013); *United States* v. *Rhode Island*, No. 1:14-cv-175 (D.R.I. filed Apr. 8, 2014); *United States* v. *Virginia*, No. 3:12-cv-059 (E.D. Va. filed Jan. 26, 2012).

consent decrees or settlement agreements, except for the suits against Arkansas. In addition, the United States filed suit as a plaintiff-intervenor against Oregon and New Hampshire in cases initiated by private plaintiffs.[3] Those cases were resolved with court-enforceable settlement agreements following contested litigation. The United States is currently litigating Title II integration mandate suits against Georgia and Florida, and against Texas as a plaintiff-intervenor in a case brought by private plaintiffs.[4]

2. The United States has used statistical sampling similar to the Clinical Review in this case in other integration mandate cases that reached the expert discovery stage: *United States* v. *Texas*, No. 5:10-cv-1025 (W.D. Tex.) (awaiting judgment following 2018 bench trial), and *United States* v. *Oregon*, No. 3:12-cv-138 (D. Or.) (case dismissed on August 12, 2022, following State's compliance with settlement agreement). Private plaintiffs conducted a similar clinical review in a case, joined by the United States as plaintiff-intervenor, against New Hampshire. See *Kenneth R*. v. *Hassan*, 293 F.R.D. 254, 261-262 (D.N.H. 2013) (discussing experts' client review).

3. This action against Mississippi is the only ADA Title II case litigated by the United States in which the defendant opposed monitoring as a component of a remedy. Courts have, however, imposed monitoring over the objection of a defendant in other cases litigated by the Civil Rights Division. See, *e.g.*, *Melendres* v. *Maricopa Cnty.*, 897 F.3d 1217, 1221-1223 (9th Cir. 2018) (affirming, in an unconstitutional policing case where the United States was a plaintiff-intervenor, injunctive relief that included a court-appointed monitor); *United States* v. *Town of Colo. City*, No. 3-12-cv-8123, 2017 U.S. Dist. LEXIS 59220, at *22 (D. Ariz. Apr. 18, 2017) (determining that "[e]ngagement of an independent monitor * * * for purposes of assessing compliance with the court's injunction and the requirements of the Fair Housing Act is * * * both appropriate and necessary"); *United States* v. *City of New York*, No. 07-cv-2067, 2011 U.S. Dist. LEXIS 141117, at *6 (E.D.N.Y. Dec. 8, 2011) (ordering a monitor to ensure compliance with permanent injunction in Title VII suit), aff'd, 717 F.3d 72, 97, 99 (2d Cir. 2013) (affirming remedial provisions as modified, including monitoring, "to put the FDNY on a course toward future compliance with Title VII").

4. At the time that the district court issued the remedial and monitoring orders in 2021, the court had made no finding that Mississippi had achieved compliance with Title II during the period since the court issued its 2019 liability determination. As the Special Master reported: "[D]ata on community service performance is not yet adequate to assess performance or to allow the Court to determine if the requirements of the ADA are being met." ROA.4238. The district court agreed with the Special Master's assessment and adopted his recommendations in full. ROA.4278. The court specifically noted that Dr. Hogan's plan recognized that "the trial record

---

[3] *United States* v. *Oregon*, No. 3:12-cv-138 (D. Or. U.S. intervenor complaint filed Mar. 27, 2013); *United States* v. *New Hampshire*, No. 1:12-cv-53 (D.N.H. U.S. intervenor complaint filed Mar. 27, 2012).

[4] *United States* v. *Georgia*, No. 1:16-cv-3088 (N.D. Ga. filed Aug. 23, 2016); *United States* v. *Florida*, No. 13-cv-61576 (S.D. Fla. filed July 22, 2013); *United States* v. *Texas*, No. 5:10-cv-1025 (W.D. Tex. U.S. intervenor complaint filed June 22, 2011).

revealed a disconnect between the services promised by the State and the services delivered on the ground." ROA.4279; see also ROA.4281.

    5. Finally, this Court has previously held that the United States may sue violators of Section 504 of the Rehabilitation Act of 1973 or Title VI of the Civil Rights Act of 1964. See *United States* v. *Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1050 (5th Cir. 1984); *United States* v. *Marion Cnty. Sch. Dist.*, 625 F.2d 607, 612-615 (5th Cir. 1980). Because the United States may sue to address violations of these two statutes, it likewise may sue to enforce Title II of the ADA. See *Barnes* v. *Gorman*, 536 U.S. 181, 189 n.3 (2002) (explaining that Title II "could not be clearer that the 'remedies, procedures, and rights'" it provides "are the same as the 'remedies, procedures, and rights'" set forth in the Rehabilitation Act and Title VI) (quoting 42 U.S.C. 12133).

                                    Sincerely,

                          Bonnie I. Robin-Vergeer
                                   Chief

                          <u>s/ Anna M. Baldwin</u>
                          Anna M. Baldwin
                              Attorney
                          Appellate Section
                          Civil Rights Division
                          Anna.Baldwin@usdoj.gov
                            (202) 305-4278

cc: Counsel of Record (via CM/ECF)