IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| OUTMEMPHIS; MICHELLE ANDERSON; JANE DOE 2; JANE DOE 3; and JANE DOE 4, <br><br> Plaintiffs, <br> v. <br><br> BILL LEE, in his official capacity as Governor of Tennessee; JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter of Tennessee; DAVID RAUSCH, in his official capacity as Director of the Tennessee Bureau of Investigation; and FRANK STRADA, in his official capacity as Commissioner of the Tennessee Department of Correction, <br><br> Defendants. <br> ------------------------------------------------------- <br> UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF TENNESSEE, and TENNESSEE BUREAU OF INVESTIGATION, <br><br> Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> Case Nos.   2:23-cv-2670 <br>                       2:24-cv-02101 <br><br> Chief Judge Lipman |

## REPLY IN SUPPORT OF STATE ENTITIES' MOTION TO DISMISS

### INTRODUCTION

    DOJ's Response reveals the corners it has cut in bringing this suit. DOJ relies on a cascade of cross-references to gin up federal enforcement authority that Congress deliberately declined to grant in Title II's text. Then it embraces an unprecedented and boundless theory about the reach

1

of Title II that is inconsistent with its text and structure within the ADA. Finally, DOJ has sued "the State of Tennessee" generically instead of making the minimal effort required to identify actual actors that are responsible for the alleged discrimination. In a suit between sovereigns, this Court should require more of DOJ than wielding phantom enforcement power against defendants it lacks standing to sue.

## ARGUMENT

**I.    Title II of the ADA Does Not Authorize the Federal Government to Initiate Enforcement Actions.**

Congress did not authorize the Attorney General to sue States under Title II. The plain text of the statute resolves the issue since it authorizes suit only by a "person alleging discrimination on the basis of disability." 42 U.S.C. § 12133. That language moreover differs from Congress' authorizations in both Title I and Title III, which authorize suit by "the Attorney General" directly. Title II's text and structure thus foreclose the conclusion that Congress authorized suits by the Attorney General. (*See* Dkt. 28-1, at 7-17.)

In response, DOJ concedes that it is not a "*person* alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (emphasis added); (Dkt. 42, at 9-10). DOJ instead conjures suing power using a "cascade of cross-references" to read the Attorney General into Title II's enforcement provision when he does not appear in the plain text. *See United States v. Florida*, 938 F.3d 1221, 1229 (11th Cir. 2019). But when you chase the waterfalls, you find no statutory enforcement authority.

DOJ's argument starts with 42 U.S.C. § 12133, which specifies that "[t]he remedies, procedures, and rights set forth in section 794a or Title 29 shall be the remedies, procedures, and rights this subchapter provides to any person alleging discrimination" under Title II. According to DOJ (at 7-8), federal enforcement of the ADA is a "right" or "remed[y]" under "section 794a of Title 29." 42 U.S.C. 12133. So, DOJ says, it also can sue to enforce Title II. That argument

does not work because Attorney General enforcement is neither a "right," a "remedy," nor available "*to any person* alleging" Title II discrimination. *Id.* (emphasis added).

The text of 42 U.S.C. 12133 alone forecloses DOJ's position. DOJ does not (and could not) explain why the sheer provision of a cause of action to the federal government qualifies as a "right" "provided to" an "aggrieved person. A "right" is generally understood as "[s]omething that is due to a person" or "[a] legally enforceable claim that another will or will not do a given act." "Right," *Black's Law Dictionary* (11th ed. 2019). DOJ's own briefing makes it clear that "[t]he potential for the Attorney General to bring suit" is not a "right" of a person alleging disability discrimination. (Dkt. 42, at 7.) While DOJ claims power to sue, surely it would not admit that a suit by DOJ is "due to a person" alleging disability discrimination. That makes sense, as granting private citizens any such "right" would "run up against the Executive's Article II authority to enforce federal law" by making Title II suits a matter of aggrieved persons' "right" rather than executive discretion. *United States v. Texas*, 599 U.S. 670, 677-79 (2023).

Nor is federal enforcement itself a "remedy" "provided to" an "aggrieved person. That term typically refers to a form of "legal redress" by which one "enforce[s] a right." "Remedy," *Random House Dictionary of the English Language* (2d. ed. 1987); "Remedy," *Webster's Ninth New Collegiate Dictionary* (1985) (defining "remedy" as "the legal means to recover a right"). But no one obtains legal redress for disability discrimination simply by knowing that DOJ *might* choose to sue the state that inflicted the alleged harm. A "remedy" means something like "compensatory damages and injunctive relief"—not a cause of action for DOJ. *See Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024) (describing the sort of remedies that are appropriate in in Title VI actions). That is exactly how the term is used in Title VII, where "appropriate remedies" include "reinstatement or hiring of employees with or without back pay." 42 U.S.C. § 2000e-16(b).

