**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) <br>    Plaintiffs,  ) <br> ) <br> v.  ) <br> ) <br> STATE OF TENNESSEE and TENNESSEE ) <br> BUREAU OF INVESTIGATION,  ) <br>    Defendants.  ) | No. 2:24-cv-02101-SHL-tmp |

**ORDER GRANTING JOINT MOTION FOR STIPULATION AND ORDER
REGARDING DISCOVERY**

Before the Court is the Parties' Joint Motion for Stipulation and Order Regarding Discovery, filed July 1, 2024. (ECF No. 55.) The Parties assert that this stipulation will reduce the time, expense, and other burdens of discovery of documents, things, and electronically stored information ("ESI"). (Id. at PageID 534.) The Court finds there is good cause and therefore **GRANTS** the motion.

**IT IS THEREFORE ORDERED** that this stipulation shall apply as follows:

**I.    SUBJECT AND SCOPE OF DISCOVERY**

The subjects on which discovery may be needed are those described in the Parties' Rule 26(f) Report, ECF No. 17, and discovery should be completed by the deadlines set forth in the Scheduling Order, ECF No. 25.

**II.    PRESERVATION AND PRODUCTION OF DOCUMENTS**

   **A.    Local Rule 26.1(e)**

   The Parties agree to comply with the provisions of Western District of Tennessee Local Rule 26.1(e) regarding e-discovery in addition to the terms set out in this Stipulation. If the

Parties disagree on the meaning or applicability of any of the requirements in Local Rule 26.1(e) or this Stipulation, they agree to meet and confer in order to attempt to reach a good faith agreement prior to filing any motion regarding discovery with the Court.

**B.     Preservation**

1. The Parties agree that by preserving documents, things, and ESI for the purpose of this litigation, they are not conceding that such material is discoverable, nor are they waiving any claim of privilege.

2. This Stipulation and Order does not modify any Party's obligation to maintain and preserve documents, things, and ESI where otherwise required by law, pursuant to a court order or administrative order, or in response to other anticipated litigation.

**C.     Limitations on Obligation to Preserve and Produce**:

Subject to § II.E.1, for purposes of this action, the Parties agree to limit the scope of preservation as described in this section.

1. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation the following categories of ESI:

    a. Delivery or read receipts of e-mail;

    b. Logs or other data from video-conferencing (including, *e.g.*, Skype or Zoom) or instant messaging tools involving (i) attorneys for the United States (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff);

    c. Temporary or cache files, including internet history, web browser cache, and cookie files, wherever located;

    d. Internally facing server system logs;

    e. Externally facing or hosted file sharing system logs;

      f.      System data from photocopiers or fax machines;

      g.      Auto-saved copies of electronic documents;

      h.      Deleted, slack, fragmented, or other data only accessible by forensics;

      i.      Random access memory ("RAM"), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

      j.      Logs of or other data from audio calls (including, *e.g.*, landline phones, mobile devices, and Voice Over Internet Protocol ("VOIP") made to or from (i) attorneys for the United States (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff); and

      k.      Voicemail messages on the voicemail systems of (i) attorneys for the United States (and their staff) and/or (ii) attorneys for Defendants in this case (and their staff).

2.      When duplicate copies[1] of relevant ESI exist in more than one location, this Order does not require a Party to preserve all duplicates as follows:

      a.      ESI existing or stored on mobile or portable devices (*e.g.*, smartphones, tablets, thumb drives, CDs, DVDs, etc.) or file sharing sites does not need to be preserved pursuant to this Order *provided that* duplicate copies of the ESI, including metadata, are preserved in another location reasonably accessible to the Party.

---

[1] "Duplicates" in the context of ESI are copies of identical documents identified with matching MD-5 hashes, which is a mathematically-calculated 128 bit value used to create a unique identifier for an electronic file.

      b.      ESI on backup tapes, continuity of operations or disaster recovery systems, data or system mirrors or shadows, and other systems that are used primarily for the purpose of system recovery or information restoration and are not reasonably accessible ("Backup Systems") need not be preserved pursuant to this Order *provided that* duplicate copies of relevant ESI have been preserved in another reasonably accessible location. However, if a Party knows that relevant ESI exists *only* on a Party's Backup System, the Party will take reasonable steps to preserve ESI on the Backup System until the Parties can agree on how and when the ESI will be preserved or produced. If the Parties cannot reach agreement, they will seek a ruling from the Court.

3. The Parties agree that they do not need to take specific, affirmative steps to preserve for purposes of this litigation relevant documents, things, or ESI (including internal communications, drafts, versions, and collaboration on case-related work) created by and, if shared with any other(s), exchanged *solely among*: 1) attorneys for the United States (and their staff); 2) attorneys for Defendants (and their staff); and/or 3) attorneys for the United States (and their staff) and attorneys for the private plaintiffs in Case No. 2:23-cv-2670.

