# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF LIABILITY

It is the intent of the parties to this Settlement Agreement and Release of Liability (the "AGREEMENT") to fully settle all claims and potential claims against the State of Tennessee, including its employees, agents, agencies, and instrumentalities (collectively, the "STATE"), that relate to or arise out of Counts IV, V, VI, VII, VIII, and X of the complaint filed by Michelle Anderson, Jane Doe 2, Jane Doe 3, Jane Doe 4 (collectively, "INDIVIDUAL PLAINTIFFS") and OUTMemphis (collectively with the INDIVIDUAL PLAINTIFFS, "PLAINTIFFS") against Governor Bill Lee, Attorney General Jonathan Skrmetti, TBI Director David Rausch ("TBI"), and TDOC Commissioner Frank Strada (collectively, "DEFENDANTS"), captioned *OUTMemphis v. Lee*, No. 2:23-cv-2670 (W.D. Tenn.). This release does not prejudice INDIVIDUAL PLAINTIFFS' ability to obtain compensation recovered by the United States in *United States v. Tennessee*, No. 2:24-CV-2101 (W.D. Tenn.) to the extent available.

## I.   ADDITIONAL DEFINITIONS

The "LITIGATION" is defined to mean the lawsuit captioned *OUTMemphis v. Lee*, No. 2:23-cv-2670 (W.D. Tenn.).

The "PARTIES" to this Agreement is defined to mean PLAINTIFFS and DEFENDANTS.

The "CLAIMS" this Agreement resolves is defined to mean any and all actual or potential claims that have been brought or could have been brought, or that in any way relate to, challenging the CHALLENGED FRAMEWORK, including but not limited to Counts IV, V, VI, VII, VIII, and X of PLAINTIFFS' First Amended Complaint. This Agreement has no impact on Counts I-III and IX of PLAINTIFFS' First Amended Complaint.

The "CHALLENGED FRAMEWORK" is defined to mean any administration or enforcement of Tenn. Code Ann §§ 40-39-201 through -218, and—to the extent they exist—any related regulations, policies, procedures, practices, and customs that DEFENDANTS may administer, implement, and/or enforce.

"ELIGIBLE OFFENSE" means a conviction for aggravated prostitution under Tenn. Code Ann. § 39-13-516 or attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact to aggravated prostitution.

"SUSPECTED A-P REGISTRANTS" means offenders who do not meet the definition of "UNLOCATED A-P REGISTRANTS" and who, according to records currently available to TBI within the registration database, are registered solely because of one or more ELIGIBLE OFFENSES.

"POTENTIALLY ELIGIBLE A-P REGISTRANTS" means "SUSPECTED A-P REGISTRANTS" for whom a criminal history check does not indicate a conviction for any other registrable offense as defined by Tenn. Code Ann. § 40-39-202.

"UNLOCATED A-P REGISTRANTS" means offenders who, according to records currently available to TBI within the registration database, are registered solely because of an ELIGIBLE OFFENSE and who are currently in "ABSCONDER" status in the registration database.

## II.    BACKGROUND

The PARTIES, having reached agreement, state the following background facts in support of this AGREEMENT:

1. Prior to July 1, 2024, individuals who were convicted of aggravated prostitution under Tenn. Code Ann. § 39-13-516, or for attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact to aggravated prostitution, were defined as "sexual offenders" or "violent sexual offenders," depending on the date of offense, under the CHALLENGED FRAMEWORK.

2. On February 1, 2024, PLAINTIFFS filed an Amended Complaint in this LITIGATION challenging DEFENDANTS' administration or enforcement of the CHALLENGED FRAMEWORK with respect to individuals convicted of aggravated prostitution.

3. The General Assembly of Tennessee has since enacted 2024 Tennessee Public Chapter 545, which amends the CHALLENGED FRAMEWORK to remove aggravated prostitution from the definition of "sexual offense" and "violent sexual offense" and to create a path for termination of registration requirements for individuals registered solely because of one or more aggravated prostitution convictions.  Public Chapter 545 is effective on July 1, 2024.

4. The PARTIES agree that the amendments effectuated by Public Chapter 545 have a substantial impact on the CHALLENGED FRAMEWORK and on PLAINTIFFS' CLAIMS.

