IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **OUTMEMPHIS,**<br><br>Plaintiff,<br><br>v.<br><br>**BILL LEE, in his official capacity as Governor of Tennessee, and JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter of Tennessee;**<br><br>Defendants. | Case Nos. 2:23-cv-2670<br>　　　　　　2:24-cv-2101 |
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF TENNESSEE, and TENNESSEE BUREAU OF INVESTIGATION,**<br><br>Defendants | **CHIEF JUDGE LIPMAN** |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT TENNESSEE BUREAU OF INVESTIGATION'S SUPPLEMENTAL MOTION TO DISMISS**

**INTRODUCTION**

The Tennessee Bureau of Investigation (TBI) actively discriminates against people living with human immunodeficiency virus (HIV) who have been convicted of aggravated prostitution based on their disability. Numerous people have suffered and continue to suffer compensable

1

injuries due to TBI's discriminatory conduct. Neither a recent amendment to the law nor a settlement in *OUTMemphis v. Lee* changes those facts, and this Court continues to have subject matter jurisdiction over the United States' claims.

While the new law no longer obligates individuals convicted under Tennessee's aggravated prostitution statute to register as sex offenders moving forward, it does not require TBI to automatically remove individuals already listed solely for aggravated prostitution. It also does not require TBI to grant requests for removal. And it does not provide compensation for the people harmed by TBI's maintenance and publication of the sex offender registry. People convicted of aggravated prostitution have faced severe punishments, including longer periods of incarceration, higher fines, and until only recently, mandatory lifetime sex offender registration in most cases. Once labeled as "violent" sex offenders, people struggle to find places to live and work and, until recently, could not spend time with friends and family members if children were present. Because the United States seeks both the injunctive relief of automatic removal from the registry and compensation for those harmed, this Court has subject matter jurisdiction and should deny Defendant TBI's motion to dismiss, ECF No. 70.

## BACKGROUND

Tennessee, including the TBI, maintains and enforces Tennessee's aggravated prostitution statute, Tenn. Code Ann. § 39-13-516, which discriminates against people with HIV based on their disability, ECF No. 1 ("Compl.") ¶ 1. Before July 1, 2024, individuals convicted under the law were required to register, most as violent sexual offenders, on Tennessee's sex offender registry, maintained and published by the TBI. Compl. ¶¶ 12, 21-23. TBI's publicly searchable registry contains extensive personal information about individuals convicted under this law. Compl. ¶¶ 35-36. Because of Tennessee's sex offender restrictions, individuals

2

convicted of aggravated prostitution have struggled to find employment and housing.  Compl. ¶¶ 25-26, 62.  For individuals convicted of aggravated prostitution, TBI's registry also lists an individual's sexual offenses and the statutory text for any offenses requiring them to register; for individuals convicted of aggravated prostitution, this means that TBI publishes the fact that they have HIV to the public.  Compl. ¶¶ 35-36.  Finally, when an individual is out of compliance with the registry requirements, Tennessee law requires TBI to inform district attorneys, designated law enforcement agencies, and others who directly supervise the individual.  Compl. ¶ 32 (citing Tenn. Code Ann. § 40-39-206(b)).

Under a law recently passed by the Tennessee legislature, S.B. 181, individuals who are newly convicted of aggravated prostitution after July 1, 2024, are no longer required to register as sex offenders.  *See* ECF No. 19, Ex. 1 (2024 Tenn. Laws Pub. Ch. 545).  Individuals on the sex offender registry for aggravated prostitution who were convicted before July 1, 2024, may file a request with TBI to terminate their sex offender requirements and to be removed from the registry.  *Id.*  A settlement agreement between some parties in the consolidated action, *OUTMemphis v. Lee*, effective July 15, 2024, sets out a procedural framework TBI will follow under the agreement to process and consider these requests for removal.  *See* ECF No. 66, Ex. 1. The agreement specifies that, if TBI receives a written request for termination from a potentially *eligible* aggravated prostitution registrant, TBI will not deny the request based on substantial noncompliance with the registration requirements.  *Id.* ¶ 8.  The agreement does not require that TBI remove an individual from the registry if they make a request, nor does it provide a timeframe in which removal requests must be approved or denied.  *See id.* ¶ 9.  The agreement also does not compensate any individuals harmed by TBI's enforcement of the aggravated prostitution statute.  *See generally id.*  Most importantly, the agreement does not require TBI to

3

take any action to remove registrants who do not affirmatively request removal. Thus, absent any approved request for termination, TBI will continue to publicly label individuals as sex offenders because of their HIV status, as well as publicize their HIV status—conduct which violates the ADA.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 12(b)(1) and (h)(3), a court may only entertain those claims over which it has subject matter jurisdiction. Mootness implicates issues of subject matter jurisdiction, as Article III of the U.S. Constitution's case or controversy requirement mandates that a claim must not become moot before the court's decision on the merits. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019).

