IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> v. <br><br> **STATE OF TENNESSEE, and TENNESSEE BUREAU OF INVESTIGATION,** <br><br> **Defendants** | Case No. 2:24-cv-2101 <br><br> **CHIEF JUDGE LIPMAN** <br><br> **CHIEF MAGISTRATE JUDGE PHAM** |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL THE STATE OF TENNESSEE TO PRODUCE DOCUMENTS**

The United States filed suit against the State of Tennessee because Tennessee's aggravated prostitution statute discriminates against people living with human immunodeficiency virus (HIV), in violation of the Americans with Disabilities Act (ADA). Now, the State refuses to produce any documents from state agencies, claiming these documents are not in the State's possession, custody, or control. However, this Court has previously rejected that same argument and compelled production from the State in the past, recognizing that Tennessee law grants significant authority to Tennessee's Attorney General when representing the State and its interests in court. The United States requests that this Court issue an order compelling Tennessee to produce documents from three of its agencies in response to the United States' discovery requests.

**BACKGROUND**

In its Complaint, the United States makes multiple allegations of the State's role in

1

implementing and enforcing its aggravated prostitution statute. ECF No. 1 ("Compl.") ¶¶ 1-2. Notable here, individuals convicted of aggravated prostitution after 2010 are identified as violent sex offenders on their state-issued licenses and identification cards. Compl. ¶ 34. Individuals convicted of aggravated prostitution have also been incarcerated in state-operated facilities. Compl. ¶ 42. These consequences flow from Tennessee's discriminatory statute, which improperly imposes harsher penalties based on HIV status alone and without any consideration of potential risk. Compl. ¶ 68.

The United States' intent to seek discovery from Tennessee agencies has been evident since the beginning of litigation. The United States set out allegations about functions of state agencies in its Complaint. In addition, the parties reported to the Court that discovery was anticipated on the enforcement of Tennessee's aggravated prostitution and sex offender registration statutes, as well as information on time served in Tennessee correctional facilities in their 26(f) Report. ECF No. 17 at 2. Knowing that many of its discovery requests would implicate sensitive personal information of individuals convicted because of their HIV status, the United States proposed a draft protective order in May 2024; the parties negotiated and then jointly moved for entry of the protective order in July 2024, which was subsequently entered by this Court on July 9, 2024. ECF No. 63.[1]

On July 22, 2024, the United States served the State with its First Set of Requests for Production of Documents (RFPs) on July 22, 2024, attached as Exhibit A. Relevant to this motion, the United States defined the "State of Tennessee" as "including its departments, agencies, boards, bureaus, commissions, councils, and agents." Ex. A at 1. Several of the

---

[1] During this same time period, the parties were also negotiating a stipulation governing the discovery of electronically stored information, which this Court also entered in July 2024. ECF No. 64.

United States' requests are for documents from specific Tennessee agencies, including the Attorney General's Office, the Tennessee Department of Correction, and the Tennessee Department of Safety.  Ex. A at 4-6 (requests 1, 8-12).  In particular, the United States seeks documents pertaining to Tennessee agencies' actions that are the result of aggravated prostitution convictions, including issuing drivers' licenses designating individuals as sex offenders, serving as the registering agency for individuals convicted of aggravated prostitution, and incarcerating individuals convicted of aggravated prostitution.  Documents responsive to these requests are vital for discovering the scope of the State's liability under the ADA and to ensure relief is appropriately tailored to rectify the State's discriminatory conduct.  These documents are thus relevant and discoverable.

On August 15, 2024, Defendants served objections and responses to the United States' RFPs, attached as Exhibit B.  Although Defendants agreed to produce some documents on behalf of the TBI, they objected on behalf of the State of Tennessee to all of the United States' requests and refused to produce any documents on behalf of the State.  Ex. B at 2.  The State's position is that the United States may not seek documents from any Tennessee agencies via party discovery under Rule 34 and that the United States must instead seek discovery via Rule 45 subpoena practice.  Ex. B at 3-4.  The State also responded to requests seeking documents from entities other than TBI with the assertion that these documents were not in the possession, custody, or control of TBI.  Ex. B at 6, 8-10.

Over the past two weeks, the parties met and conferred over Defendants' responses, which has resolved several areas of dispute as to documents from TBI.[2]  However, the parties

---

[2] The parties conferred by phone on this issue on August 27, 2024.  On August 29, 2024, the United States wrote to the State memorializing the parties' positions and indicated that it planned to file a motion to compel Tennessee to produce discovery from other state agencies, given the

3

have reached an impasse on whether documents from other Tennessee state agencies may be sought under Rule 34.  The State insists that discovery of documents from its state agencies may only be sought via Rule 45 subpoenas, despite the fact that the State is a party to this litigation.[3]  The United States now seeks to compel the State to produce documents from its agencies.

