IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| OUTMEMPHIS, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| BILL LEE, in his official capacity as ) | |
| Governor of Tennessee; JONATHAN ) | |
| SKRMETTI, in his official capacity as ) | |
| Attorney General and Reporter of ) | |
| Tennessee; ) | |
| ) | |
| Defendants. ) | |
| ------------------------------------------------------ ) | Case Nos.      2:23-cv-2670 |
| UNITED STATES OF AMERICA, ) | 2:24-cv-02101 |
| ) | |
| Plaintiff, ) | Chief Judge Lipman |
| ) | |
| v. ) | |
| ) | |
| STATE OF TENNESSEE, and ) | |
| TENNESSEE BUREAU OF ) | |
| INVESTIGATION, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT STATE OF TENNESSEE'S RESPONSE IN OPPOSITION TO
UNITED STATES' MOTION TO COMPEL**

**INTRODUCTION**

"[I]n the law, what is sauce for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272 (2016). DOJ has argued to courts across the country that when the United States is a party to litigation, the opposing party cannot obtain information from the United States' various executive agencies through party discovery. Instead, it regularly demands that its opponents employ subpoenas to extract documents from those agencies. In fact, even in this litigation, DOJ has insisted that Defendants can only obtain party discovery from the

1

Civil Rights Division of the Department of Justice—not any other division, much less other executive agencies.[1] (*See* Exhibit 1, Excerpts of DOJ's Responses to Defendants' First RFPs and ROGs (objecting to definition of United States and refusing to produce information about prosecutions under a federal criminal statute or defense of litigation against the Department of Defense).)

Yet, DOJ asks this Court to apply a different rule to the State of Tennessee. While maintaining that Rule 45 is good enough for parties litigating against it, DOJ complains that same process *could* be more difficult for it to pursue and is therefore "inappropriate." According to DOJ, what is "sauce" for the United States is, apparently, not "sauce" for the State of Tennessee. This Court should reject DOJ's double standard and deny the motion to compel.

## BACKGROUND

DOJ sued "the State of Tennessee" over enforcement of Tennessee's aggravated prostitution statute, though it declined to sue the officials responsible for enforcing that statute. Defendants pointed out in briefing on their motion to dismiss the jurisdictional problems with using "the State" as a generic stand-in for actual enforcers that DOJ did not make the effort to sue specifically. (Dkt. 48, at 9-10.)

Now, another problem with DOJ's strategy has surfaced. Not only has DOJ declined to sue the state officials with authority to enforce the challenged statutes, it also wants to avoid asking them directly for information about its case. Instead, DOJ views written discovery requests issued to "the State" as entitling DOJ to information from all the "departments, agencies, boards, bureaus,

---

[1] This position will likely soon be the subject of Defendants' own motion to compel. But, unlike DOJ, who has selected the State of Tennessee as a stand-in for all state agencies and officials, Defendants have only asked DOJ to produce discrete information in the actual possession of DOJ.

2

commissions, councils, and agents" of Tennessee government. (Dkt. 73-2, at 2.) From these various entities and officials, DOJ wants, at least:[2]

- "all documents . . . related to" the enactment of the aggravated prostitution statute and amendments to the Sex Offender Registration Act (RFP #1, Dkt. 73-2, at 6);

- "[a]ll documents related to the administration of TN-SORA for persons required to register for aggravated prostitution" (RFP #2, Dkt. 73-2, at 6);

- documents showing details of incarceration and supervision of individuals convicted of aggravated prostitution (RFPs #8-10, Dkt. 73-2, at 6-7);

- "documents containing, reflecting, describing, explaining, discussing or proposing policies, rules, standards, tools, practices, or processes relating to" IDs for individuals required to register as a sexual offender due to conviction for aggravated prostitution (RFP# 11, Dkt. 73-2, at 7); and

- "[a]ll documents . . . and communications between the Attorney General and Reporter of Tennessee and the District Attorneys General Conference regarding" the challenged statutes (RFP# 12, Dkt. 73-2, at 7).

