# EXHIBIT 5



**U.S. Department of Justice**

*United States Attorneys*
*Eastern District of New York*
*Northern District of Georgia*

June 6, 2019

Honorable Peggy Kuo
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *United States v. UBS Securities LLC, et al.*, No. 18-CV-6369 (MKB/PK)

Dear Judge Kuo:

   The United States respectfully submits this letter in response to Defendants' (collectively, "UBS") motion to compel (ECF No. 45). UBS asks this Court to make a sweeping and unprecedented ruling that when the Department of Justice ("DOJ") files a fraud enforcement action on behalf of the United States, it opens all files of the Executive Branch of the United States government to Rule 34 discovery. This position has no support in governing law, which holds that "possession, custody, or control" in this context narrowly means the control of the prosecutors on the case and any agencies participating jointly in the investigation.

   ***UBS' Position Has No Support in Governing Law:*** UBS admits that it does not even know the "full scope of relevant documents" that it is looking for and seeks authority from the Court to demand that the government search all of its files for documents that UBS claims are relevant to this case. While it offers "examples" of documents from the Departments of Housing and Urban Development ("HUD") and Treasury ("Treasury"), UBS makes clear that HUD and Treasury documents are the "minimum" and that it is also demanding discovery from unspecified "other Executive Branch departments and agencies." *See* ECF No. 45-3, at 1-2. In both criminal and civil cases brought by DOJ, government "possession, custody, or control" of documents extends only to materials in the possession of the prosecutors in a particular case or governmental agencies jointly involved in the case and not the "government" as a whole. *See, e.g., United States v. Volpe*, 42 F. Supp. 2d 204, 221 (E.D.N.Y. 1999) ("Courts have construed the term 'government' in this rule narrowly to mean the prosecutors in the particular case or the governmental agencies jointly involved in the prosecution of the defendant, and not the 'government' in general."); *United States v. Upton*, 856 F. Supp. 727, 749-50 (E.D.N.Y. 1994) (the government was not required to produce material from agency outside of United States Attorney's Office because there was no "joint investigation").[1] These decisions recognize that a "monolithic view

---

[1] *See also United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (defining the government as encompassing "government agenc[ies] so closely aligned with the prosecution so [ ] as to be considered part of the prosecution team"); *Deane v. Dynasplint Sys., Inc.*, No. 10-CV-2085, 2015 WL 1638022, at *4 (E.D. La. April 13, 2015) (holding in civil False Claims Act case, that "[g]enerally, in cases conducted principally by attorneys of the United States Justice Department, government possession, custody, or control extends to materials in the possession of a federal agency other than [DOJ] when [DOJ] is engaged in a joint effort with that other agency or when the other agency is so closely aligned with [DOJ] as to be part of the prosecuting government team or has contributed significantly to the investigation or prosecution of the case."); *United States v. Davis*, 140 F.R.D. 261, 263 (D.R.I. 1992) (rejecting document request from House Subcommittee in a civil CERCLA case because "[q]uite simply, the documents, and therefore the log of such documents, are not in the possession, custody, or control of the DOJ or the EPA.").

of government" would condemn prosecutions to "a state of paralysis" due to untenable discovery burdens. *See United States v. Avellino*, 136 F.3d 249, 255 (2d. Cir. 1998) (quoting *United States v. Gambino*, 835 F. Supp. 74, 95 (E.D.N.Y. 1993)). Indeed, such an untenable discovery burden is precisely what UBS seeks to impose here.

UBS' argument relies exclusively on one outlier case from another district—*United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978)—that UBS misrepresents as the "leading" case. As the cases cited above indicate, its core reasoning has been overwhelmingly rejected. And, even the *AT&T* court itself limited its precedential value because it "might encourage other litigants in other cases to rummage through the files of the entire government, and so paralyze both the work of numerous agencies and that of the courts." *Id.* at 1334. Indeed, the *AT&T* court held that the case was "relatively unique" and limited the holding to "these peculiar facts," and "this peculiar action". *Id.* And subsequent cases from the district in which *AT&T* was decided have rejected its reasoning.[2] Further, UBS erroneously states that the government has somehow "conceded" and "agreed" that the entire Executive Branch of the government is subject to discovery in this case, citing to their own self-serving letter containing a host of mischaracterizations about the United States' positions. The truth is that UBS initially served, and subsequently withdrew, Rule 45 subpoenas on HUD and other agencies, then began unilaterally sending correspondence in this case to both HUD and Treasury (*see* ECF No. 45-3, at 2, 8), necessitating that DOJ inform those agencies about this case and discuss the requests with UBS, with a view toward being pragmatic and minimizing and clarifying disputes to move this case forward.[3]

Here, the government's investigation was conducted by the U.S. Attorney's Offices for the Eastern District of New York and the Northern District of Georgia. Neither HUD nor Treasury has been jointly involved in prosecuting this case. As such, the law is overwhelmingly clear that HUD and Treasury documents are not within the "possession, custody, or control" of the plaintiff, and UBS' motion should be denied on this basis alone.

