# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA
### WESTERN DIVISION

| | | |
|---|---|---|
| STATE OF NORTH DAKOTA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-150-DMT-ARS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT UNITED STATES OF AMERICA'S RESPONSE IN OPPOSITION TO PLAINTIFF STATE OF NORTH DAKOTA'S MOTION TO COMPEL

The State of North Dakota filed this Federal Tort Claims Act (FTCA) case against "the United States of America, *acting through the U.S. Army Corps of Engineers ('USACE')*." ECF No. 1 at 1 (emphasis added). The claims in this case allege torts based on the actions or inactions by USACE individuals to purportedly allow protests on USACE-managed land. Nonetheless, Plaintiff now seeks to compel discovery from officials from numerous federal agencies and components, including the former Attorney General of the United States and the former Secretary of the Interior, because it wants to discover "the United States' tortious conduct." To justify this request, Plaintiff attempts to expand the scope of this litigation beyond the actions of USACE individuals—which have consistently formed the basis for Plaintiff's claims at every stage of this case until now—to encompass all aspects of the federal government's response to the DAPL protests. The Court does not have jurisdiction over claims based on any conduct other than that of USACE in allegedly allowing the protests, and the discovery Plaintiff seeks is neither relevant to any claim or defense at issue nor proportional to the needs of the case.

1

## FACTUAL BACKGROUND

**A. Plaintiff filed an administrative claim with USACE alleging tortious conduct by USACE.**

On July 19, 2018, Plaintiff submitted an administrative tort claim to USACE "in support of the State of North Dakota's Federal Tort Claim against the U.S. Army Corps of Engineers for their actions and inactions surrounding the Dakota Access Pipeline protests in 2016 and 2017." ECF No. 67-1 at 2. The administrative claim identified USACE as the only appropriate federal agency to address that claim, *id.* at 3, and was based explicitly and exclusively on conduct by USACE, *id. passim*. Plaintiff represented that "[t]he basis of this claim is the USACE's failure to enforce mandatory legal requirements governing private conduct on the federal lands under USACE's jurisdiction." *Id.* at 2. Throughout the submission, Plaintiff focused on "USACE's [alleged] tortious conduct." *Id.* ¶ 2; *see also, e.g.*, *id.* ¶ 3 ("USACE's tortious conduct, which included outright abdication of federal law enforcement responsibility, required North Dakota to provide a sustained, large-scale public safety response. . . ."); *id.* ¶ 4 ("Actions and inactions by USACE were the direct and immediate cause of the dangerous and illegal civil unrest that required North Dakota to mobilize hundreds of law enforcement personnel to contain the unlawful conduct."); *id. passim* (referring to conduct by USACE).

The administrative claim mentioned other federal agencies only once, but it did not allege tortious conduct by those agencies. It asserted that USACE was aware of illegal protest conduct because it had "access to the same intelligence reports that North Dakota law enforcement agencies were receiving from federal agencies such as the Federal Bureau of Investigation [FBI] and the Bureau of Indian Affairs [BIA]." *Id.* ¶ 41.

**B. Plaintiff filed a complaint specifically based on conduct by USACE in allegedly inviting and encouraging protestors—not in the overall federal protest response.**

A year later, Plaintiff filed its FTCA Complaint in this action. *See* ECF No. 1. The Complaint brings claims "against the United States of America, *acting through the U.S. Army Corps of Engineers ('USACE').*" *Id.* at 1 (emphasis added). It refers to USACE more than 200 times. *See id. passim.* By contrast, Plaintiff's 41-page, 133-paragraph pleading mentions other federal agencies only four times. *Id.* ¶¶ 28, 29, 47, 54.

The United States moved to dismiss the Complaint because, among other reasons, the discretionary function exception to the FTCA's waiver of sovereign immunity bars Plaintiff's claims. *See* ECF No. 6. In response, Plaintiff argued that the Complaint is not based on a general claim that "federal officials failed to enforce the law" but on narrower conduct by USACE—that USACE invited the protestors onto federal land and encouraged them:

> The government's discretionary function arguments are fundamentally misdirected, because they presume that the gravamen of North Dakota's claims is that, in the face of the violent and dangerous DAPL protests, federal officials failed to enforce the law (including permitting regulations) in a manner that would mitigate personal injury and property damage, and more generally maintain public order . . . . But the government's presumption about the basis for North Dakota's claims is wrong. As explained above, North Dakota's claims are grounded legally in the State's tort law and factually **in USACE's** *invitation* onto federal land and *encouragement* of the DAPL protesters, conduct that enabled, aggravated and prolonged the protests and the personal injuries and property damage they caused.