3

DOJ's contrary reading makes Title II's enforcement provision nonsensical, whether it rests on the term "remedy" or "right."  DOJ reads section 12133 to say "[t]he [potential for the Attorney General to bring suit] shall be the [potential for the Attorney General to bring suit] this subchapter provides to any person alleging discrimination on the basis of disability."  That renders a clause intended to "provide" a remedy or right "to" a "person" meaningless, because the person has no ability to effectuate that "potential."  DOJ's interpretation does not make sense because Congress did not intend Title II to work that way.  This Court is "not to impose nonsensical readings of a statute if alternative interpretations consistent with the legislative purpose are available."  *Milman v. Fieger & Fieger, P.C.*, 58 F.4th 860, 869 (6th Cir. 2023).

A "wider look at" the "structure" of the cross-referenced statutes confirms that Title II does not sub silentio smuggle in federal enforcement authority.  *Van Buren v. United States*, 593 U>S. 374, 389 (2021).  DOJ rests on the incorporation of Section 749a of Title 29.  That statute provides: (1) "the remedies, procedures, and rights set forth in section 717 of the Civil Rights Act of 1964" to "any employee or applicant for employment aggrieved by the final disposition of such complaint" and (2) "the remedies, procedures, and rights set forth in Title VI of the Civil Rights Act of 1964 . . . (and in subsection (e)(3) of section 706 of such Act)" to "any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794."  29 U.S.C. § 794a.

Both of those cross-referenced statutes thus set out certain remedies, procedures, and rights separate for aggrieved *persons*.  *First*, Section 717 of the Civil Rights Act of 1964 allows "an employee or applicant for employment" to "file a civil action as provided in section 2000e-5 of this title."  42 U.S.C. § 2000e-16(c).  And section 2000e-5 authorizes "a civil action . . . against the respondent" to "the person claiming to be aggrieved." 42 U.S.C. 2000e-5(f)(1).  *Second*, Title VI of the Civil Rights Act provides a right of civil action to private individuals to enforce its non-discrimination provision.  *Alexander v. Sandoval*, 532 U.S. 275, 279-80 (2001).  Finally,

4

subsection (e)(3) of section 706 of the Civil Rights authorizes "a civil action" by "the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1).

The cross-references provisions separately set out certain rights for DOJ.[1] For example, compliance with Title VI can be effected by a "[f]ederal department [or] agency" through such "means authorized by law," 42 U.S.C. § 2000d-1, including "agency suits to enforce contractual antidiscrimination provisions and compliance with agency regulations," *Cannon v. University of Chicago*, 441 U.S. 677, 722 (White, J., dissenting). And Title VII specifically grants "the Attorney General" authority to "bring a civil action against" a government alleged to have engaged in an unlawful employment practice. 42 U.S.C. § 2000e-5(f)(1).

Title II's text focuses on the "person alleging discrimination on the basis for disability," so it makes sense for Congress to provide the "remedies, procedures, and rights" provided to the aggrieved persons in the cross-referenced statutes. 42 U.S.C. § 12133. It makes no sense, in a statute providing rights and remedies to aggrieved "person[s]," to pull through separate statutory authorizations of federal enforcement. *Id.* That is, there is a difference between remedies and rights provided to persons and authorizations of federal enforcement. Title II's text only incorporates the former. At a minimum, it is not "unmistakably clear" that 42 U.S.C. 12133 incorporates *both* the rights provided to persons in the cross-referenced statutes *and* the separate federal enforcement authorizations in the cross-referenced statutes. And the Spending Clause requires just that. (Dkt. 28-1, at 12-13.)

The decisions DOJ cites in support of its position are unpersuasive. As explained in the State Entities' opening memorandum, the only Court of Appeals to address this question—which

---

[1] That fact alone defeats DOJ's argument that Titles I and III were somehow special in "legislating against different legal backdrops" than Title II. (Dkt. 42, at 12-13.) All three titles involve cross-references to "complex provisions" of other statutes that "spread enforcement authority" to both the Attorney General and private individuals. *Id.* The fact that Titles I and III also specifically give the Attorney General enforcement authority within the same Title—while Title II does not—reflects that Congress knows how to give DOJ the power to sue when it wants to.

5

divided on it at both the panel and en banc petition stages—got it wrong. (*See* Dkt. 28-1, at 14-17.) The smattering of district court opinions DOJ cites nothing that changes the analysis. In fact, none of the district courts even considered that Title II provides remedies only to a "person alleging discrimination"—unlike Titles I and III.