4. The Parties agree not to seek discovery of documents, things, and ESI that they have agreed not to preserve pursuant to § II.C.1-3 above. As provided in § II.E.1 below, the Parties do not need to list such items on a privilege log prepared and served in connection with discovery in this case.

**D.     Identification & Production of Documents, Things and ESI**

    1.     <u>Production Format</u>

        a.     ESI and hard copy documents must be produced as specified herein.

        b.     Except as provided in § II.D.1.g below for specific types of documents and data, ESI shall be produced in its native form and must not be converted to another format (*e.g.*, PDF). ESI must be collected and produced in a way that preserves existing metadata.

        c.     Paper documents must be scanned at 300 d.p.i. and produced as searchable PDFs, unitized as one document per PDF except as provided in § II.D.1.g below for specific types of documents and data. Oversized documents must be produced as PDFs, JPEG images, or in hard copy paper form so as to retain the resolution and scale of the original document.

        d.     PDFs shall be black-and-white, unless a black-and-white format would obscure or degrade information (*e.g.*, color-coded graphs or charts, printed photographs, or redlines), in which case the Party will produce a color PDF. Nothing in this provision prevents a Party from scanning and producing paper documents as color PDFs, nor does anything in this provision prevent a Party from producing color PDFs if they choose.

        e.     If a document has been prepared in several copies, or additional copies have been made that are not identical (or are no longer identical by reason of subsequent notation or other modification of any kind whatever), each non-identical copy is a separate document.

 f. Except for native files, the Parties will produce responsive documents Bates-stamped with a prefix to indicate the Party producing the documents. For native files, which cannot be Bates-stamped, the Parties will rename the file with its corresponding Bates-number and produce a spreadsheet index that, for each native file, includes the original file name, production path, and an assigned Bates-number. The Bates-number shall be unique, have a consistent format within and between productions, have the same number of digits, and use leading zeros where necessary.

 g. Specifications for Specific File Types:

  i. Emails will be produced as .msg files. The Parties agree to produce all responsive non-privileged emails in each thread or chain and will not restrict productions to the most inclusive emails.

  ii. Text messages will be produced as PDFs, including information about the participants and the date/time of the communications.

  iii. Audio files and video files should be produced as native files, unless the native form is a proprietary format, in which case the file(s) should be converted into a non-proprietary format that can be played using Windows Media Player.

  iv. Excel or other types of spreadsheets shall be produced as native files with all cells unlocked.

  v. PowerPoint files should be produced as native files with all notes unaltered and viewable for each file.

  vi. Social media content (including comments, "likes," sharing, and other interactions with the post(s)) shall be produced as PDFs, including information about the participants and the date/time of the communications.

  vii. For production of tangible things and production of information from a structured database, proprietary software, vendor-managed software, or other source from which native production is not reasonably practicable, the Parties will meet-and-confer before making any production to attempt to agree on a reasonable and proportional form of production that maintains the integrity of the tangible things or documents

2. <u>Production Specifications</u>

 a. It is the responsibility of the Party responding to a discovery request to identify and produce responsive information including ESI.  If a Party intends to use an electronic search to locate responsive electronically stored information, the Party shall notify all other Parties and disclose proposed search terms and any restrictions as to scope and method.  The Parties shall confer in good faith in an attempt to reach an agreement as to the method of searching, and the words, terms, and phrases to be searched.  The Parties shall also attempt to reach an agreement as to the timing and conditions of any additional searches that may become necessary in the normal course of discovery.

 b. Responsive documents and ESI will be produced via .zip file(s) uploaded to an electronic file transfer site, in accordance with the written instructions provided by counsel for the Requesting Party or as otherwise agreed by the Parties.  In the case of documents and ESI produced by the United States, responsive

7

        information will be produced via .zip file(s) uploaded to the Justice Enterprise File Sharing System (JEFS). In the case of documents and ESI produced by Defendants, the .zip file(s) shall be encrypted, and Defendants will provide a decryption key in a communication separate from the production itself.

    c.    Productions via electronic file transfer will be uploaded in a manner (or otherwise clearly labeled) to indicate (1) the Party producing the information, (2) the date of the production, and (3) the Bates-range(s).

    d.    If a Party needs to redact a portion of a document for which only a native file would be produced, the Parties will meet and confer regarding production of the redacted document.

    e.    The Parties agree to remove all encryption or password protection for all ESI produced. In the alternative, the Parties agree to provide passwords or assistance needed to open encrypted files.