## III.    TERMS OF AGREEMENT

1. Within 7 days after execution of this AGREEMENT or by July 8, 2024, whichever is later, TBI will post to the "SOR Information" page of the public-facing sex offender registry website the following notice:
> 2024 Public Chapter 545: Removes "Aggravated Prostitution" from definition of "Violent Sexual Offense" and "Sexual Offense."  Also allows offenders currently registered for "Aggravated Prostitution" committed prior to July 1, 2024, to file request for termination.

2. Within 28 days after execution of this AGREEMENT, TBI will review readily available information in the registration database and determine which offenders are SUSPECTED A-P REGISTRANTS.

3.  Within 45 days after execution of this AGREEMENT, TBI will conduct criminal history checks of every SUSPECTED A-P REGISTRANT and determine which offenders are POTENTIALLY ELIGIBLE A-P REGISTRANTS. TBI will prioritize review of SUSPECTED A-P REGISTRANTS on "active" status.

    4. Within 60 days after execution of this AGREEMENT, TBI will mail to the last recorded registering agency of each POTENTIALLY ELIGIBLE A-P REGISTRANT a letter informing the registering agency of the effective date of Public Chapter 545, the amendments to the CHALLENGED FRAMEWORK made by Public Chapter 545, and that TBI's records indicate that the POTENTIALLY ELIGIBLE A-P REGISTRANT may be eligible for termination of registration requirements under Tenn. Code Ann. § 40-39-207 if a written request for such termination is submitted to TBI. The letter will substantially conform to the template attached as Exhibit 1 to this AGREEMENT. Copies of each letter will be mailed to the last provided address of the POTENTIALLY ELIGIBLE A-P REGISTRANT.

    5. Notwithstanding paragraph 4, if a POTENTIALLY ELIGIBLE A-P REGISTRANT is in an "Inactive-Moved" status and the last recorded registering agency is TBI, TBI will save the letter to the registrant's file and mail a copy to the last provided address of the POTENTIALLY ELIGIBLE REGISTRANT.

    6. In addition to the efforts made in paragraphs 2-5, TBI will conduct criminal history checks of the INDIVIDUAL PLAINTIFFS within 15 days after execution of this AGREEMENT. If TBI determines that any INDIVIDUAL PLAINTIFF is a POTENTIALLY ELIGIBLE A-P REGISTRANT, TBI will so communicate to the INDIVIDUAL PLAINTIFF, through counsel, within 25 days after execution of this AGREEMENT.

    7. Upon receiving a written request for termination from a POTENTIALLY ELIGIBLE A-P REGISTRANT, TBI will review the POTENTIALLY ELIGIBLE A-P REGISTRANT's file and criminal history check and will consult with the local registering agency to determine if the POTENTIALLY ELIGIBLE A-P REGISTRANT is eligible for termination.

    8. TBI will not base a denial of a request for termination made by an offender whose only qualifying conviction(s) is/are for an ELIGIBLE OFFENSE on substantial noncompliance.

    9. TBI receives requests for termination from many offenders on a rolling basis. TBI makes its best effort to process all requests promptly and in the order in which they are received. Sometimes circumstances outside of TBI's control—such as missing documents in a file, a surge in requests, or staff absences—cause delays in processing a request. TBI will make its best effort to address requests by POTENTIALLY ELIGIBLE A-P REGISTRANTS promptly in the order in which they are received.

    10. Upon granting a request for termination, TBI will effectuate termination according to its usual processes, including by removing the terminated registrant from the public-facing website, updating the registry database to reflect the registrant's termination, and mailing a letter confirming termination to the registrant along with the form for requesting removal of the sex offender license designation from the Tennessee Department of Safety and Homeland Security.

    11. Within 15 days after (a) INDIVIDUAL PLAINTIFFS' removal from the registry; or (b) TBI's production of evidence showing that INDIVIDUAL PLAINTIFFS are not eligible for removal from the registry by virtue of a non-A-P qualifying conviction, the PARTIES will file this

AGREEMENT in the LITIGATION and jointly seek dismissal with prejudice of the CLAIMS, requesting that the Court retain jurisdiction for the sole purpose of enforcing this AGREEMENT against the PARTIES. The rights and benefits conferred by this AGREEMENT, and the promises made herein, are enforceable only by the PARTIES to this AGREEMENT, but not by any third-party or collateral beneficiary, whether known or unknown, nor by any party in privity with the PARTIES.