## ARGUMENT

**I.     Because TBI Continues to Engage in Discriminatory Conduct, This Court Retains Subject Matter Jurisdiction to Grant Injunctive Relief.**

TBI argues that, because the amended statute no longer applies to those individuals who have been convicted only of aggravated prostitution, there is "nothing that TBI does that is left to litigate." ECF No. 70-1 at 6. TBI further claims that the removal of individuals currently on the registry only for aggravated prostitution, "although slow, is inevitable." *Id.* Contrary to TBI's assertions, this Court retains subject matter jurisdiction to grant injunctive relief because removal of such individuals is not inevitable and TBI continues to engage in discriminatory conduct.

Although a legislative repeal or amendment of a challenged statute can moot a claim, *see Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)), "the challenged practice must have *actually ceased*," *Sullivan v. Benningfield*, 920 F.3d 401, 411 (6th Cir. 2019) (internal citation omitted) (holding that the change in law did not eliminate the alleged harms); *see also*

4

*Green Party of Tenn. v. Hargett*, 700 F.3d 816, 822-23 (6th Cir. 2012) (holding that a political party's challenge to a Tennessee signature requirement for candidates to be on the ballot was not moot even after a change in law because the law did not remove the requirement at issue); *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993) (holding that a minor change in law cannot moot a case because, "if that were the rule, a defendant could moot a case by repealing the challenged statute and replacing it with one that differs only in some insignificant respect."). When the changes in law do not eliminate the harm or threatened harm underlying the dispute, the court retains subject matter jurisdiction. *Cam I, Inc. v. Louisville/Jefferson Cnty. Metro Gov't*, 460 F.3d 717, 720 (6th Cir. 2006) (holding that a lawsuit challenge to a county licensing scheme was not moot because a change in the scheme did not completely remove the alleged harm).

In its Complaint, the United States asks the Court to order Defendants, including TBI, to remove individuals from the registry who are listed solely for aggravated prostitution and to remove all references to aggravated prostitution on the entries of those on the registry for other convictions. Compl. ¶ 13. The United States also asks the Court to order Defendants, including TBI, to expunge all State records indicating that an individual convicted solely of aggravated prostitution was ever registered. *Id.* The United States recognizes that, because the new state law now prohibits TBI from adding individuals newly convicted of aggravated prostitution to the registry, the United States' request for relief on behalf of newly convicted individuals is likely mooted. *Id.*; *see also id.* ¶¶ 1, 21, 29, 30, 34. But the United States' primary request for injunctive relief—seeking removal by TBI of *every* person convicted solely of aggravated prostitution currently listed on the registry—remains live.

TBI's reliance on *Hill v. Snyder*, 878 F.3d 193 (6th Cir. 2017), is inapposite. In *Hill*,

5

plaintiffs—individuals sentenced to life without possibility of parole as juveniles—had won an injunction on their constitutional claims requiring state Defendants to consider them immediately for parole. *Id.* at 199-200. During the case, the state legislature implemented a new statutory scheme allowing for resentencing of all eligible individuals in response to two Supreme Court decisions. *Id.* As a result, the district court dismissed plaintiffs' challenges to the parole eligibility statute as moot. *Id.* at 203. The Sixth Circuit upheld this dismissal for mootness, concluding that although the process for resentencing individuals was "slow," resentencing was "inevitable," as nearly all class members had been resentenced and the remaining class members would be resentenced under the new statutory scheme. *Id.* at 204.

Unlike in *Hill*, it is not inevitable that every person on the registry solely for aggravated prostitution will eventually be removed. Neither the settlement nor the change in law require TBI to remove individuals from the public-facing registry unless the individual makes a request. In contrast to *Hill*, where there was a comprehensive statutory scheme that would eventually correct the discrimination for all aggrieved individuals, individuals in Tennessee convicted of aggravated prostitution remain subject to the harms that flow from being listed on the registry unless and until they make a request for removal and their request is granted. For some individuals currently on the registry for aggravated prostitution, barriers such as disability, lack of access to information about the change in law and settlement, homelessness, and poverty may mean that they have no opportunity or an unequal opportunity to request removal. Thus, TBI cannot claim that removal of every single eligible individual from the registry is "inevitable." Moreover, neither the settlement nor the change in law *require* that TBI remove an individual from the registry if they make a request. *See* 2024 Tenn. Pub. Acts, Ch. 545, §§ 1-3, 5; Settlement ¶ 9. The settlement and the change in law guarantee only that individuals on the

registry solely for aggravated prostitution have an *opportunity* to be *considered* for removal.[1]