## LEGAL STANDARD

The Federal Rules "anticipate that production of documents and things from parties will be accomplished through Rule 34." *Fusion Elite All Stars v. Varsity Brands, LLC*, 2:20-cv-02600-SHL-tmp, 2022 WL 1013432, at *4 (W.D. Tenn. Apr. 1, 2022) (quoting *Elvis Presley Enters., Inc. v. City of Memphis*, No. 2:18-CV-02718, 2020 WL 4015476, at *12 (W.D. Tenn. July 16, 2020)).  Rule 34 specifically provides that "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce "any designated documents or electronically stored information" in the responding party's "possession, custody, or control." Fed. R. Civ. P. 34(a)–(a)(1)(A).  A party may be deemed to have control where it has either "actual possession, custody or control" or "the legal right to obtain the documents on demand." *In re Bankers Tr.*, 61 F.3d 465, 469 (6th Cir. 1995).  The scope of discovery under the Federal Rules of Civil Procedure "is traditionally quite broad" and falls "within the broad discretion of the trial court." *Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  After making a good faith effort to resolve a dispute, a party may move for an order compelling discovery.  Fed. R. Civ. P. 37(a)(1).  "The motion must include a certification that the movant has in good faith conferred

---

parties' fundamental disagreement.  Exhibit C (e-mail chain, August 27- August 30, 2024). Tennessee opposes this motion. *Id.*

[3] To protect its interests, the United States has served subpoenas to the state agencies discussed within the timeline set by the Court's Scheduling Order, ECF No. 25.  However, should the Court grant the United States' motion to compel, the United States will withdraw these subpoenas so that the State can instead issue responses pursuant to Rule 34.

or attempted to confer with the person or party failing to make . . . discovery in an effort to obtain it without court action." *Id.*; *see also* LR 7.2(a)(1)(B) (requiring certification of consultation, including for discovery motions).

## ARGUMENT

**I.      The State of Tennessee is a Party to This Litigation and the Requested Documents Are in Its Possession, Custody, or Control.**

The United States named the State of Tennessee as a party, given that this suit challenges the legality of a Tennessee criminal law, the implementation and enforcement of which is spread across multiple Tennessee agencies.[4] Discovery is necessary to determine the precise role of these agencies and the extent of the State's liability under the ADA. The State itself has participated in litigation, filing several substantive motions to consolidate litigation, to stay litigation, to preemptively seek appeal of an order not yet issued by this Court, and to be dismissed from suit. Now, the State mistakenly contends that discovery from the State of Tennessee cannot be conducted under Rule 34.

As a party to this litigation, the State must comply with discovery rules, including Rule 34, which governs party discovery and requires the production of documents within its

---

[4] The United States named the State to encompass the actions of its administrative departments that enforce the aggravated prostitution statute. These departments are under the responsibility of the Governor. *See State ex rel. Comm'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 767 n.52 (Tenn. Ct. App. 2001). The United States regularly sues States, rather than every agency implicated, where state laws or statewide systems are at issue. *See, e.g.*, *United States v. Texas*, 566 F. Supp. 3d 605, 627-28 (W.D. Tex. 2021) (seeking declaratory and injunctive relief against State of Texas for state abortion ban where enforcement was spread across multiple state actors); *United States v. Florida*, 938 F.3d 1221, 1225 (11th Cir. 2019) (bringing suit against State of Florida for the state's Medicaid policies and practices). However, Defendant TBI is established under a different provision of state law than the State's administrative departments and retains more independence from the State's Governor, so it was named in addition to the State. *See, e.g.*, Tenn. Code Ann. § 38-6-101(a)(1), (b)(1)-(4) (establishing TBI as a "separate department" of state government with a Director appointed to a fixed term of office as opposed to serving at the pleasure of the Governor like the heads of administrative departments).

possession, custody, or control. Courts typically look to state law to determine whether documents are within a state party's control. *See, e.g.*, *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 263 (N.D.N.Y 2006); *cf. Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, No. 2:11–cv–02101–SHM–cgc, 2012 WL 6607288, at *1 (W.D. Tenn. Dec. 18, 2012) (noting State had failed to cite any legal basis for asserted lack of control). All of the Tennessee state entities implicated by our requests are administrative departments of the State, as established by state law. Tenn. Code Ann. § 4-3-101, -103. The executive officers of these departments serve at the pleasure of Tennessee's Governor, *id.* § 4-3-112, -602, -2002(a), who is vested with the State's supreme executive power and charged with the duty to "take care that the laws be faithfully executed." Tenn. Const. art. III, §§ 1-2, 10.