The same day DOJ moved to compel production of those documents from the various arms of Tennessee government, it also served a litany of other requests seeking information from state entities and officials, including:

- "all documents that the Tennessee General Assembly considered pertaining to its passage of Senate Bill 181/House Bill 1384 and any amendments to those bills prior to Senate Bill 181's passage" (RFP# 21, Ex. 2, at 8);

- information about all individuals who were incarcerated in a state facility for an aggravated prostitution conviction (ROG# 15, Ex. 2, at 11);

- information about how the Department of Safety issues licenses with designations to sex offenders, about every license issued with a designation to a sex offender who was convicted only of aggravated prostitution, and about every license issued removing a designation to a sex offender who was convicted only of aggravated prostitution (ROGs# 19-21, Ex. 2, at 12);

Defendants predicted DOJ would seek this "exhaustive discovery from 'the State of Tennessee'" when they moved for certification (Dkt. 47-1, at 7), and DOJ downplayed that

---

[2] DOJ says in its motion that many of its requests are targeted at "specific Tennessee agencies" and are seeking "particular" types of documents. (Dkt. 73-1, at 3.) But it does not say that is all it seeks.

3

prediction as "self-serving, conjectural, and speculative" (Dkt. 53, at 12).  But now DOJ asks this Court to compel "the State" to collect and produce documents possessed by myriad entities and officials.

The State of Tennessee objected to DOJ's first set of requests[3] on August 14, 2024,[4] articulating that they sought documents in non-parties' possession, imposed an unreasonable burden on the State, and could be obtained more conveniently through a Rule 45 subpoena.  (Dkt. 73-3, at 3.)  When counsel for the parties met and conferred about the objections on August 27, 2024, counsel for the State reiterated that Rule 45 was the appropriate and likely more fruitful vehicle for obtaining the requested documents.  (Dkt. 73-3, at 5.)  Via email two days later, counsel for the State again emphasized Rule 45, asking "why pursuing Rule 45 discovery is not an effective solution" and noting that DOJ's counsel admitted during the meet and confer that "subpoenas would likely bring [DOJ] to the same place as successful motion practice on this issue—but without the time wasted on motions and with the benefit of soliciting documents directly from the people best positioned to answer [DOJ's] requests."  (Dkt. 73-3, at 3.)  When DOJ indicated it was particularly interested in documents from the Tennessee Department of Correction and the Tennessee Department of Safety and Homeland Security, counsel for the State provided names, emails, and phone numbers of staff in the general counsel's offices of those departments to facilitate a subpoena.  (Ex. 3.)[5]

Finally, on September 12, 2024, DOJ took up counsel's suggestion and issued subpoenas to the Department of Correction, the Department of Safety, the Attorney General and Reporter, the

---

[3] It has not yet responded to the second set.
[4] The State and TBI responded to the first set a week early to facilitate resolution of their objections.
[5] DOJ omitted this email from the chain attached as an exhibit to its motion.

4

20th Judicial District Attorney General, and the 30th Judicial District Attorney General. The next day, without waiting for responses to those subpoenas, DOJ filed its motion to compel. (Dkt. 73.)

On September 27, 2024—the same day the State is filing this response—DOJ informed counsel for the State that the Department of Correction and the Department of Safety produced documents in response to DOJ's subpoena. (Ex. 4.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally split written discovery into two tracks: party discovery and non-party discovery. A party may request from "any other party . . . items in the responding party's possession, custody, or control" and may serve interrogatories "on any other party." Fed. R. Civ. P. 33(a)(1), 34(a)(1). But "interrogatories and requests for production of documents served on non-parties are a nullity." *Lehman v. Kornblau*, 206 F.R.D. 345, 346 (E.D.N.Y. 2001). To demand information from non-parties, a party must use a subpoena. Fed. R. Civ. P. 45.

No matter the track pursued, federal courts "must limit the . . . extent of discovery" if they determine that "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

## ARGUMENT

**I.    DOJ Cannot Obtain Party Discovery from State Entities and Officials Who Are Not Parties.**

DOJ cannot obtain party discovery from various entities and officials because they are not parties to this litigation—only "the State of Tennessee" and the TBI are. DOJ "has erroneously construed all executive agencies of the State as one entity." *New York ex rel. Boardman v. National R.R. Passenger Corp.*, 233 F.R.D. 259, 263 (N.D.N.Y. 2006). Thus, by a pleading device, DOJ attempts to subject every arm of Tennessee government to party discovery. But, as federal courts

5

and DOJ itself have said repeatedly, that is inconsistent with the federal rules and would create an unnecessary burden on government litigants.