**UBS' Document Requests Are Absurdly Overbroad:** UBS offers no rational explanation for how, under Rule 26(b)(1), its discovery requests are relevant, important to the issues at stake, and proportionate to the needs of this FIRREA[4] action, which is predicated on allegations that UBS violated the criminal mail fraud, wire fraud, and other statutes.[5] UBS does not tie any of the documents it seeks to any of the elements of any claims in this case, but simply asserts, in conclusory fashion, that the documents are "at issue." This is a FIRREA action predicated on mail and wire fraud statutes. To prove that UBS violated these statutes, the United States intends to show that UBS "(1) affirmatively misrepresented, or failed to disclose, material information that it had a duty to disclose, and (2) acted

---

[2] In *SEC v. Biopure Corp.*, an SEC enforcement action brought in the District of Columbia, the defendant sought discovery from the FDA. After reviewing the parties' positions, including arguments regarding the application of *AT&T*, the court found "no support for [defendant's] position that because the SEC [Government] is a party, then other branches of the Government such as the FDA should also be treated as a party . . . ." No. 05-CV-506, 2006 WL 2789002, at *4 (D.D.C. Jan. 20, 2006); *see also Texas v. Holder*, No. 12-CV-128, 2012 WL 13070110, at *2 (D.D.C. June 8, 2012) (rejecting attempt to obtain discovery from federal agencies based on *AT&T*, holding "that case is distinguishable . . . to the 'peculiar facts' of that 'peculiar action.'").

[3] In the ordinary course, federal departments and agencies such as HUD and Treasury would typically seek DOJ to represent them in situations such as this if UBS had served Rule 45 subpoenas.

[4] Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1833a.

[5] *See* 18 U.S.C. §§ 1341 and 1343.

with fraudulent intent." *In re Bank of N.Y. Mellon Corp.*, 12-MD-2335, 2014 WL 5392465, at *3 (S.D.N.Y. Oct. 9, 2014) (internal quotations omitted). At trial, the United States "will not have to prove . . . that . . . victims actually relied on the Bank's misrepresentations or omissions" because these statutes "do[] not require that the victim actually be deceived or even that the victim actually be harmed." *Id.* Even if UBS unsuccessfully attempted fraud, it is still liable under these statutes.

UBS seeks broad discovery as to federal policy and actions regarding mortgages, the housing market and the financial crisis as purportedly "relevant to Plaintiff's own knowledge . . . and the knowledge of other participants in the mortgage markets." ECF No. 45 at 3; ECF No. 45-5 at 8. UBS reasons that, because the 40 RMBS transactions at issue in this case are backed by residential mortgages, it is entitled to any document within the far reaches of the federal government that remotely touches upon housing policy or the mortgage market. But the knowledge and state of mind of people working at federal agencies has no relevance to whether UBS acted with intent to defraud investors in 40 discrete RMBS transactions, as "the [b]ank's intent depends on what the [b]ank thought" and not what other people, including those working at federal agencies, thought. *In re Bank of N.Y. Mellon*, 2014 WL 5392465, at *3. Stated differently, documents at federal agencies have nothing to do with whether UBS committed fraud, nor can they shed light on UBS' state of mind when it sold the 40 RMBS transactions. Moreover, with respect to the government's purported second-hand knowledge of "other participants" in the mortgage market, UBS has already directly subpoenaed each and every such participant across all 40 RMBS transactions at issue by issuing over 350 subpoenas. *See* ECF No. 19.

One exemplar of the absurd scope and lack of any relevance of the documents UBS seeks is what it attached as Exhibit I to its April 22 letter (ECF No. 45-3, at 5), which is a HUD document entitled "Review of Selected Underwriting Guidelines to Identify Potential Barriers to Hispanic Homeownership" and which is attached hereto as Exhibit 1. UBS asserts that it is entitled to this document, and others like it, because "studies" of "underwriting guidelines" that are "related to the housing market" are "obviously relevant here." ECF No. 45-3, at 5. How are documents on HUD's views on "potential barriers to Hispanic homeownership" in any way relevant to whether UBS acted with fraudulent intent when misrepresenting what it knew about the RMBS it sold?

It must also be noted that this is not a case brought by DOJ on behalf of HUD, Treasury, or any other federal department or agency. It is not, for example, an action seeking recovery of damages on behalf of HUD concerning mortgages originated, insured or securitized under any HUD program. Instead, it is an action for civil penalties based upon UBS' commission of predicate criminal violations. Thus, in this case, the United States "is the representative not of an ordinary party to a controversy, but of a sovereignty . . . ." *See Berger v. United States*, 295 U.S. 78, 88-89 (1935).

Lastly, UBS wrongly contends that any statement made by any government employee constitutes a party admission. Courts have generally concluded that no statements are admissible against the government under Fed. R. Evid. 801(d)(2)(D) or that only certain statements that DOJ has adopted before the court are admissible.[6]

---

[6] *See United States v. Arroyo*, 406 F.3d 881, 888 (7th Cir. 2005) ("government agents are not party-opponents for purposes of Rule 801(d)(2)"); *United States v. Kapp*, 781 F.2d 1008, 1014 (3d Cir. 1986) ("There is no authority for the proposition that the prosecution is a 'party' against whom [Rule 801(d)(2)] evidence can be offered."); *United States v. Bagcho*, 151 F. Supp. 3d 60, 69 (D.D.C. 2015) ("The D.C. Circuit appears to be motivated by the principle that holding the government to the assertions of a public official who is unrelated to the prosecution is unfair, unless the government manifestly adopts the statement before the court.").

Page 4

Respectfully submitted,

RICHARD P. DONOGHUE                    BYUNG J. PAK
United States Attorney                 United States Attorney
Eastern District of New York           Northern District of Georgia


/s/_____            /s/_____
BONNI J. PERLIN                        ARMEN ADZHEMYAN
MICHAEL J. CASTIGLIONE                 AUSTIN M. HALL
RICHARD K. HAYES                       Assistant United States Attorneys
Assistant United States Attorneys      Richard B. Russell Federal Building
271A Cadman Plaza East                 75 Ted Turner Dr. SW, Suite 600
Brooklyn, NY  11201-1820               Atlanta, GA 30303-3309
(718) 254-7000                         (404) 581-6000


cc:  Counsel for Defendants (via ECF)