ECF No. 14 at 29 (initial emphasis added) (citations omitted). Plaintiff's counsel further represented to the Court at oral argument on the motion to dismiss that "North Dakota is not complaining about the Corps' response to the protests." ECF No. 37 (transcript of oral argument on the United States' Motion to Dismiss dated July 27, 2020) ("Hr'g Tr.") at 54:24-25.

Relying on Plaintiff's arguments, the Court denied the United States' motion in part, holding that "the discretionary function exception does not apply because *the Corps* failed to follow a mandatory permit application process." *Id.* at 31 ¶ 50 (emphasis added).

### C. Plaintiff's initial disclosures listed, in addition to thirteen USACE individuals, thirteen non-USACE individuals, including two Cabinet-level officials.

After the Court ruled that the case may proceed on the basis of USACE's actions and inactions, Plaintiff served initial disclosures naming thirteen individuals from non-USACE federal agencies as "hav[ing] knowledge regarding the allegations in Plaintiff's Complaint . . . ." *See* Ex. A, Plaintiff State of North Dakota's Initial Disclosures (Oct. 22, 2020) at 5-8. These individuals are current or former employees of eight different federal agencies or components, including two Cabinet-level officials. The individuals are:

- former United States Attorney General Loretta Lynch;

- former United States Attorney for the District of North Dakota Chris Myers;

- Jake O'Connell, Brian Hoss, and Brian VanOosbree of the FBI;

- Intelligence Officer Ryan Wentz of the Department of Homeland Security;

- former Secretary of the Interior Sally Jewell;

- Lowry Cook of the Department of the Interior;

- former White House Deputy Associate Director of Intergovernmental Affairs under President Barack Obama, Jodi Gillette;

- Darren Cruzan of the BIA Office of Justice Services;

- former Director of the U.S. Marshals Service Stacia Hylton;

- former U.S. Marshal Paul Ward; and

- Special Agent Derek Hill of the Bureau of Alcohol, Tobacco, Firearms and Explosives.

*Id.*

Plaintiff has never specifically explained how these individuals have relevant knowledge of how USACE allegedly invited DAPL protestors onto federal land. When the United States asked Plaintiff to explain what relevant information it believed each of these individuals had, Plaintiff revised its initial disclosures to include generic statements that, on information and belief, these individuals would have knowledge of the DAPL protests or the "federal government's [protest] response." *See* ECF No. 67-7 at 8-11. For example, Plaintiff explained above its listing of five DOJ employees (including the former Attorney General) that:

> Upon information and belief, the following DOJ individuals would have knowledge of facts surrounding federal government's responses to the DAPL protests, the federal government policies regarding the DAPL protests, coordination and communication with State officials regarding the DAPL protests and jurisdiction, the federal government's resource management, and federal government investigative and enforcement efforts in response to potentially criminal activity.

*Id.* at 9.

### D. Plaintiff now seeks discovery from the entire federal government based on the alleged "tortious conduct of the United States."

On December 17, 2020—four months after the Court permitted the case to proceed on the basis of USACE employees' purported torts—Plaintiff served discovery requests seeking all DAPL-protest-related communications from the entire federal government. ECF No. 67-2 at Definition 3 ("Defendant refers to Defendant the United States, all agencies thereof, . . . and any employees of the United States acting on behalf of the United States or any federal agencies"); *id.* at RFP 1 ("Produce any and all communications between the Defendant and any third parties concerning the Protests . . ."); *id.* at RFP 2 ("Produce any and all inter-agency and intra-agency communications by and among the Defendant concerning the Protests . . .").

Pursuant to the parties' agreement to prioritize custodians implicated by discovery requests, the United States identified those USACE individuals whom it believes had the most

sustained involvement in the allegedly tortious conduct related to the DAPL protests that gives rise to Plaintiff's claims. ECF No. 67-3 at 2. In response, Plaintiff suggested that it sought to recover not for the allegedly tortious conduct of USACE individuals, but for the entire federal government's response to the DAPL protests. *See* Ex. B, Email from P. Seby (Jan. 29, 2021) at 1.