For instance, the district court in *United States v. Mississippi*, No. 3:16-cv-622, 2019 WL 2092569, at *2 (S.D. Miss. May 13, 2019), simply block-quoted the conclusion of *United States v. Harris Cnty.*, No. 4:16-cv-2331, 2017 WL 7692396, at *1 (S.D. Tex. Apr. 26, 2017). *Harris County*, for its part, relied on a string of citations to other district court decisions and a single paragraph that concluded that because DOJ could sue to enforce other statutes, it therefore must be able to sue to enforce Title II. 2017 WL 7692396, at *1. The district court in *United States v. Virginia* also focused on tracing the cascades of remedies in the cross-references while failing to engage at all with the plain text that provides those remedies only to a "person alleging discrimination." No. 3:12-cv-59, 2012 WL 13034148, at *2-3 (E.D. Va. June 5, 2012). Likewise, the district court in *Smith v. City of Philadelphia* gave short shrift to the text, skipping over the language about "person[s]" to conclude that Title II simply "incorporates" the remedies of the Civil Rights Act. 345 F. Supp. 2d 482, 490 (E.D. Pa. 2004). And the district court in *United States v. City and County of Denver* was not even answering the question presented in this case. There, the court was asked to decide whether DOJ "ha[d] complied with the procedural requirements of the regulations implementing Title II of the ADA" and whether Title II "extinguish[ed] the right of the United States to file an independent action upon a suit being filed by a private party." 927 F. Supp. 1396, 1400 (D. Col. 1996). DOJ is wrong to rely on *City and County of Denver* to support its position; so too were the district courts that DOJ now cites. *See Harris Cnty.*, 2017 WL 7692396, at *1 (citing *City & Cnty. of Denver*); *Virginia*, 2012 WL 13034148, at *2 (same).

The plain text of Title II requires that DOJ's suit be dismissed.

## II.     The Complaint Fails to State a Claim under Title II.

The text, structure, and history of Title II show that it is concerned only with guaranteeing equal access to benefits States extend through their programs, services, and activities. (Dkt. 28-1, at 17-22.)  The cases DOJ cites only confirm this understanding of the plain text.  Despite the expansive language used in some of the opinions, the actual holdings that bind this Court involved State action that denied benefits falling well within the common understanding of programs or services. *See Pa. Dept. of Corrections v. Yeskey*, 524 U.S. 206 (1998) (prison boot camp program); *MX Grp., Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002) (permit to operate methadone clinic); *Johnson v. City of Saline*, 151 F.3d 564 (6th Cir. 1998) (contract to operate public access cable station).  So too did most of the out-of-circuit cases DOJ cites. *Hason v. Med. Bd. of Cal.*, 279 F.3d 1167 (9th Cir. 2002) (license to practice medicine); *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002) (parole); *Oconomowoc Residential Programs, Inc. v. City of Milwaukee*, 300 F.3d 775 (7th Cir. 2002) (zoning variance to operate community living facility); *Bay Area Addiction Rsch. & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 735 (9th Cir. 1999) (permit to operate methadone clinic); *Armstrong v. Wilson*, 124 F.3d 1019 (9th Cir. 1997) (vocational programs, sentence reduction credits, and emergency evacuation plans); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37 (2d Cir. 1997) (permit to operate rehabilitation center).  DOJ has not cited any case where Title II has been extended by a court as far as its novel theory here.

The natural terminus of DOJ's reasoning, which it buries in a footnote, demonstrates its absurdity.  DOJ concedes (Dkt. 42, at 20 n.10) that it must make its interpretation square with Title II's definition of "qualified individual," which is an individual that meets "the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).  To do that, DOJ must argue that "application of the state's criminal law to []conduct" is a program for which prostitutes "qualify and meet eligibility requirements for." (Dkt. 42, at 20 n.10; *cf.* No. 2:23-cv-02670, Dkt. 67, at 34 ("We are all 'eligible'

7

for participation in the criminal legal system . . .")).  If that is so, then when Tennessee statute exempts those with "severe mental disease or defect" from prosecution, Tenn. Code Ann. § 39-11-501(a), it thereby violates federal law by "exclud[ing]" a "qualified individual with a disability"[2] from participation in the program of applying criminal law to unlawful conduct through prosecution, conviction, and punishment.  42 U.S.C. § 12132.  This Court should decline such an absurd reading of Title II.

Again, the plain text of Title II requires that DOJ's suit be dismissed.

### III.    The Federal Government Failed to Sue a Proper Defendant.

DOJ lacks Article III standing because the injury alleged is not "fairly traceable to the challenged action; and redressable by a favorable ruling[]" against "the State of Tennessee." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); (*see* Dkt. 28-1, at 22-24.)