**E.    Privileged Documents, Things and ESI**

    1.    If any discovery request appears to call for the production of documents, things or ESI covered by § II.C, the responding Party is not required to produce these documents, things, or ESI, or to identify such information on a privilege log. However, if a Party preserves relevant documents, things, or ESI covered by § II.C, in order to support a claim or defense in this case, the Party shall produce such information or identify it on a privilege log notwithstanding § II.C.

    2.    The Parties agree to provide privilege logs as soon as practicable based on good-faith best efforts, but in any event, in at least three installments: (1) no later than 60 days after the Producing Party's first production; (2) 60 days after the Producing

        Party's first production and 10 days before any custodian's deposition; and (3) a last production to occur no later than 30 days before the close of fact discovery. If any log is produced less than 30 days before the close of discovery, the receiving Party may, notwithstanding the date of the close of discovery, review and register complaints about said log(s) no later than 30 days after the date of receipt and shall have the right to have those complaints resolved and have any non-privileged documents produced.

3. If a privilege log is produced, the Court expects the Parties to discuss foregoing using traditional document-by-document logs in favor of alternate logging methods, such as identifying information by category or including only information from particular metadata fields (e.g., author, recipient, date). Compliance with the logging provisions of this section shall not constitute a waiver of any privilege or protection.

4. No provision of this Stipulation and Order limits the authority of a Party to seek, and the Court to issue, a non-waiver on other terms and conditions pursuant to Rule 502 of the Federal Rules of Evidence.

5. <u>Inadvertent Disclosure of Privileged or Protected Information</u>

    a. The Parties agree that a disclosure of information contained within documents, things, and ESI that is protected by attorney-client privilege, work product protection, common interest privilege, and/or applicable governmental privileges (such as deliberative process) shall not constitute a waiver of any applicable privilege or protection even though there is a failure to take

    reasonable steps to prevent production of information covered by such privilege or protection or a failure to take reasonable steps to rectify the error.

b. If the Producing Party inadvertently discloses information that it asserts is privileged or protected, it will notify the receiving Party within 14 days of discovery of disclosure and provide the production date and the Bates number(s) of all material that it believes contains the inadvertently disclosed information.

c. If a production contains information that the receiving Party believes is privileged or protected and was inadvertently produced, it will notify the producing Party, through *all* counsel of record for the producing Party, and provide the Bates number(s) of the item it believes was inadvertently produced within 14 days of discovery of the potentially privileged or protected information.  Within 14 days after receiving notification, the producing Party may make a written request for return of the material.  If the producing Party does not send a written request for the return of the material to the receiving Party within 14 days, the producing Party waives all claims of privilege or protection as to the material, but this still does not operate as a subject matter waiver.

d. When the receiving Party receives a written demand for return of the material, it will make reasonable, good faith efforts to promptly sequester, return or destroy all inadvertently produced material identified by the producing Party within 7 days from receipt of the written demand.  If copies of inadvertently produced materials are located or stored on the receiving Party's Backup

        System(s), those copies need not be affirmatively removed but, rather, the receiving Party may overwrite those copies according to its normal records management procedures. If requested by the producing Party, the receiving Party shall provide written confirmation of its efforts to sequester, return, or destroy all privileged or protected material inadvertently produced.

    e.    If the receiving Party must destroy or delete production media (*e.g.,* CD, DVD, thumb drive, or downloaded file(s)) in order to destroy or delete inadvertently produced material, the producing Party will provide a duplicate copy of the production media minus only the inadvertently produced material within 14 days of its written request for return of the material to the receiving Party.

    f.    If the receiving Party intends to challenge the claim of privilege or protection or the inadvertence of the production, it will keep one copy of the inadvertently produced material in a sealed envelope or a sequestered location while seeking a ruling from the Court. Nothing in this Stipulation prevents access by a receiving Party's information technology or security personnel from accessing, in the normal course of their work, systems or locations where inadvertently produced material is sequestered.

F.    **Costs of Document Production**

Each Party shall bear the costs of producing its own documents, things, and ESI.

III.    **MISCELLANEOUS**

A.    The Stipulation may be executed in counterparts.

B.     The terms of this Stipulation and Order are not exhaustive.  Each Party reserves the right to subsequently request to meet and confer to address any discovery matters, including forms of production and other matters not addressed herein.

C.     None of the meet and confer provisions of this Stipulation shall be construed to extend the time within which a Party must respond to a discovery request.

**IT IS SO ORDERED**, this 9th day of July, 2024.

                                              s/ Sheryl H. Lipman
                                              SHERYL H. LIPMAN
                                              CHIEF UNITED STATES DISTRICT JUDGE