12. Within 15 days after execution of this AGREEMENT, the PARTIES will file this AGREEMENT in the LITIGATION and jointly seek a stay of the case as to the CLAIMS.

13. PLAINTIFFS waive any right to seek attorneys' fees or costs incurred in the LITIGATION which arose from or were related to the CLAIMS. PLAINTIFFS do not waive the right to seek attorneys' fees or costs related to claims which are not addressed by this AGREEMENT. A statement of this waiver shall be included in the PARTIES' filing jointly seeking dismissal of the CLAIMS.

14. This AGREEMENT is a final and conclusive resolution of the CLAIMS. All unadjudicated damages, injuries, claims, demands, or causes of action—known or unknown—arising from, related to, or in any way connected to the CHALLENGED FRAMEWORK, that have accrued through the date of this AGREEMENT, that were or could have been brought by the PARTIES, their privies, or their agents, whether current or former, in their official and individual capacities, against one another, shall be deemed released, waived, dismissed, withdrawn, and/or denied as moot, except as may be necessary to enforce the terms of AGREEMENT, provided, however, that nothing in this AGREEMENT shall preclude DEFENDANTS or PLAINTIFFS from bringing an action to enforce the terms of this AGREEMENT.

15. Before initiating any action to enforce the terms of this AGREEMENT for an alleged violation, PLAINTIFFS shall notify DEFENDANTS and attempt to discuss the alleged violation with DEFENDANTS and shall further allow DEFENDANTS a reasonable time, which shall in no event exceed 30 days from DEFENDANTS' receipt of notice of an alleged violation, to cure the alleged violation. Further, any action to enforce the terms of this AGREEMENT may only be brought by the PARTIES, and not by any third-party or collateral beneficiary, whether known or unknown, nor by any party in privity with the PARTIES.

16. The PARTIES warrant that they have entered into this AGREEMENT voluntarily and of their own accord without reliance on any inducement, promise, or representation by any other Party, except those that are expressly set forth in this AGREEMENT. This AGREEMENT contains and constitutes the entire understanding and agreement between PLAINTIFFS and DEFENDANTS respecting the subject matter hereof, and all oral discussions and prior agreements are merged herein.

17. No provision of this AGREEMENT can be amended or waived, except by a statement in writing signed by the Party against which enforcement of the amendment or waiver is sought, and any such waiver shall apply only to the matter or instance specifically waived.

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

_____    _____
MOLLY QUINN                        Date:
*Representative for OUTMemphis*

_____    _____
MICHELLE ANDERSON                  Date:

_____    _____
JANE DOE 2                         Date:

_____    _____
JANE DOE 3                         Date:

_____    _____
JANE DOE 4                         Date:

_____    _____
BILL LEE                           Date:
*In his official capacity as Governor of the State of Tennessee*

_____          _____
JONATHAN SKRMETTI                        Date:
*In his official capacity as Attorney General*
*and Reporter of the State of Tennessee*

_____          _____
DAVID RAUSCH                             Date:
*In his official capacity as Director of the*
*Tennessee Bureau of Investigation*

_____          _____
FRANK STRADA                             Date:
*In his official capacity as Commissioner of the*
*Tennessee Department of Correction*

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

_____  Date: 7/9/24
MOLLY QUINN
*Representative for OUTMemphis*

_____  Date: _____
MICHELLE ANDERSON

_____  Date: _____
JANE DOE 2

_____  Date: _____
JANE DOE 3

_____  Date: _____
JANE DOE 4

_____  Date: _____
BILL LEE
*In his official capacity as Governor of the State of Tennessee*

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

---

MOLLY QUINN  
Representative for OUTMemphis  
_/s/ Michelle Anderson_  
MICHELLE ANDERSON

Date:  
Date: 7/10/2024

---

JANE DOE 2  
[redacted]

Date:

---

JANE DOE 3  
[redacted]

Date:

---

JANE DOE 4  
[redacted]

Date:

---

BILL LEE  
In his official capacity as Governor of the State of Tennessee

Date:

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

---

MOLLY QUINN  
*Representative for OUTMemphis*

Date:

---

MICHELLE ANDERSON

Date:

---

JANE DOE 2

Date: 7/10/24

---

JANE DOE 3

Date:

---

JANE DOE 4

Date:

---

BILL LEE  
*In his official capacity as Governor of the State of Tennessee*

Date:

Page 5 of 6

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

_____  Date: _____
MOLLY QUINN
*Representative for OUTMemphis*

_____  Date: _____
MICHELLE ANDERSON

_____  Date: _____
JANE DOE 2

_____  Date: 7-8-24
JANE DOE 3

_____  Date: _____
JANE DOE 4

_____  Date: _____
BILL LEE
*In his official capacity as Governor of the State of Tennessee*

18. This AGREEMENT has been jointly negotiated. The language of this AGREEMENT shall be construed as a whole according to its fair meaning and not strictly construed for or against any Party.