Instead of *Hill*, the facts here more closely resemble those in *Sullivan v. Benningfield*, where county jail detainees challenged a Tennessee judge's policy that granted sentencing credit in exchange for undergoing sterilization procedures. 920 F.3d at 404. Plaintiffs alleged this sentencing credit scheme resulted in unconstitutional differential treatment for individuals who did not elect to be sterilized and sought the same sentencing credit as injunctive relief. *Id.* During litigation, Tennessee passed a new law preventing judges from awarding sentencing credit for sterilization going forward, but the law did not retroactively award sentencing credits to individuals who had not elected sterilization. *Id.* at 411. The Sixth Circuit held that, because the change in law failed to stop the differential treatment that plaintiffs alleged they faced, the change in law did not remove the harm or threatened harm underlying the dispute. *See id.* at 410-11. Because plaintiffs demonstrated that the relief they sought would, if granted, "make a difference to the legal interests of the parties," their claims were not moot. *Id.* at 413 (internal quotations omitted). Here, as in *Sullivan*, the change in law and settlement do not "extinguish[] the challenged practice." *Id.* at 411. The TBI continues to list individuals convicted of

---

[1] In addition, contrary to TBI's assertions, TBI is not due any special "solicitude" arising out of the State's amendment of the aggravated prostitution statute. ECF No. 70-1 at 4, 6-7. A defendant may receive solicitude for voluntary cessation of the conduct at issue only where "there is no reasonable expectation that the alleged violation will recur" and "interim relief or events have *completely* and irrevocably eradicated the effects of the alleged violation." *Speech First*, 939 F.3d at 767 (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)) (emphasis added); *see also* 13C Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 3533.7 (3d ed. 2024) ("The court must decide whether there has been complete discontinuance, whether effects continue after discontinuance, and whether there is any other reason that justifies decision and relief."). But here, the change in law and settlement do not create complete discontinuance of TBI's alleged discrimination, as individuals convicted of aggravated prostitution will remain on the registry until they request, and TBI grants, removal. Because some of the alleged harms continue now and the change in law and settlement do not eliminate them, the court need not reach whether the alleged violation is likely to recur.

7

aggravated prostitution on the registry based on disability and publishes their HIV status, in violation of the ADA.

Because the injunctive relief the United States seeks is still necessary to fully remedy the discrimination alleged in the United States' Complaint, the United States' claim for injunctive relief remains live.

## II. The United States Seeks Compensatory Damages, Including from TBI, Which Cannot be Mooted.

TBI also challenges the basis of the United States' request for compensatory damages from TBI, characterizing the United States' claim as one for "general" compensatory damages that are not traceable to TBI. ECF No. 70-1 at 7-8. TBI mischaracterizes the scope of damages the United States seeks, which are not mooted by the change in law.

First, TBI presumes that the United States' damages claim against TBI rests solely on registry fees that aggrieved individuals paid while on the registry, arguing that these fees are not traceable to TBI. ECF No. 70-1 at 7-8. But TBI's liability for damages has never hinged on who collects the registry fees. While the United States' Complaint requests compensatory damages "including for registry fees, court costs and fines, bonds, and attorneys' fees paid by the aggrieved individuals," that list is not exhaustive but merely illustrative. Compl. ¶ 14.

Moreover, TBI's argument that "the complaint does not trace a compensable injury to TBI," ECF No. 70-1 at 7, speaks to standing, not mootness. The United States has fully briefed this argument in its Opposition to Defendants' First Motion to Dismiss, *see* ECF No. 42 at 21-24. In particular, the United States has already explained its position that several state actors have responsibility for enforcing the aggravated prostitution law and TBI is one of them. TBI maintains and publishes a publicly searchable, centralized record system of those convicted of sexual offenses, including aggravated prostitution. As discussed, TBI's publication of this

registry harms people required to register only because of their HIV status, impairing their ability to find jobs and housing, and violating their privacy through publication of their private health information. *See infra* pp. 2-3. Moreover, until recently, Tennessee law required TBI to notify law enforcement when individuals registered for aggravated prostitution were not compliant with the registry requirements. ECF No. 22 at 22 (citing Tenn. Code Ann. § 40-39-204(a), 206(b), 202(19)-(20), 202(30); Compl. ¶¶ 19, 35-36).