Additionally, Tennessee's Attorney General handles all litigation matters relevant to the State's interests, so responding to discovery requests to state agencies in this suit, where the Attorney General is representing the State in a case implicating the legality of a state law, is consistent with Tennessee law.[5] As part of that representation and "absent any explicit provision to the contrary, the Attorney General, who is [the State's] legal representative under Tennessee law, must be deemed to have such control to carry out the broad statutorily mandated requirements of such representation, including compliance with discovery." *Memphis City Bd. of Educ.*, 2012 WL 6607288, at *1. Given this, the documents requested by the United States must be within the State's possession, custody, or control for purposes of Rule 34.

---

[5] Tennessee law assigns to the Attorney General the duty of representation as to the "trial and direction of all civil litigated matters . . . in which the state or any officer, department, agency, board, commission or instrumentality of the state may be interested." *Id.* § 8-6-109(b)(1). While the Attorney General may authorize state entities to maintain internal legal departments and to litigate discrete types of cases, all legal activities as to state entities remain under the direction and control of the Attorney General. *Id.* § 8-6-302.

This Court has previously rejected the same argument raised by the Tennessee Attorney General here—that it does not need to produce documents from agencies not expressly named as parties—in *Board of Education of Shelby County. v. Memphis City Board of Education*. No. 2:11-cv-02101-SHM-cgc, 2012 WL 6003540 (W.D. Tenn. Nov. 30, 2012), *supplemented* 2012 WL 6607288 (Dec. 18, 2012). In that case, a third-party plaintiff sought discovery from the General Assembly under Rule 34 in a suit against the Attorney General, the Secretary of State, the Coordinator of Elections, the Department of the State's Division of Elections, and the Commissioner of Education. 2012 WL 6003540, at *1. The State Defendants opposed on the basis that the General Assembly was not a party to the litigation. *Id.* Noting that the Attorney General cited no authority preventing it from getting the documents, this Court determined that the documents were within the possession, custody, or control of the Attorney General because that office was charged with handling "all legal services," "direct[ing] and supervis[ing]" all litigation, and "represent[ing]" the State of Tennessee. *Id.* at *3. As part of these duties, this Court concluded that "one such responsibility must be to respond appropriately to discovery requests on behalf of the entities of the state government that [the Attorney General] represents as required by the Federal Rules of Civil Procedure." *Id.* This Court also concluded that these entities did "not need to be named parties to the instant suit for the Attorney General of the State of Tennessee to be required to respond to discovery requests on their behalf." *Id.*[6] The same

---

[6] *See also John B. v. Goetz*, 879 F. Supp. 2d 787, 858-59 (M.D. Tenn. Jan. 28, 2010) (concluding that documents of a state's contractor were within the possession, custody, or control of the State for purposes of Rule 34); *Illinois ex rel. Raoul v. Monsanto Co.*, No. 22 C 5339, 2023 WL 4083934, at *2 (N.D. Ill. June 20, 2023) (where only the state was named as a party, "the mere fact that state agencies are not parties to this litigation is not dispositive nor particularly persuasive in the resolution" of motion to compel); *Washington v. GEO Grp., Inc.*, No. 3:17-cv-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) ("Because the [Attorney General's Office] is the law firm to the State of Washington, the AGO should respond to and produce discovery on behalf of the State of Washington, including its agencies.").

conclusion is appropriate and legally justified here: the State, represented by its Attorney General in this proceeding, should be required to respond to discovery requests seeking documents from the State's agencies under Rule 34.

At a minimum, a state must go beyond a general assertion that it cannot obtain the documents and identify specific provisions of state law that prohibit it from doing so. *In re Generic Pharms. Pricing Antitrust Litig.*, 699 F. Supp. 3d 352, 357-61 (E.D. Pa. 2023) (in an antitrust action brought by state attorneys general, rejecting arguments by state attorneys general that they could not exercise their authority to obtain documents from state agencies where the states had failed to identify any specific provisions of state law that limited their ability to do so). Here, the State is named as a defendant in a suit concerning the legality of a state criminal statute. In its discovery responses, the State identified no specific provisions of state law preventing the Attorney General from complying with the discovery requests. *See* Ex. B. Discovery from state agencies under Rule 34 is therefore proper.

Although some courts have limited discovery from state agencies when the state is a party, these cases are distinguishable, as they typically involve a state acting in a *parens patriae* capacity as plaintiff. In these cases where the state brings a case to assert the interest of its citizens, courts have sometimes found that defendants cannot obtain discovery under Rule 34 from all of the plaintiff state's agencies, i.e. asserting a quasi-sovereign interest in the well-being of its citizens generally. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 600-08 (1982) (discussing *parens patriae* actions); *see also e.g.*, *United States v. Am. Express Co.*, No. 10-CV-04496, 2011 WL 13073683, at *2 (E.D.N.Y. July 29, 2011) (concluding that discovery of executive agencies not permitted in affirmative enforcement action by state attorneys general). However, even where a state is acting as plaintiff in a *parens patriae*

8

suit, courts still permit discovery from its state agencies. *See Illinois ex rel. Raoul v. Monsanto Co.*, No. 22 C 5339, 2023 WL 4083934, at *3-4 (N.D. Ill. June 20, 2023) (concluding that state must produce responsive documents possessed by non-party state agencies and observing that state agencies "undoubtedly hold many relevant documents and stand to benefit from the Attorney General's success in the case"). Here, where the State is not a plaintiff, these cases do not apply.[7]

This Court should therefore grant this motion to compel the State to produce requested documents from its administrative departments in response to the United States' RFPs.