Federal courts have recognized that litigation against a generic sovereign does not entitle a party to discovery from every government entity and official. They reject a "monolithic view of government" that would attribute information in one agency's possession to a different agency. *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998). Just because a government is a party does not mean that every branch of that government should be treated as a party. *Securities and Exchange Comm'n v. Biopure Corp.*, 2006 WL 2789002, at *4 (D.D.C. Jan. 20, 2006); *Texas v. Holder*, No. 12-cv-128, 2012 WL 13070110, at *2 (D.D.C. June 8, 2012). As DOJ has put it before, a court would be making a "sweeping and unprecedent ruling" to "open[] all files of the [e]xecutive [b]ranch" of a government to party discovery just because the generic sovereign is named as a party.

> The United States respectfully submits this letter in response to Defendants' (collectively, "UBS") motion to compel (ECF No. 45). UBS asks this Court to make a sweeping and unprecedented ruling that when the Department of Justice ("DOJ") files a fraud enforcement action on behalf of the United States, it opens all files of the Executive Branch of the United States government to Rule 34 discovery. This position has no support in governing law, which holds that "possession, custody, or control" in this context narrowly means the control of the prosecutors on the case and any agencies participating jointly in the investigation.

(Exhibit 5, Letter of DOJ in *United States v. UBS Securities LLC*, No. 18-cv-06369, Dkt. 52 (E.D.N.Y. June 6, 2019)). Thus, it is wrong to think of any sovereign made a party to litigation "in very broad terms." *United States v. Davis*, 140 F.R.D. 261, 263 (D.R.I. 1992).

That principle is even stronger with respect to state governments. "For reasons of federalism and comity, [federal courts] give great deference to the State and its Legislature to define how governmental entities are to be separate and distinct and how they may relate to one another as a whole; this is 'uniquely an exercise in state sovereignty.'" *Boardman*, 233 F.R.D. at 264 (quoting *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1343-44 (11th Cir. 1999)). That

6

is why "there is a presumption that separate governmental agencies under state law will not be aggregated together." *Id.* Thus, multiple courts have declined to compel discovery from state agencies who are not named parties to the litigation. *See id.*; *United States v. Novartis Pharmaceuticals Corp.*, No. 11 Civ. 8196, 2014 WL 6655703, at *9 (S.D.N.Y. Nov. 24, 2014); *United States v. American Express Co.*, No. 10-cv-04496, 2011 WL 13073683, at *4 (E.D.N.Y. July 29, 2011); *Colorado v. Warner Chilcott Holdings Company III, Ltd.*, No. 05-2182, 2007 WL 9813287, at *1 (D.D.C. May 8, 2007); *People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct. App. 2004) (holding the state is "not deemed to have possession custody, or control over documents of any state agency").

There are good reasons not to treat the State of Tennessee as one undifferentiated conglomerate. Government of the State of Tennessee is divided and delegated to various officials and departments. Tenn. Const. art. II, §§ 1, 3; art. III, § 1; art. VI, § 1. The varied arms of Tennessee government are established as separate entities by state law, each with their own chief executive officers that have "charge and general supervision" of their department. *See* Tenn. Code Ann. §§ 4-3-111, -112; *see generally* Tenn. Code Ann. §§ 4-3-201 to -5525 (establishing some of the various arms of Tennessee government); *cf. Lockyer*, 19 Cal. Rptr. 3d at 338. And they maintain their own records. *See Perrusquia v. Bonner*, No. W2023-00293-COA-R3-CV, 2024 WL 1026395, at *15 (Tenn. Ct. App. Mar. 11, 2024) (holding District Attorney General could not be required under Tennessee Public Records Act to produce documents possessed by sheriff); *cf. Lockyer*, 19 Cal. Rptr. 3d at 338.