Shortly thereafter, on the date agreed upon by the parties, the United States served its discovery responses explaining that, among other things, Plaintiff had not shown that discovery from non-USACE agencies would fall within the Court's jurisdiction or be relevant to the claims at issue in the case, and would be unduly burdensome and not proportional to the needs of the case. *See* ECF No. 67-5 at 3-5. The next day, Plaintiff renewed its request for non-USACE discovery. ECF No. 67-6. Counsel offered to facilitate contact with other, non-USACE federal agencies Plaintiff believed might have relevant information, but Plaintiff did not respond to that offer. Ex. C, Email from B. Scarpato (Feb. 12, 2021). Plaintiff brought the issue to the Court, and the Court requested that the parties provide position statements.

In its position statement, Plaintiff did not contend that its claims are "based on tortious conduct by USACE" as it had in responding to the motion to dismiss, ECF No. 14 at 9, in its administrative claim filed with USACE, ECF No. 67-1 *passim*, and throughout its Complaint, ECF No. 1 *passim*. Rather, Plaintiff now argued that "several federal agencies" contributed to the allegedly unlawful conduct at issue, and that "the United States was the tortfeasor":

> The United States also claims that other [non-USACE] agencies are not subject to the Court's discovery jurisdiction because Plaintiff's Complaint alleges that only the USACE committed tortious actions. This is incorrect. The Complaint alleges that the United States was the tortfeasor, and describes how several federal agencies contributed to that unlawful conduct. Compl. ¶¶ 3, 16, 28, 29, 40, 47, 54, 102, 104.

State's Position Statement dated February 19, 2021. Plaintiff cited to nine paragraphs in the Complaint to support this assertion.[1] Only four of them mention any agency other than USACE. *See* ECF No. 1 ¶¶ 28, 29, 47, 54. Only three of the cited paragraphs allege that another agency took any kind of action. *See id.* ¶¶ 28, 47, 54. Plaintiff offered no explanation of how anyone from any other agency was involved in (or has independent knowledge of) the alleged tortious conduct by USACE employees that gives rise to the claims before the Court.

## ARGUMENT

Plaintiff's motion to compel seeks discovery from several agencies beyond USACE that Plaintiff claims "were directly involved in and knowledgeable about the tortious conduct of the United States." ECF No. 67 at 1. Plaintiff is not entitled to such far-reaching discovery. The only conduct for which Plaintiff can possibly recover in this case are the specific alleged torts of USACE employees. The Court does not have jurisdiction over claims arising out of any conduct by any non-USACE agency or employee.

Plaintiff also has not shown how any non-USACE individual has relevant information about USACE's conduct that would be proportional to the needs of this case and not unduly burdensome to obtain. Nor has Plaintiff shown that documents from the identified USACE custodians—the individuals most involved with and knowledgeable of the events alleged in the Complaint—are not likely to contain the relevant information Plaintiff purports to seek.

## I. The only claims for which Plaintiff can recover in this case are based on the allegedly tortious conduct of USACE employees.

As an initial matter, Plaintiff's motion rests on the mistaken premise that its claims are based on the allegedly tortious conduct of the entire federal government. They are not. USACE

---

[1] For ease of reference, the text of these nine paragraphs is set out in full in Appendix 1. For ease of comparison, the paragraphs in the Complaint solely pertaining to USACE are set out in full in Appendix 2.

employees are the only alleged tortfeasors, and deciding the propriety of their conduct is the only

issue over which the Court has jurisdiction. Plaintiff's arguments to the contrary fail.

**A. Party discovery is properly directed to USACE, the federal agency whose employees' conduct is at issue.**

Plaintiff's primary argument in favor of discovery from non-USACE employees is that

the United States is the named defendant in this case. *See* ECF No. 67 at 7-9. Plaintiff contends

that because the United States is the named defendant, Plaintiff is free to seek party discovery

from "various federal agencies that participated in and have discoverable information about the

United States' tortious conduct." *Id.* at 9. Plaintiff is mistaken.

The FTCA provides a limited waiver of the government's sovereign immunity for suits

arising out of certain tortious conduct of federal employees acting within the scope of their

employment. *See* 28 U.S.C. § 1346(b)(1); *Brownback v. King*, No. 19-546, 141 S. Ct. 740, 2021

WL 726222, at *2 (U.S. Feb. 25, 2021). A lawsuit against the United States is the exclusive

remedy for claims arising out of the allegedly tortious conduct of federal employees. 28 U.S.C.