DOJ's vague assertion that "enforcement of Tennessee's aggravated prostitution law encompasses multiple actions by Tennessee and TBI" flies in the face of Tennessee statutory law, which exclusively provides local district attorneys general with authority to enforce the aggravated prostitution law.  (Dkt. 42, at 20); Tenn. Code Ann. § 8-7-103(1).  DOJ's Complaint recognizes as much.  (See Dkt. 1, at 7, ¶ 39, "DA's offices are responsible for elevating the prostitution misdemeanor charges to aggravated prostitution felony charges.".)  Indeed, DOJ's complaint focuses specifically not just on "DA's offices" but "the DA's Office in Shelby County."  (Dkt. 1, at 7-8, ¶¶ 37-42.)  A defendant facing aggravated prostitution felony charges in Shelby County certainly would not confuse the local district attorney with "the State."  After all, "[t]he district attorneys general for the judicial districts are elected by the qualified voters of the districts respectively."  Tenn. Code Ann. § 8-7-102.  Yet DOJ improperly conflates "DA's offices" with "the State" as a single-entity enforcer of the aggravated prostitution statute.

---

[2] Severe mental disease or defect surely counts as a disability.  *See* 42 U.S.C. § 12102(1) (defining "disability" as a "mental impairment that substantially limits one or more major life activities").

In fact, DOJ's response reveals that it is just using "the State of Tennessee" as a generic stand-in for actual enforcers. It admits that "local district attorneys 'prosecute' violations of state criminal statutes" and that the TBI is the agency responsible for maintaining and publishing a sexual offender registry. (Dkt. 42, at 21-22.) But it fails to do the same legwork for other enforcement conduct it alleges violates the ADA. It is not "Tennessee," as DOJ asserts, that incarcerates convicts, but administrators of prisons and jails. (Dkt. 42, at 22.) And "Tennessee" does not issue driver licenses; an agency does. (Dkt. 42, at 22.) Because, according to DOJ, it is "[e]ach of these alleged actions [that] harms individuals with disabilities and violates the ADA," DOJ needs to sue the authorities responsible for those actions. (Dkt. 42, at 22.) The Sixth Circuit has repeatedly recognized as much. *Does 1-9 v. Lee*, 102 F.4th 330, 335 (6th Cir. 2024); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1029 (6th Cir. 2022).

DOJ's reliance on cases where it has named "the State" as a defendant is unavailing because the argument the State Entities assert here was not raised or addressed in any cases cited by DOJ. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."). DOJ cannot avoid Article III's requirements in this case just because they may have gotten away with doing so in the past.[3] DOJ has cited no case affirmatively holding that it can simply name a State and obtain standing to seek injunctive relief. That proposition[4] will be useful for the States in their litigation against the federal government moving forward. *Cf., e.g.*, *Tennessee v. EEOC*, No. 2:24-cv-00084 (E.D. Ark.), (Dkt. 34, at 31 (May 17, 2024) (DOJ arguing in response to preliminary injunction motion that

---

[3] Moreover, all but *United States v. Florida* involved Supremacy Clause preemption challenges to state immigration laws; not civil suits under the ADA.

[4] DOJ's position also ignores the traditional understanding that injunctions operate *in personam*. *Nken v. Holder*, 556 U.S. 418, 428 (2009); *Terrell v. Ingersoll*, 78 Tenn. 77, 85 (1882).

Tennessee lacks standing to sue EEOC because enforcement "can be done only by DOJ") (attached as Exhibit 1).

Naming "the State" as the enforcer of the aggravated prostitution statute in the face of contrary state law, and its own Complaint,[5] deprives DOJ of Article III standing. It should be required to name a proper defendant—the rule all other litigants must follow.

## CONCLUSION

For these reasons, the Complaint should be dismissed in its entirety.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Cody N. Brandon*
CODY N. BRANDON (BPR# 037504)
Managing Attorney
Senior Assistant Attorney General

DAVID RUDOLPH (BPR# 13402)
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
PO Box 20207
Nashville, TN  37202
Off. (615) 532-7400
Fax (615) 532-4892
Cody.Brandon@ag.tn.gov
David.Rudolph@ag.tn.gov

---

[5] See Dkt. 1, at 7-8, ¶ 42.

**CERTIFICATE OF SERVICE**

    I hereby certify that a true and exact copy of the foregoing was filed and served via the Court's electronic filing system on this the 13th day of June 2024, upon:

Stella Yarbrough (BPR No. 033637)
Jeff Preptit (BPR No. 038451)
Lucas Cameron-Vaughn (BPR No. 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.rog
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Alex Agathocleous (NY Bar 4227062)
Alexis Alvarez (NY Bar 5854278)
Jon W. Davidson (CA Bar 89301)
Rachel Meeropol (NY Bar 4100954)
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclus.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Lynly S. Egyes (NY Bar 4838025)
Milo Inglehart (NY Bar 5817937)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert (NY Bar 5366554)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for Plaintiffs*

Stephanie Berger

Ali Szemanski
Anna Bobrow
U.S. Department of Justice
150 M Street NE
Washington, DC 20002
*Counsel for the United States*

                                                          s/ *Cody N. Brandon*
                                                          CODY N. BRANDON