19. The representatives executing this AGREEMENT on behalf of the PARTIES are empowered to do so and thereby bind the PARTIES according to the terms of this AGREEMENT.

20. This AGREEMENT may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. The photocopied, digitally scanned, or electronically signed signature of a party hereto shall be considered as if it was the original.

21. This AGREEMENT shall be effective as of the date of the last signature of any party to the AGREEMENT.

---

MOLLY QUINN  
*Representative for OUTMemphis*

Date:

---

MICHELLE ANDERSON

Date:

---

JANE DOE 2

Date:

---

JANE DOE 3

Date:

---

JANE DOE 4

Date: 7/8/24

---

BILL LEE  
*In his official capacity as Governor of the State of Tennessee*

Date:

_[signature]_       Date: July 15, 2024

**BILL LEE**
*In his official capacity as Governor of the State of Tennessee*

_[signature]_      Date: July 11, 2024

**JONATHAN SKRMETTI**
*In his official capacity as Attorney General and Reporter of the State of Tennessee*

_____      Date:

**DAVID RAUSCH**
*In his official capacity as Director of the Tennessee Bureau of Investigation*

_____      Date:

**FRANK STRADA**
*In his official capacity as Commissioner of the Tennessee Department of Correction*

_____
BILL LEE
*In his official capacity as Governor of the State of Tennessee*

Date: _____

_____
JONATHAN SKRMETTI
*In his official capacity as Attorney General and Reporter of the State of Tennessee*

Date: July 11, 2024

_____
DAVID RAUSCH
*In his official capacity as Director of the Tennessee Bureau of Investigation*

Date: 07/11/22

_____
FRANK STRADA
*In his official capacity as Commissioner of the Tennessee Department of Correction*

Date: _____

---

**BILL LEE**
*In his official capacity as Governor of the State of Tennessee*

Date:

---

*[signature]*

**JONATHAN SKRMETTI**
*In his official capacity as Attorney General and Reporter of the State of Tennessee*

Date: July 11, 2024

---

**DAVID RAUSCH**
*In his official capacity as Director of the Tennessee Bureau of Investigation*

Date:

---

*[signature]*

**FRANK STRADA**
*In his official capacity as Commissioner of the Tennessee Department of Correction*

Date: 7-15-2024

# EXHIBIT 1

[TBI Letterhead]

[Date]

[Registering Agency Supervisor]
[Registering Agency Address]
[Registering Agency Address]

[Supervisor Name],

The purpose of this letter is to inform you of recent statutory amendments that may affect a registrant in your agency's jurisdiction.

Effective July 1, 2024, the General Assembly has deleted the offense of aggravated prostitution—along with the offenses of attempt, solicitation, conspiracy, criminal responsibility, facilitation, or being an accessory after the fact to aggravated prostitution—from the definitions of "sexual offense" and "violent sexual offense" in the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act.  The effect of this amendment is that a conviction for such an offense no longer makes one an "offender" as defined by the Act, and the provisions applicable to "offenders" no longer apply to those registered solely as a result of Aggravated Prostitution convictions.  The person may still be an "offender" because of other qualifying convictions.

The General Assembly has also permitted anyone who is registered solely because of a conviction for one of these offenses to request termination of registration requirements with the TBI.

A review of our records indicates that [Offender Name] is registered because of an offense of [conviction offense] and may be eligible for termination of registration requirements.  Your agency is the last Tennessee agency reflected on this registrant's records.  If this registrant opts to request termination, they must do so by sending a written request to the TBI's SOR Unit at 901 R.S. Gass Boulevard Nashville, TN 37216.  Upon receipt of such request, the TBI will review the registrant's file and criminal history check and consult with you to determine if the registrant has been convicted of any other qualifying offenses.

A copy of this letter is being mailed to the last reported address of [Offender Name] and will be saved to their file.

[Signature]

cc:     [Offender Name]