The United States' Complaint seeks compensatory damages for Complainant A and other aggrieved individuals with aggravated prostitution convictions for injuries caused by TBI's maintenance and publication of the sex offender registry. Compl. ¶ 8. A case may be dismissed only if the court has "no present ability" to provide "*any* effective remedy, not just the remedy demanded by the plaintiff in its pleadings." *Detroit, Toledo & Ironton R.R. Co. v. Consol. Rail Corp.*, 767 F.2d 274, 279 (6th Cir. 1985) (internal citations omitted).

The United States has made a plausible allegation that TBI enforces the aggravated prostitution statute and that its enforcement has caused and continues to cause harms. Accordingly, any argument that a damages claim should be dismissed against TBI should be rejected.

### III. A Factual Attack on Subject Matter Jurisdiction Based on TBI's Role in Enforcing the Law is Improper at This Stage.

TBI also argues that the Court has no jurisdiction over TBI because "[a]ll the allegations against TBI relate to its maintenance of the [sex offender registry]," and the change in statute leaves the United States' allegations against TBI "factually untrue." ECF No. 70-1 at 4. As TBI's arguments appear to raise a factual challenge to subject matter jurisdiction, these arguments are improper at this stage in the litigation.

A factual attack under Fed. R. Civ. P. 12(b)(1) challenges the "factual existence of

9

subject matter jurisdiction," which includes standing.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  In a factual attack, a defendant must produce evidence challenging the factual existence of subject matter jurisdiction—such as affidavits, testimony, or other evidentiary materials—a plaintiff must present their own evidence, and the court must weigh the evidence to determine whether subject matter jurisdiction exists.  *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* 491 F.3d 320, 330 (6th Cir. 2007).  Notably, a district court should consider extrinsic evidence only if the factual attack on jurisdiction does not also implicate the merits of the plaintiff's substantive claim.  *Id.*  If it does, the district court should find that jurisdiction exists, take the plaintiff's allegations as true, and deal with the objection as a direct attack on the merits of the plaintiff's allegations.  *Id.* at 330-31 (where the factual attack was intertwined with the merits of the plaintiff's claim, finding that the district court had jurisdiction); *see also Harris v. Lexington-Fayette Urb. Cnty. Gov't*, 685 F. App'x 470, 472 (6th Cir. 2017) (holding that defendant's factual attack was improper because defendant's challenge implicated an element of plaintiff's cause of action).

Not only has TBI failed to provide affidavits, evidence, or other testimony to create any factual controversy, but a factual challenge at this stage as to TBI's role in enforcing the law is improper.  TBI's argument that its role is limited to maintenance of the sex offender registry and that it does not enforce Tennessee's sex offender registry requirements, ECF No. 70-1 at 4, 7-8, implicates the merits of the United States' claim that TBI unlawfully discriminates against and harms individuals with disabilities by enforcing the aggravated prostitution statute, *see, e.g.*, Compl. ¶ 2.  The United States has served discovery on TBI that includes requests concerning TBI's past and ongoing role in enforcing the aggravated prostitution statute, including its coordination with law enforcement agencies, monitoring procedures, and publication of the sex

offender registry. Because TBI's assertions about its role in enforcing the aggravated prostitution law challenge the validity of the United States' claim, they do not impact this Court's subject matter jurisdiction.

## CONCLUSION

For these reasons, the United States requests that the Court deny TBI's Supplemental Motion to Dismiss, ECF No. 70.

Dated: August 21, 2024

REBECCA B. BOND
Chief

*/s/ Anna G. Bobrow*
KEVIN KIJEWSKI
Deputy Chief
STEPHANIE M. BERGER
NY Bar #5201439
ALI N. SZEMANSKI
PA Bar #327769
ANNA G. BOBROW
DC Bar #1743249
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20002
202-307-0663
Stephanie.Berger@usdoj.gov
Ali.Szemanski@usdoj.gov
Anna.Bobrow@usdoj.gov

*Counsel for United States*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed and served via the Court's electronic filing system on this the 21st day of August 2024, upon:

Cody N. Brandon
Managing Attorney
Assistant Attorney General

David M. Rudolph
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37202
Off. (615) 532-2552
Fax (615) 532-4892

Cody.Brandon@ag.tn.gov
David.Rudolph@ag.tn.gov
*Counsel for Defendants*

Alexis Agathocleous
Alexis Alvarez
Jon W. Davidson
Rachel Meeropol
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclu.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Stella Yarbrough
Jeff Preptit
Lucas Cameron-Vaughn
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.org
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Lynly S. Egyes
Milo Inglehart
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for Plaintiff OUTMemphis*

*/s/ Anna G. Bobrow*
Anna G. Bobrow