## II. Conducting Party Discovery Through Rule 45 is Inappropriate.

The State's position is that it would be more "convenient" for the United States to serve Rule 45 subpoenas to its state agencies. Ex. B at 3. However, the State is a party, and party discovery is governed by Rule 34. As this Court has observed, although a state may find it "more onerous" to comply with a discovery request under Rule 34, that "does not mean that it is not required under the Federal Rules of Civil Procedure." *Memphis City*, 2012 WL 6607288, at *1 (footnote omitted). Conducting discovery under Rule 45 could also cause discovery disputes to multiply and impact other district courts unnecessarily. *See, e.g.*, *John B.*, 879 F. Supp. 2d at

---

[7] In addition to decisions where a state is acting as *parens patriae*, courts have also sometimes limited discovery under Rule 34 where a state brings suit on behalf of a particular agency. *See, e.g.*, *New York ex rel. Boardman*, 233 F.R.D. at 262-63 (in suit brought on behalf of state executive agency, denying motion to compel discovery from an independent state agency tasked with oversight of state government, on the basis that the agency was "totally autonomous from the governor and the rest of the executive branch"); *cf. In re Gold King Mine Release*, No. 1:18-md-02824-WJ, 2020 WL 13563527, at *2, *6 (D.N.M. Dec. 23, 2020) (where state brought suit on behalf of particular agency, state could not compel production of 30(b)(6) witnesses from other agencies, departments, or institutions, but requiring state attorney general to contact various agencies to procure voluntary participation upon other party's request). These decisions are inapposite here where the State itself is a defendant, rather than where it is bringing suit on behalf of one of its agencies.

9

859 (in case where state was a defendant, concluding that conducting discovery under Rule 45 as to state contractors could "require a multiplication of these discovery proceedings," which the court characterized as a "misfortune" it would not wish "on any of its colleagues"). Additionally, while discovery under Rules 34 and 45 have similar contours, there are some distinctions that could impact the United States' ability to seek necessary discovery. For instance, should discovery be sought via a Rule 45 subpoena for non-parties, the state agencies could argue that being treated as non-parties weighs against disclosure, even though the United States's action against the State implicates their conduct. *See, e.g.*, *Fusion Elite All Stars v. Varsity Brands, LLC*, 340 F.R.D. 255, 261 (W.D. Tenn. 2022) (explaining that "the status of a person as a non-party is a factor that weighs against disclosure" in assessing proportionality for Rule 45 subpoena) (quoting *Mid Am. Sols. LLC v. Vantiv, Inc.*, No. 1:16-mc-2, 2016 WL 1611381, at *5 (S.D. Ohio Apr. 20, 2016)). The United States would also be unable to serve interrogatories and requests for admission to these agencies if they are treated as non-parties. This Court should grant this motion to compel and dispense with the State's insistence that the United States serve multiple subpoenas on agencies that are part of the State and that its Attorney General represents.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court grant this Motion and order the State of Tennessee to produce documents from its state agencies that are responsive to the United States' RFPs.

Dated: September 13, 2024

REBECCA B. BOND
Chief

/s/ *Ali N. Szemanski*
KEVIN KIJEWSKI
Deputy Chief
STEPHANIE M. BERGER
NY Bar #5201439
ALI N. SZEMANSKI
PA Bar #327769
ANNA G. BOBROW
DC Bar #1743249
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20002
202-307-0663
Stephanie.Berger@usdoj.gov
Ali.Szemanski@usdoj.gov
Anna.Bobrow@usdoj.gov

*Counsel for United States*

# CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing was filed and served via the Court's electronic filing system on this the 13th day of September 2024, upon:

Cody N. Brandon
Managing Attorney
Assistant Attorney General

David M. Rudolph
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37202
Off. (615) 532-2552
Fax (615) 532-4892

Cody.Brandon@ag.tn.gov
David.Rudolph@ag.tn.gov
*Counsel for Defendants*

Alexis Agathocleous
Alexis Alvarez
Jon W. Davidson
Rachel Meeropol
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclu.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Stella Yarbrough
Jeff Preptit
Lucas Cameron-Vaughn
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.org
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Lynly S. Egyes
Milo Inglehart
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for Plaintiff OUTMemphis*

                                                                                    */s/ Ali N. Szemanski*
                                                                                    Ali N. Szemanski