DOJ wants this Court to buck that reasoning, but a close look at its argument reveals critical cracks. For one, DOJ inappropriately attempts to shift its burden to demonstrate control to the State. "The burden of establishing control over the documents sought is on the party seeking production." *Texas v. Holder*, 2012 WL 13070110, at *2 (quoting 7 MOORE'S FEDERAL PRACTICE

7

§ 34.14(2)(b) (3d ed. 2004)); *Novartis Pharmaceuticals*, 2014 WL 6655703, at *3. DOJ has not demonstrated "that any particular agency is required to hand over documents to the [Attorney General] in any litigation on demand." *Texas v. Holder*, 2012 WL 13070110, at *2. Instead, it has argued that "a state must go beyond a general assertion that it cannot obtain the documents and identify specific provisions of state law that prohibit it from doing so." (Dkt. 73-1, at 8.) That turns the applicable standard on its head. DOJ also insists, without pointing to any specific provision of state law, that the requested documents "must be within the State's possession, custody, or control." (Dkt. 73-1, at 6.) But generally claiming that government agencies *can* share documents with each other is not enough to meet DOJ's burden to show that they *must*. DOJ must demonstrate that there is a specific right in "explicit connection" with the litigation to *compel* the disclosure of information from one entity to another. *Novartis Pharmaceuticals*, 2014 WL 6655703, at *10. It is apparent from its brief that DOJ cannot carry that burden.

Next, DOJ argues that the Attorney General should have authority to obtain documents and information from various state agencies that the Attorney General can produce while it is representing "the State." (Dkt. 73-1, at 6.) But the Supreme Court long ago held that party discovery cannot be used to obtain information from a party's counsel. *Hickman v. Taylor*, 329 U.S. 495, 504 (1947). And, in any event, the Attorney General's representation of other agencies on other occasions does not render those agencies parties to this litigation. Again, DOJ identifies no state law that would allow the Attorney General to compel production from other agencies when they are not represented in litigation. It instead argues that the State has not identified an "explicit provision to the contrary." (Dkt. 73-1, at 6.) But that is not enough to carry DOJ's burden to demonstrate control.

DOJ also appears to ignore that the Attorney General is not even a part of the executive branch of Tennessee government. (Dkt. 73-1, at 3, 5 n.4 (characterizing the Attorney General as

8

a "Tennessee agenc[y]" and then arguing that "the State" encompasses "administrative departments . . . under the responsibility of the Governor")). The Attorney General is a member of the judicial branch, appointed by the Tennessee Supreme Court. Tenn. Const. art. VI, § 5. DOJ's suggestion that the Attorney General can just demand documents from various executive branch departments thus raises serious separation of powers concerns. *See* Tenn. Const. art. II, §§ 1-2.

DOJ also makes a point to explain that it sued "the State" so that it could obtain relief from all the "administrative departments" that "are under the responsibility of the Governor." (Dkt. 73-1, at 5.) But it sued TBI separately because it "retains more independence from the State's Governor." (*Id.*) How this helps DOJ's motion to compel is unclear. What is clear, though, is that DOJ views naming "the State" as a convenient placeholder for anybody that it might have wanted to sue.

That proposition has its own problems. As the Sixth Circuit has repeatedly emphasized, a plaintiff cannot name a single figurehead official, like the Governor, and treat him as a stand-in for state officials who are tasked with direct enforcement of the law. *Doe v. Lee*, 102 F.4th 330, 336 (6th Cir. 2024); *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031-32 (6th Cir. 2022); *see Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021). DOJ has gone the *opposite* direction of the Sixth Circuit's reasoning. If a plaintiff cannot sue—and cannot obtain party discovery from—the Governor on behalf of the whole executive branch, it is impossible to see how suing, even more generically, "the State" is an appropriate workaround.

Finally, DOJ's attempt to draw a distinction between a sovereign that is a *parens patriae* plaintiff and a sovereign defendant actually hurts it. (Dkt. 73-1, at 8-9.). When not dealing with the "relatively unique" circumstance that a sovereign is a plaintiff in a *parens patriae* capacity, a sovereign defendant has a legitimate "fear" that wide-ranging discovery into every branch of

9

government "might encourage other litigants in other cases to rummage through the files of the entire government, and so paralyze both the work of numerous agencies and that of the courts." *United States v. AT&T Co.*, 461 F. Supp. 1314, 1334 (D.D.C. Sep. 11, 1978). That, as DOJ has argued before, is good reason to be *more* cautious about allowing a plaintiff to sue "the sovereign" and obtain party discovery from every branch of government.

> States." *Id.* The court explicitly limited its holding to the unique set of facts before it: "The Court today holds only that on these peculiar facts, which involve massive and wide-ranging allegations, and in this peculiar action, which involves many departments and their evidence, the United States, having filed the action, cannot claim to be merely the Department of Justice." *Id.* (footnote omitted). And the Court expressly distinguished between cases filed *by* the United States, such as the antitrust suit then before it, and those filed *against* the United States, such as the FTCA case before this Court. *Id.* at 1334 n.59 ("This suit was brought not against but by the United States.").