§ 2679(b)(1).

Although the United States must be named as the defendant in an FTCA suit, the United

States itself is not the tortfeasor. Rather, the United States may only be sued for supervisory

liability under the FTCA. *See, e.g.*, *St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001)

(explaining that the FTCA's limited waiver of sovereign immunity allows the United States "to

be sued for the actions of 'any employee of the Government while acting within the scope of his

office or employment' under circumstances where the United States would be liable if it were a

private employer." (citations omitted)); *Lomando v. United States*, 667 F.3d 363, 374 (3d Cir.

2011) ("[T]he FTCA provides that the United States will be liable to the extent that a private

employer would be liable in similar circumstances in the same locality . . . . [T]he United States

8

stands in the shoes that a similarly-placed private employer of the [employees] would stand and answers for the allegedly tortious conduct of the [agency employees]."); *Johnson v. Sawyer*, 47 F.3d 716, 730 (5th Cir. 1995) ("All FTCA liability is *respondeat superior* liability. . . .").

In this case, as alleged in the Complaint, the United States acted through USACE employees, and it is potentially liable as those individuals' employer in defending this lawsuit. Plaintiff cites no authority supporting the sweeping proposition that while the United States stands only in the shoes of USACE for purposes of jurisdiction and liability, it also stands in the shoes of the entire executive branch for purposes of discovery.

The Supreme Court has cautioned district courts about the burdens that may result from overly sweeping discovery directed to the Executive Branch. In *Cheney v. U.S. District Court for the District of Columbia*, 542 U.S. 367 (2004), the Supreme Court addressed sweeping discovery requests directed to senior executive officials, and reversed a court of appeals decision that had required those officials to formally assert privilege with respect to specific documents. The Court observed that its precedents "give recognition to the paramount necessity of protecting the Executive Branch from vexatious litigation," *id.* at 382, and concluded that "all courts should be mindful of the burdens imposed on the Executive Branch in any future proceedings," *id.* at 391.

Plaintiff, however, asserts that courts have denied attempts to limit discovery to a single agency "when the United States as a whole is the party." ECF No. 67 at 8. The cases that Plaintiff cites on this point do not support this argument. Each involved unusual facts, two involved affirmative cases filed by the United States as plaintiff, and two precede the Supreme Court's decision in *Cheney*.

For example, *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978), which Plaintiff presents as the "leading case on this issue," ECF No. 67 at 8, undermines, rather than supports,

Plaintiff's position. *AT&T* was an antitrust suit filed by the Department of Justice alleging a "vast and unlawful monopoly" over telephone and telecommunications services throughout the United States. *AT&T*, 461 F. Supp. at 1344. The court was called on to consider who was properly considered the plaintiff for purposes of discovery "in an action instituted in the name of the United States." *Id.* at 1332. It determined that in the context of that case, the plaintiff should include the various governmental agencies and components "from which defendants have sought recovery." *Id.* at 1330.

The court noted that in affirmative antitrust cases "of quasi-constitutional breadth and significance," which seek "the vindication of broad economic policy, it simply makes no sense to hold that the Department of Justice, which essentially is a law office, alone comprises the United States." *Id.* The court explicitly limited its holding to the unique set of facts before it: "The Court today holds only that on these peculiar facts, which involve massive and wide-ranging allegations, and in this peculiar action, which involves many departments and their evidence, the United States, having filed the action, cannot claim to be merely the Department of Justice." *Id.* (footnote omitted). And the Court expressly distinguished between cases filed *by* the United States, such as the antitrust suit then before it, and those filed *against* the United States, such as the FTCA case before this Court. *Id.* at 1334 n.59 ("This suit was brought not against but by the United States.").