(Ex. 6, Brief of DOJ in *North Dakota v. United States*, No. 19-cv-150, Dkt. 72, at 10 (D.N.D. Mar. 9, 2021).)

DOJ heavily relies on a previous decision from this district. But that decision does not control here, nor should this Court follow it. In *Board of Education of Shelby County v. Memphis City Board of Education*, Magistrate Judge Claxton ordered the Attorney General, who was a named party, to produce documents in the General Assembly's possession in party discovery. No. 2:11-cv-02101, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012), *supplemented* 2012 WL 6607288, at *1 (Dec. 18, 2012). That holding contains both errors in reasoning—some of which appear to be the fault of the parties—and important factual differences that make it unpersuasive in this case. First, as the DOJ does in this case, the court mistakenly put the burden on the Attorney General to "cite[] any legal basis for the asserted lack of control over these documents." *Id.*, 2012

10

WL 6607288, at *1. Thus, the court incorrectly used a lack of "any explicit provision" as a reason to compel discovery instead of deny it. *Id*. Second, the court did not—and, largely, could not—consider the wealth of authority provided by the State in this response. Some of the cases cited by the State here were not even decided in 2012, and it appears most of the older ones were not presented to the court in that case. The court could only decide the issues on the arguments presented to it. *Sherman v. United States*, 356 U.S. 369, 376 (1958). Third, the court based its reasoning for compelling documents from the Attorney General in part on the principle that the custodian of the documents—the General Assembly—was immune from being named a party to the suit and that the Attorney General *must* be named as a party to a constitutional challenge. *Id*., 2012 WL 6003540, at *2. However right or wrong that reasoning was,[6] it does not apply here. DOJ has never suggested it could not sue the non-parties from whom it seeks discovery; it just insists that suing "the State" is more convenient. Moreover, the Attorney General is not a party, he is representing the State as its lawyer in this case, and DOJ's complaint does not involve a constitutional challenge. Finally, the court did not explain, perhaps because the Attorney General also asserted legislative privileges on the General Assembly's behalf, why discovery from the General Assembly could not be sought through Rule 45 instead. In sum, despite superficial similarities, the decision in *Board of Education of Shelby County* should hold no weight in this case.

Following DOJ's argument to its logical conclusion would create a discovery mandate that is both "unduly burdensome and cumbersome" and "totally untenable and outside the spirit of the Federal Rules." *Boardman*, 233 F.R.D. at 266. And a decision in DOJ's favor would no doubt be used in future litigation against the United States by plaintiffs who seek discovery from the various

---

[6] The Sixth Circuit has since squarely held that the Attorney General cannot be made a defendant to a constitutional challenge merely because he is charged with defending statutes' validity. *Nabors*, 35 F.4th at 1031. So, the court's prior reasoning has already been undermined.

11

arms of federal government. DOJ's support for a rule now that it has opposed in the past, *see, e.g.,* (Exs. 5-7), appears entirely self-serving. But the Court need not be so short-sighted. DOJ "must do what all litigants must when seeking discovery from non-parties: serve subpoenas on the entities that possess the information."

> The Attorney General's consistent position throughout discovery in this case has been that the information that Texas seeks in the discovery requests at issue is not within his possession, custody, or control. Therefore, it may not be properly obtained through Rules 33 and 34. In order to obtain discovery from federal agencies who are neither parties to this litigation nor have any enforcement or operational responsibilities under the Voting Rights Act, the State must do what all litigants must when seeking discovery from non-parties: serve subpoenas on the entities that possess the information. The law upon which Texas would rely offers no safe

(Ex. 7, Brief of DOJ in *Texas v. Holder*, No. 1:12-cv-00128, Dkt. 147, at 4 (D.D.C. May 24, 2012)).

**II.     Rule 45 Provides a Less Burdensome Avenue for DOJ to Discover Information Pertinent to Its Case.**

DOJ is not left without a course to obtain the documents it desires. Subpoenas to the non-party state entities and officials provide a "more convenient [and] less burdensome" path to that discovery. Fed. R. Civ. P. 26(b)(2)(C)(i). The federal rules require DOJ to take that path.