In the other cases Plaintiff cites, the courts also permitted discovery as to the agencies whose conduct was at issue. In *Trane Co. v. Klutznick*, 87 F.R.D. 473 (W.D. Wis. 1980), the plaintiff named the President and other officials in an action alleging that portions of the Export Administration Act were unconstitutional, and the court compelled responses to interrogatories directed at the President to include information held by the Treasury Department, as information

10

from that agency was relevant to the claims at issue. *See id.* at 475. In *United States v. UBS Securities LLC*, No. 1:18-CV-6369 (RPK) (PK), 2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020), an affirmative enforcement action filed by the United States to recover civil penalties for defendants' allegedly fraudulent statements in securitizing more than $41 billion in mortgage loans, the court held that two agencies—the Department of Housing and Urban Development (HUD) and the Treasury Department—were both parties for purposes of discovery because they were the agencies that, as part of a federal task force, conducted the investigations that led the government to file suit. *Id.* at *1, *7, *14-17. Ultimately, however, the court denied UBS's motion to compel discovery from HUD and Treasury because UBS failed to explain how the requested discovery was relevant. *Id.* at *25-26. These cases highlight that courts look to the nature of the specific claims to determine whether an agency is a party for purposes of discovery. They do not show that a party may have discovery from any agency it wants when the United States is listed on the caption as a defendant in an FTCA suit.

**B. Passing mention of other agencies in the Complaint does not make those agencies parties for purposes of discovery.**

Plaintiff also argues that it is entitled to party discovery from non-USACE agencies because "[t]he Complaint alleges that the United States, *acting through several of its component federal agencies (not just the USACE) committed tortious acts*." ECF No. 67 at 11 (emphasis added). But the Complaint does no such thing.

The Complaint is predicated entirely on alleged tortious conduct by USACE. The Complaint begins by explaining that "[t]his is an action seeking damages under the [FTCA] . . . stemming from the actions and inactions of the United States of America, *by and through its executive agency USACE*." ECF No. 1 ¶ 1 (emphasis added). And it goes on to mention USACE

11

over 200 times. The allegedly tortious conduct of USACE (and only of USACE) forms the basis

of Plaintiff's claims. *See* App'x 2 (listing allegations against USACE).

By contrast, the Complaint refers to other federal agencies only in passing, four times in

its 133 paragraphs. *See* ECF No. 1 ¶¶ 28, 29, 47, 54. None of those allegations is sufficient to

support any tort claim under North Dakota law, and Plaintiff does not and could not plausibly

suggest otherwise. Consistent with Supreme Court precedent on discovery and courts' limited

jurisdiction in FTCA cases, Plaintiff cannot have discovery on claims it has not alleged from

agencies over which the Court does not have jurisdiction.[2]

## C. Plaintiff's administrative claim does not show that it is entitled to discovery from any non-USACE agencies.

Plaintiff also argues that it is entitled to seek discovery from other agencies because it

mentioned other agencies (FBI and BIA) in its administrative tort claim to USACE. ECF No. 67

at 9-10. But this does not transform Plaintiff's claims into ones based on the conduct of those

other agencies or entitle Plaintiff to discovery from them.

The FTCA requires a would-be plaintiff to "first present[] [its] claim to the appropriate

Federal agency." 28 U.S.C. § 2675(a); *see also* 28 C.F.R. § 14.2(b)(1) (providing that an

administrative claim "shall be presented to the Federal agency whose activities give rise to the

claim"). Presenting an administrative claim to the appropriate agency is not, as Plaintiff

---

[2] The Supreme Court has held that a complaint that fails to state a claim "does not unlock the doors of discovery." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This holding carries even more force "in the unique context of the FTCA," pursuant to which "*all* elements of a meritorious claim are also jurisdictional." *Brownback*, 141 S. Ct. 740, 2021 WL 726222, at *5 (emphasis added). In addition to being inappropriate subjects for discovery, any claim based on alleged "tortious acts" of non-USACE agencies would thus be subject to dismissal for both failure to state a claim and lack of subject-matter jurisdiction. *See id.* 2021 WL 726222, at *5; *see also FDIC v. Meyer*, 510 U.S. 471, 477-78 (1994) (explaining that liability under the law of the place of the tort is among the "six elements" required for an FTCA claim and must be alleged for a federal court to have jurisdiction).

contends, merely "an administrative tool to encourage settlement." ECF No. 67 at 9. Rather, as the Supreme Court has held, it is a jurisdictional prerequisite to suit. *See, e.g.*, *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming dismissal for lack or jurisdiction because an administrative-tort claim had not been filed, and holding that "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies"); *see also Lunsford v. United States*, 570 F.2d 221, 224 (8th Cir. 1977) (explaining that "[t]he Eighth Circuit has held that the administrative exhaustion requirement of 28 U.S.C. § 2675(a) is jurisdictional" and collecting cases) (citations omitted).