Subpoenas are more convenient and less burdensome for *all the parties*. The State will be spared the enormous burden of accounting for documents from all the "departments, agencies, boards, bureaus, commissions, councils, and agents" of Tennessee government. Over 42,000 employees work in myriad parts of Tennessee government. *2023 State of the State Employee Annual Report*, Tennessee Department of Human Resources, https://perma.cc/D66T-WBPP. Not only is such an extensive search for documents burdensome on its face, it also inappropriately interposes counsel for the State as a middleman between DOJ and non-party state entities and

officials. Obtaining the documents via subpoenas issued directly to the entities and officials DOJ wants documents from cuts out the middleman, reduces the looming burden of discovery from every arm of government, and allows DOJ and the non-parties to work out any objections directly. DOJ also benefits because they can authenticate the documents produced to them via subpoena. While "[d]ocuments produced in discovery are regularly found to be both self-authenticating and not hearsay because they constitute the admissions of a party opponent," *Jones v. Wal-Mart Stores East, L.P.*, No. 2:19-cv-2747, 2021 WL 784145, at *5 (W.D. Tenn. Feb. 1, 2021), the documents DOJ seeks from non-parties through the State would not be. So, the Court can expect to face authentication issues down the line in this case unless DOJ circles back to the non-parties to authenticate the documents produced to it. And, at that point, subpoenaing the documents directly from the non-parties would again have been more efficient.

In the end, subpoenas will get DOJ exactly the documents it asks for and is entitled to, faster, and without imposing unnecessary burdens on the State. In fact, this is already playing out, as two non-parties have produced documents within just two weeks of DOJ issuing its subpoenas. (Ex. 4.)

DOJ speculates that any number of problems "could" make subpoena practice more complicated. They worry subpoenas "could" multiply discovery disputes, non-parties "could" object to disclosure because of their non-party status, and DOJ "would be unable to serve interrogatories and requests for admission to these agencies." (Dkt. 73-1, at 9-10.) The first two fears are just hypotheticals, and it is hard to see how, even if they did materialize, they would create any more burden than shoehorning non-party discovery into party discovery. DOJ has given no indication there are any actual discovery disputes with the subpoenaed non-parties. If there were, the non-parties would probably insist that the same disputes be resolved in relation to DOJ's party requests for production—only the State would then have to act as a middleman. Using

13

subpoenas allows DOJ and the non-parties to work out those disputes efficiently between themselves. And DOJ's fear that it cannot issue interrogatories and requests for admissions to the non-parties if the Court cuts out the State as a middleman just begs the question. No ordinary litigant gets to pursue that sort of discovery from non-parties. *Farmer v. Sheppard*, No. 1:17-cv-32, 2019 WL 13242651, at *3 (E.D. Tenn. Sep. 23, 2019). But DOJ can always seek information other than documents from the non-parties through subpoenas for depositions.

In short, Rule 45 provides the most efficient path for the DOJ to obtain the information it seeks in this motion. There is no need to compel the State to collect and produce the non-parties' documents.

## CONCLUSION

The motion to compel should be denied.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Cody N. Brandon*
CODY N. BRANDON (BPR# 037504)
Managing Attorney
Senior Assistant Attorney General

DAVID RUDOLPH (BPR# 13402)
Senior Assistant Attorney General

Law Enforcement and
Special Prosecutions Division
Office of the Tennessee
Attorney General and Reporter
PO Box 20207
Nashville, TN  37202
Off. (615) 532-7400
Fax (615) 532-4892
Cody.Brandon@ag.tn.gov
David.Rudolph@ag.tn.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2024, a true and exact copy of the foregoing was served via the court's electronic filing system upon counsel as follows:

Stella Yarbrough (BPR No. 033637)
Lucas Cameron-Vaughn (BPR No. 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.rog
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Alex Agathocleous (NY Bar 4227062)
Alexis Alvarez (NY Bar 5854278)
Jon W. Davidson (CA Bar 89301)
Rachel Meeropol (NY Bar 4100954)
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclus.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Lynly S. Egyes (NY Bar 4838025)
Milo Inglehart (NY Bar 5817937)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert (NY Bar 5366554)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for the private plaintiffs*

Stephanie Berger

Ali Szemanski
Anna Bobrow
U.S. Department of Justice
150 M Street NE
Washington, DC 20002
*Counsel for the United States*

*/s/ Cody N. Brandon*
CODY N. BRANDON
Managing Attorney