Plaintiff submitted a single administrative claim to USACE, identified USACE as the appropriate federal agency, and specifically (and exclusively) alleged tortious conduct by USACE. *See* ECF No. 67-1 *passim*. Plaintiff argues that its claim "*did name . . .* two agencies that were directly involved and aware of the DAPL protests." ECF No. 67 at 9. But Plaintiff did not allege any negligent or wrongful conduct by those or any other agencies beyond USACE.

In fact, Plaintiff's 34-page claim submission mentions other federal agencies only once, and then only to emphasize *USACE's* alleged awareness of illegal protest activity. In a single sentence, Plaintiff alleges that "USACE had early and ongoing access to the same intelligence reports that North Dakota law enforcement agencies were receiving from federal agencies such as the Federal Bureau of Investigation and the Bureau of Indian Affairs, appraising USACE of the extent and illegality of the protests." ECF No. 67-1 ¶ 41. Plaintiff did not claim that FBI or BIA employees acted negligently in providing these intelligence reports. *Id.* And Plaintiff does not support its conclusory assertion that this single reference put the United States "on notice of non-USACE agencies' participation in tortious conduct [by unnamed people or agencies] related to the DAPL protests." ECF No. 67 at 10.

13

In addition, even if there were a factual predicate for Plaintiff's argument—and there is not—it would have no bearing on Plaintiff's ability to seek discovery from non-USACE agencies in this case. Plaintiff is correct that, when multiple agencies may be responsible for the alleged harm, the agency to which the claim is submitted is to contact and coordinate with other affected agencies under 28 C.F.R. § 14.2(b)(2). *See* ECF No. 67 at 9. But Plaintiff does not and cannot argue that the claim it submitted to USACE actually imposed any obligation for USACE to contact and coordinate with FBI, BIA, or any other agency.

An agency's § 14.2(b)(2) obligations exist only when the claim puts the receiving agency on notice of potential torts arising out of another agency's conduct. As the Seventh Circuit reasoned in *LeGrande v. United States*, 687 F.3d 800 (7th Cir. 2012), a case involving purported negligence by the Federal Aviation Administration (FAA):

> We have examined the administrative claim filed by [Plaintiff]. It alleges six claims of negligence against the FAA; each claim pointedly alleges a breach of an FAA Job Order. It alleges no claim of negligence against the [National Weather Service (NWS)]. In the box for the entry of the 'Appropriate Federal Agency' to which the claim is directed, only the FAA is mentioned. In short, the administrative claim is clear; only the FAA's actions are alleged to have been negligent. Under these circumstances, no provision of 28 C.F.R. § 14.2 required the FAA to transfer the claim to the NWS, to notify the NWS of the claim or to determine which agency would undertake the investigation and adjudication of the claim. The very specific allegations of the claim allege negligence on behalf of the FAA and no other federal agency.

*Id.* at 813; *see also, e.g.*, *Provancial v. United States*, 454 F.2d 72, 74 & n.1 (8th Cir. 1972) (noting that "[t]here was nothing contained in the claim to alert the Department of Justice to believe that any other agency was involved" and denying request to amend complaint to add claims against U.S. Public Health Service because the administrative claim submitted to DOJ

14

"did not mention the names of nor allege any negligence against" Public Health Service officers).[3]

In short, Plaintiff exhausted its administrative remedies only with respect to claims arising out of the alleged negligence of USACE employees, and those are the only claims subject to discovery in this case.

**D. Plaintiff's arguments and the Court's ruling at the motion-to-dismiss stage foreclose discovery into any purported "tortious conduct of the United States."**

Moreover, accepting Plaintiff's argument that this case concerns the allegedly tortious conduct of non-USACE agencies would ignore the basis Plaintiff relied on to argue that the Court has jurisdiction over the claims. The United States moved to dismiss this case on the ground that the discretionary-function exception bars suit. *See* ECF No. 6. Plaintiff opposed the motion by maintaining that USACE—not any other federal agency—has non-discretionary duties under its regulations. Specifically, Plaintiff argued that USACE had no discretion: (i) "to issue any permit to the DAPL protesters for their self-evidently non-recreational use of USACE-managed land"; (ii) "to allow the DAPL protesters onto the land because they did not have a permit"; or (iii) "to ignore the violation of [USACE regulations] by DAPL protesters, or to enforce the prohibitions only in such manner as USACE in its discretion might choose." ECF No. 14 at 38-41 (emphasis omitted); *see also* ECF No. 38 at 10 ¶ 23 ("Plaintiff argues *the Corps*

---

[3] Plaintiff argues that these cases are irrelevant because neither "mention [sic] discovery." ECF No. 67 at 10. Both cases, however, prohibit the conduct Plaintiff seeks to engage in here, namely, expanding an FTCA case to include federal agencies not identified in the administrative claim as having engaged in any tortious conduct. And, to Plaintiff's point, there is no indication in either case that the plaintiffs were *permitted* to seek discovery from agencies who were not alleged to have been negligent in the administrative claim and whose conduct could not therefore give rise to liability in the FTCA cases. *Cf. McNeil*, 508 U.S. at 112 n.7 (noting that exhaustion requirement was made jurisdictional to "make it possible for the claim first to be considered by the agency whose employee's activity allegedly caused the damage" and because "[t]hat agency would have the best information concerning the activity which gave rise to the claim").

had three mandatory obligations giving rise to the claims alleged in the Complaint." (emphasis added)). Nowhere in its briefing did Plaintiff contend that this case implicates any mandatory duty of any other federal agency.

At oral argument, Plaintiff's counsel reiterated that Plaintiff's claims were specifically based on the alleged conduct of USACE in inviting and encouraging the protestors, arguing, among other things, that:

- "We would not be here today if the ***Corps of Engineers*** had not invited, enabled, and in fact encouraged dangerous and illegal conduct on federal lands . . . ." Hr'g Tr. at 49:8-20 (emphasis added).

- "***It's a 41-page Complaint***, Your Honor. It's extensive in its recitation and description of what happened. ***It's not three paragraphs*** . . . . ***And ceded throughout is the explanation of the invitation, and so forth, the Corps made***." *Id.* at 64:7-12 (emphasis added).

The Court agreed (in part), ruling that USACE's non-discretionary obligations under its regulations—and not any other agency's actions under any other authority—permit the case to proceed. *See* ECF No. 38 at 22, 24.

The Court should not now permit Plaintiff to seek discovery from other agencies on the ground that those agencies engaged in tortious conduct and thus should be treated as parties to this litigation. Plaintiff's party discovery should be directed to USACE.

## II. Plaintiff has not shown that discovery into non-USACE agencies is relevant and proportional, particularly where Plaintiff is in the process of receiving voluminous discovery from USACE.

Plaintiff's motion should also be denied because it has not shown that the non-USACE discovery it seeks is relevant and proportional to the parties' claims or defenses.

The United States is in the process of producing a substantial volume of USACE documents. The identified USACE document custodians are those who were most heavily involved in the DAPL protest response and who were responsible for the alleged conduct on

which the claims before the Court are predicated. These documents are expected to number in the tens of thousands and to comprise hundreds of thousands, if not millions, of pages.

Without reviewing a single one of these documents, Plaintiff insists that it is entitled to document discovery from thirteen individuals at eight non-USACE agencies and components, including political appointees, White House staff, the former Secretary of the Interior, and the former Attorney General of the United States. Plaintiff has not met its burden of demonstrating how these non-USACE employees have relevant knowledge of Plaintiff's claims arising out of USACE's alleged conduct.

Rule 26 limits discovery to nonprivileged matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Plaintiff's only substantive argument as to relevance is "that officials from the DOJ, BIA, DOI, and DHS were literally in North Dakota 'at the table' and participated directly in recurring meetings run by the State discussing the DAPL protest circumstances." ECF No. 67 at 12-13. But as explained above, Plaintiff has expressly disavowed any claims arising out of the government's *response* to the protests: Plaintiff represented to the Court at oral argument on the motion to dismiss that "North Dakota is not complaining about the Corps' response to the protests." ECF No. 37, at 54:24-25.

Nor does Plaintiff suggest that the identified officials with these other agencies attended or had independent knowledge of discussions about the purported USACE decisions at issue—to issue permits or otherwise allow the protests to occur on USACE-managed land. Rather, Plaintiff offers that these officials attended discussions with *state* officials about the protests *generally*.

Indeed, even if meetings with state officials were a source of relevant discovery in this case, Plaintiff also never explains why it does not have better access to the information it seeks from state officials who participated in and ran the meetings Plaintiff refers to. Nor does Plaintiff

explain why it is insufficient for the United States to produce any relevant documents from USACE individuals who were also "at the table" at those meetings, as the United States has already agreed to do.[4]

Moreover, even if there were some articulated relevance—which there is not—Plaintiff also has not shown that obtaining discovery from the thirteen non-USACE individuals is proportional to the needs of the case. Discovery in civil litigation is limited to that which is relevant "and proportional to the needs of the case," considering, among other things, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Because the only conduct for which Plaintiff can recover in this case is that of USACE employees, any relevant information in the possession of non-USACE personnel must, by definition, have been communicated to, and can be discovered from, USACE individuals. The United States has identified and agreed to produce documents from the key USACE individuals involved with the conduct at issue. Any relevant non-USACE discovery would very likely be duplicative of the discovery that the United States has already agreed to produce from USACE custodians and therefore not proportional to the needs of the case.[5]

Forcing the United States to provide discovery from non-USACE agencies would also be exceedingly burdensome, Plaintiff's unsupported assertion to the contrary notwithstanding. *See* ECF No. 67 at 13. Plaintiff's discovery requests are extremely broad. And for every additional

---

[4] Plaintiff references an Excel spreadsheet purported to be a sign-in sheet from these meetings. *See* Ex. D (Excel Spreadsheet attached to email from P. Seby dated Feb. 11, 2021). The sign-in sheet does not explain what meetings occurred or what was discussed. It also does not show the names of several of the custodians Plaintiff is seeking discovery from, including the most senior officials. By contrast, the sign-in sheet *does* include the name of multiple USACE individuals from whom the United States has already agreed to produce documents.

[5] These key USACE custodians' documents would likely also show whether any non-USACE individuals were involved with the specific USACE conduct at issue in this case, if at all.

agency that is required to produce documents, the expense of discovery and the resources and time required will increase dramatically. Each non-USACE agency from which Plaintiff seeks to compel discovery has its own computer systems, its own document management practices and software, its own servers and data storage systems, and its own agency counsel.[6] All of this would require the United States to essentially start over at the beginning of the discovery process for each additional agency.

Finally, Plaintiff argues that *it* will be burdened if it has to seek discovery from non-USACE agencies via Rule 45 subpoenas, rather than by compelling party discovery. The question under Rule 26, however, is the *defendant's* burden in responding to the discovery the plaintiff seeks to compel, not the burden the plaintiff might face if its motion to compel is unsuccessful. Moreover, as explained above—and as Plaintiff has not contested—any relevant discovery from non-USACE sources would also be discoverable from USACE, including from the individuals whose documents the United States has already agreed to produce. Plaintiff has not yet reviewed those documents, and therefore it is uncertain (and indeed unlikely) whether it will ever need to pursue additional discovery through targeted requests to any other agency.

At best, Plaintiff's request is overbroad and premature before it reviews the discovery it will receive from USACE custodians. At worst, granting Plaintiff's request would explode this case to encompass irrelevant matters for which there is no jurisdiction. In a case premised only on the allegedly tortious conduct of USACE employees to allow protests on USACE-managed

---

[6] Plaintiff appears to assert that discovery from non-USACE sources would not be burdensome because it included non-USACE agencies in its initial disclosures. *See* ECF No. 67 at 13. Plaintiff's unilateral decision to include non-USACE agencies in its initial disclosures, however, neither establishes that those agencies are sources of relevant information nor decreases the burden of forcing discovery from them.

land, compelling discovery from other agencies is neither necessary nor proportional when the United States has already committed to producing what it expects to be tens of thousands of documents from USACE.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel should be denied.

Dated: March 9, 2021

MATTHEW T. KIRSCH
Acting United States Attorney
District of Colorado

_s/ V. William Scarpato III_
Jane E. Bobet
V. William Scarpato III
Logan A. Steiner
Special Attorneys to the United States
Attorney General
United States Attorney's Office for the
District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0407
jane.bobet@usdoj.gov
victor.scarpato@usdoj.gov
logan.steiner@usdoj.gov

COUNSEL FOR DEFENDANT UNITED
STATES OF AMERICA

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to such filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

*s/ V. William Scarpato III*
V. William Scarpato III