# EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF TEXAS, | ) |
| Plaintiff, | ) |
| v. | ) |
| ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, | ) |
| Defendant, | ) |
| ERIC KENNIE, *et al.*, | ) |
| Defendant-Intervenors, | ) |
| TEXAS STATE CONFERENCE OF NAACP BRANCHES, *et al.*, | ) CASE NO. 1:12-CV-00128 (RMC-DST-RLW) Three-Judge Court |
| Defendant-Intervenors, | ) |
| TEXAS LEAGUE OF YOUNG VOTERS EDUCATION FUND, *et al.*, | ) |
| Defendant-Intervenors, | ) |
| TEXAS LEGISLATIVE BLACK CAUCUS, *et al.*, | ) |
| Defendant-Intervenors, | ) |
| VICTORIA RODRIGUEZ, *et al.*, | ) |
| Defendant-Intervenors. | ) |

## ATTORNEY GENERAL'S MEMORANDUM OPPOSING MOTION TO COMPEL

Defendant Eric H. Holder, Jr. ("Attorney General") respectfully requests that this Court deny the State of Texas's ("the State" or "Texas") motion to compel a response to discovery requests that seek records and information from five different non-party federal agencies.

I.	**Background**

The discovery requests at issue in Texas's motion to compel seek documents, databases, and other information maintained by non-party federal agencies that identify Texas residents who possess a military identification card, passport, or United States citizenship certificate with photograph; as well as Texas residents determined to have a disability by the Social Security Administration or the Department of Veterans Affairs.[1] Texas has also sought information regarding any individual in the State's voter registration database whose social security number is associated with a different name in Social Security Administration records, and any who is not a United States citizen.[2]

Despite the extremely compressed time for pre-trial discovery – based on a schedule Texas requested – Texas "did not raise its desire to seek the federal database information at the outset of discovery, during the Rule 26(f) conference between the parties, or during numerous early status conferences with the Court." Order, at 3, May 22, 2012 (Doc. 137). Rather, Texas waited until April 13, nearly a month after fact discovery began, to seek this information through its First Request for Production of Documents and First Interrogatories. Texas did not serve its Second Interrogatories, seeking additional information from non-party federal agencies, until May 9.

Collectively, these discovery requests seek databases and other information that, to the extent they exist, are in the possession of at least five different non-party federal agencies: the

---

[1] *See* State of Texas's First Req. for Prod. to Def. Eric H. Holder Jr., Req. No. 3, 5, 6, & 7 (Apr. 13, 2012) [hereinafter "Texas First RFP"];State of Texas's First Set of Interrog. to Def. Eric H. Holder Jr., Interrog. No. 10 (Apr. 13, 2012) [hereinafter "Texas First Interrog."].

[2] *See* State of Texas's Second Set of Interrog. to Def. Eric H. Holder Jr., Interrog. No. 1 & 2 (May 9, 2012) [hereinafter "Texas Second Interrog."].

2

Department of Defense ("DOD"), Department of Homeland Security ("DHS"),[3] Department of State ("State Department"), Social Security Administration ("SSA"), and Department of Veterans Affairs ("VA"). Accordingly, on April 20, the Attorney General objected to the April 13 discovery requests on the ground (among other reasons) that they sought information that was not within his possession, custody, or control. *See* Def. Eric H. Holder's Resp. & Obj. to State of Texas' First Req. for Prod. of Docs. at 5, 8-10, Apr. 21, 2012; Def. Eric H. Holder's Resp. & Obj. to State of Texas' First Set of Interrog. at 15, Apr. 20, 2012. On May 16, the Attorney General objected to Texas's May 9 discovery requests on the ground that those requests also sought information that was not within his possession, custody, or control. *See* Def. Eric H. Holder's Resp. & Obj. to State of Texas' First Second Set of Interrog. at 4-6, May 16, 2012.

Following the April 20 response to Texas's discovery requests, the Attorney General repeatedly advised Texas that although Rules 33 and 34 were not the appropriate means of seeking information from non-party agencies in this litigation, Texas was welcome to serve Rule 45 subpoenas on the non-party agencies to seek this information. And at the invitation of the Court, the Attorney General informally contacted each of the non-party agencies to determine whether responsive information existed; if so, how it could best be sought; what procedures Texas should follow for seeking it; and what the burden would be on each agency to respond. The Attorney General filed four separate advisories to advise the Court and Texas of the status of those conversations, and addressed these issues during several hearings before the Court. *See* Notice Concerning Federal Databases, Apr. 27, 2012 (Doc. 94); Notice Concerning Fed. Non-

---

[3] The Attorney General advised the Court during the May 18 status conference that DOD maintains records regarding military identification held by members of the Coast Guard, which is part of DHS. *See* Telephonic Conference Tr. 16:10-13, May 18, 2012. However, because Texas has also sought information regarding citizenship status and individuals who may possess a United States citizenship certificate, the Attorney General believes that responsive information to these requests, if it exists, would be maintained by DHS.

3

Party Databases, May 7, 2012 (Doc. 106); Notice Concerning Non-Party Fed. Databases, May 11, 2012 (Doc. 120); Notice Concerning Fed. Non-Party Databases, May 15, 2012 (Doc. 121); Telephone Conf. Tr. 17-29, Apr. 30, 2012; Status Conf. Tr. 108:8-109:3, May 3, 2012; Telephone Conf. Tr. 3:17-12:13, May 8, 2012; Telephone Conf. Tr. May 18, 2012. The Court likewise sought to facilitate this litigation by scheduling several status conferences on the topic of the federal database information. *See* Order, at 4 n.3, May 22, 2012 (Doc. 137).

Texas filed its motion to compel on May 21, more than a month after the Attorney General served his first discovery responses and objections. To date, Texas has not served Rule 45 subpoenas regarding any of the information that is the subject of this motion to compel.[4]

## II. Argument

The Attorney General's consistent position throughout discovery in this case has been that the information that Texas seeks in the discovery requests at issue is not within his possession, custody, or control. Therefore, it may not be properly obtained through Rules 33 and 34. In order to obtain discovery from federal agencies who are neither parties to this litigation nor have any enforcement or operational responsibilities under the Voting Rights Act, the State must do what all litigants must when seeking discovery from non-parties: serve subpoenas on the entities that possess the information. The law upon which Texas would rely offers no safe harbor from long established principles regarding the sovereign immunity of the federal government and Texas's obligations under Rule 45. Additionally, Texas's requests are unduly burdensome, overbroad, or fail under the relevance standard of Rule 26. The fact that Texas has

---

[4] On May 22, Texas did serve a Rule 45 subpoena seeking to depose SSA officials in connection with this litigation. Texas has not to date served any Rule 45 subpoenas regarding the interrogatories and requests for production at issue in this motion to compel.

4

tactically and repeatedly ignored these basic procedural rules, even after the Attorney General informed Texas of the proper procedures, also weighs in favor of denying the motion to compel.

> **A.** **The motion to compel should be denied because Texas seeks information that is not within the Attorney General's possession, custody, or control.**

Texas's discovery requests seek information that is within the possession not of the Attorney General, but rather of five different federal agencies that are not parties to this litigation: the Department of Defense, Department of Homeland Security, Department of State, Social Security Administration, and Department of Veterans Affairs. Texas does not dispute that the Attorney General – the only defendant Texas sued in this litigation, *see* First Am. Compl. ¶ 4, Apr. 4, 2012 (Doc. 63) – does not have possession of databases maintained by these separate agencies. Texas instead argues that its discovery requests are proper either because these five separate agencies (and, by extension, every federal agency) are in fact parties to this lawsuit also, or because the Attorney General has authority to compel the production of records from every federal agency. *See* Texas Mem. Supp. Mot. to Compel 9-10, May 21, 2012 (Doc. 103-1). The Court should reject these unfounded arguments and deny Texas's motion to compel.

**1. The Attorney General is the only federal party in this lawsuit.**

Texas first contends that although it sued only the Attorney General, the "real party in interest is the United States, not Mr. Holder." *Id.* at 9. However, the Attorney General is the only proper defendant that can be sued in any lawsuit seeking a declaratory judgment under Section 5 of the Voting Rights Act. Section 5 assigns specific responsibilities to the Attorney General, and creates no programmatic duties or any enforcement responsibilities on behalf of any other federal agencies. 42 U.S.C. § 1973c. The five federal agencies implicated by Texas's discovery requests have no role in the administration of the Voting Rights Act, and are not involved in any way with this judicial preclearance action.

5

Rule 4 of the Federal Rules of Civil Procedure governing service of process acknowledges that actions against the United States or the Attorney General are not necessarily actions against other federal agencies. Fed. R. Civ. P. 4(i)(1). Specifically, that rule provides that when initiating an action against the United States, the plaintiff must serve both the Attorney General and any affected federal agencies or officers. *Id.* Texas has not complied with Rule 4(i) in this litigation with regard to any federal actor other than the Attorney General.

The cases cited in Texas's memorandum do not support Texas's contention that the Department of Defense or the other federal agencies are automatically parties to judicial preclearance litigation under Section 5 of the Voting Rights Act. Texas cites *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), for the view that "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *See* Texas Mem. Supp. Mot. to Compel 9 (Doc. 130). But Texas does not supplement this hornbook principle with any contention that the Attorney General is acting in this litigation as an agent of any federal agency other than the Department of Justice. Nor could Texas make such a contention, in a lawsuit where Texas has not sued, alleged claims against, or sought relief from any other federal agency. Texas also cites *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963), for the position that relief "against an officer is in fact against the sovereign if the decree would operate against the latter." But there is no possible argument here that the relief Texas seeks in this litigation – judicial preclearance of S.B. 14 – would "operate against" the Department of Defense or any of the other agencies that are the subject of Texas's discovery requests. The Court should therefore reject Texas's unprecedented argument that every agency of the executive branch is a party to any lawsuit against the Attorney General.

6

The implications of a contrary conclusion would be striking. Here, Texas is insisting that no fewer than five separate federal agencies interrupt their normal agency functions to furnish within weeks federal database information on millions of United States citizens for Texas to use in prosecuting its case under Section 5 of the Voting Rights Act. None of the federal agencies implicated by Texas's demands has any connection to this dispute or is otherwise interested in the outcome of this declaratory judgment action. The simple fact remains: But for Texas's discovery request, these five federal agencies would have no involvement in this action whatsoever. Thus, in the absence of any meaningful connection to this case, these five federal agencies should not be treated as parties to this litigation or compelled through routine discovery to mine their federal databases for massive amounts of information concerning United States citizens. The Court should reject Texas's request to establish such a broad, disruptive, and unworkable rule.

**2. Principles of sovereign immunity preclude the motion to compel.**

It is well settled that "the United States, as sovereign, 'is immune from suit save as it consents to be sued, . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Hercules v. United States*, 516 U.S. 417, 422 (1996) (quoting *United States v. Testan*, 424 U.S. 392, 399 (1976), and *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Conditions on the waiver of sovereign immunity must be strictly construed in favor of immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996); *Bowen v. City of New York*, 476 U.S. 467, 479 (1986). Consistent with these principles, Section 5 of the Voting Rights Act, narrowly construed, furnishes a limited waiver of sovereign immunity for a declaratory judgment action by a covered jurisdiction seeking judicial preclearance, with the Attorney General as the only necessary statutory defendant.

The operative statutory language of Section 5 provides that before Texas may enforce S.B. 14, the State must either obtain administrative preclearance from the Attorney General, or a declaratory judgment from this Court that the new law "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of" race or color or membership in a language minority group. 42 U.S.C. § 1973c(a). Additionally, the Attorney General is expressly vested with authority to administer and enforce the Voting Rights Act. 42 U.S.C. §§ 1973c(a), j(d). Thus, while Section 5 of the Voting Rights Act contemplates the involvement of the Attorney General, it simply does not contemplate, or otherwise require, the involvement of other federal agencies or their officials.

In sum, when the conditions on the wavier on sovereign immunity in Section 5 of the Voting Rights Act are narrowly construed in light of the relevant statutory language and facts of this case, this declaratory judgment action pertains only to the Attorney General. As such, this civil action does not— and simply cannot—waive the sovereign immunity held by other federal agencies far removed from the subject matter of this litigation. This is a principled and pragmatic conclusion. It recognizes, consistent with the principles of sovereign immunity, that when Congress waives that immunity for a specific type of civil lawsuit— such as the declaratory judgment action in this case—it does not follow that any and all federal government agencies and their officials may be subjected to the Court's jurisdiction and the burdens of discovery at the whim of plaintiff's counsel. Rule 45 furnishes the only legitimate basis upon which this Court may exercise jurisdiction over the non-party federal agencies in a manner consistent with long-standing principles of sovereign immunity.

**3. The Attorney General does not "control" other federal agencies' records.**

8

Texas also argues that even if these five federal agencies are non-parties, the Attorney General has legal authority to obtain documents and information from federal executive agencies, *see* Texas Mem. Supp. Mot. to Compel 10, and presumably that these documents are therefore within the Attorney General's "control" pursuant to Fed. R. Civ. P. 34(a)(1).

There is no basis for Texas's contention that the Attorney General can direct the Secretary of Defense, the Secretary of State, or other duly-appointed and Senate-confirmed Cabinet officials to produce documents to him in response to discovery requests in litigation to which those agencies neither are nor could be parties. *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992) ("We need not linger over the dissent's facially impracticable suggestion . . . that one agency of the Government can acquire the power to direct other agencies by simply claiming that power in its own regulations and in litigation to which the other agencies are not parties."). Rather, a litigant seeking information from a non-party federal agency must subpoena that federal agency and comply with agency regulations (known as *Touhy* regulations) that govern an agency's participation in litigation to which it is not a named party.[5] *See, e.g.*, *Edwards v. U.S. Dep't of Justice*, 43 F.3d 312, 316-17 (7th Cir. 1994); *Davis v. Braswell Motor Freight Lines, Inc.*, 363 F.2d 600, 603 (5th Cir. 1966). Absent a proper subpoena and compliance with agency regulations, neither the Attorney General nor this Court has the authority to compel a non-party federal agency to produce information to Texas.

Texas cites *United States v. AT&T*, 461 F. Supp. 1314 (D.D.C. 1978), as authority to the contrary, but the *AT&T* litigation was *sui generis* and did not establish any principles that should apply to this case. The court in *AT&T* went to great lengths to explain that the posture of that

---

[5] As noted in Part II.B below, the Attorney General has for more than a month encouraged Texas to do just that. *See* Letter from Carlotta P. Wells, U.S. Dep't of Justice, to Patrick K. Sweeten & Matthew H. Frederick, Texas Attorney General's Office, May 23, 2012 (Ex. 1).

9

case was singular and unique, and involved a circumstance in which the United States – as plaintiff – filed claims implicating approximately forty different federal agencies. *See id.* at 1330, 1334 ("The Court today holds only that on these peculiar facts, which involve massive and wide-ranging allegations, and in this peculiar action, which involves many departments and their evidence, the United States, having filed the action, cannot claim to be merely the Department of Justice." (footnote omitted)).  The Attorney General is the statutory defendant in this litigation, *see* 42 U.S.C. § 1973c, not the plaintiff; and this case presents nothing like the "peculiar" facts present in *AT&T*.

Texas's reliance on 28 U.S.C. § 516 is equally misplaced.  That statute does not confer on the Attorney General the kind of sweeping authority that Texas suggests, but is instead merely a federal housekeeping provision that clarifies the basic understanding that, generally speaking, it is the Attorney General who is charged with the responsibility of furnishing legal representation to federal agencies in matters of litigation.  *See United States v. Mattson*, 600 F.2d 1295, 1297 n.1 (9th Cir. 1979).  In *Mattson*, the court held that, without some other independent source of statutory authority, 28 U.S.C. § 516 did not empower the Attorney General to bring an action against the State of Montana to remedy unsafe conditions in Montana's state-run mental health facilities.  *Id*.  Similarly, in this case, in which the Attorney General lacks any independent statutory authority over the non-party federal agencies, the Attorney General is simply without the proper authority to order those federal agencies to produce information to Texas.  Put simply, the legal representational responsibilities that are entrusted to the Attorney General under 28 U.S.C. § 516 do not – without more – give the Attorney General the power to issue orders to other federal agencies or their officials, and Texas has cited no case law or other authority to support its remarkably broad reading of this statute.

Because the Attorney General is the only proper federal defendant in this action and does not have custody or control of information that resides with non-party agencies, the Court should deny Texas's motion to compel.

> **B.  The motion to compel should be denied because Texas has repeatedly ignored the invitation of the Court and the Attorney General to seek this information through the more appropriate means of a Rule 45 subpoena.**

In addition, the Court should deny Texas's motion to compel for the separate reason that Texas has steadfastly refused to seek information from the non-party agencies through Rule 45 subpoenas. Texas has refused to take this step despite ample notice from the Attorney General of this requirement, and despite extraordinary and unusual assistance from both the Attorney General and this Court in facilitating Texas's efforts to obtain this information.

The Attorney General and the Court have repeatedly invited Texas to serve subpoenas if it is interested in seeking information from the non-party agencies. Telephone Conf. Tr. 12:4-11, Apr. 30, 2012; Telephone Conf. Tr. 5:12-22, May 8, 2012; Telephone Conference Tr. 44:3-45:3, May 18, 2012; Order, at 4 n.3, May 22, 2012 (Doc. 137) ("The Court has taken it upon itself to attempt to facilitate the potential discovery of the federal database information and has done everything it can at this point to assist in this regard."). The Attorney General has convened conference calls for Texas with subject-matter and IT experts from each agency and counsel from the Civil Division of the Department of Justice; made those individuals available at the Court's request for the May 18 status conference; advised Texas that the Civil Division of the Department of Justice was authorized to accept service of subpoenas for this purpose; and even directed Texas to the relevant Privacy Act requirements and specific *Touhy* regulations for each of the affected non-party agencies. However, despite these considerable and unusual efforts, and "despite being put on notice as of at least April 21 of the position of the Attorney General that this information would need to be sought pursuant to a third-party subpoena, Texas has

11

inexplicably failed to serve any such subpoena to commence the process of gathering the data." Order, at 4, May 22, 2012 (Doc. 137).

Where a party has alternative and more appropriate avenues for obtaining information in litigation that it chooses to ignore, a motion to compel should not be granted. *See* 7 Moore's Federal Practice § 37.22[2][d] (3d ed. 1999 & Supp. 2012); *see generally* Fed. R. Civ. P. 26(b)(2)(C). The Court should therefore reject Texas's invitation to misapply Rules 33 and 34 to cure Texas's inexplicable failure to pursue the appropriate avenues for seeking databases and other information from the non-party agencies.

### C. The motion to compel should be denied because Texas's discovery requests are unduly burdensome.

As explained in Part II.A above, Texas's motion to compel should be denied on the sole grounds that the Attorney General does not have custody or control of any other agency's records, and no other agency is a party to this litigation. If the Court nonetheless disagrees, Texas's motion to compel should still be denied for several additional reasons. First, given Texas's delay in seeking this information, there is no practical way for it to be produced before the close of discovery. In addition, several of Texas's requests are overbroad or irrelevant to this litigation, and compelling a response would therefore be unduly burdensome.

#### 1. A response is not practical before the close of discovery.

First, through Texas's own litigation decisions – including its failure to file a motion to compel for more than a month after receiving the Attorney General's objections to its April 13 discovery requests[6] – there is now no practical way that the non-party federal databases and other information could be produced in time to be analyzed by expert witnesses or presented at

---

[6] *See* May 18, 2012 Tr. at 42: 7-11 ("JUDGE WILKINS: Why haven't you filed a motion to compel, sir, if that's your position? That's what you do in litigation. If you get an objection that you think is an improper objection, you file a motion to compel.").

12

trial. As the Court noted during the May 18 status conference, most of the non-party agencies have advised Texas that it would take at least four weeks to identify and produce responsive information. Telephonic Conf. Tr. 19:2-7, 22:18-24:5, 30:7-13, 41:7-9, May 18, 2012. This means that even if ordered to respond today, the non-party agencies would be unable to produce information before late June – after the deadline for expert disclosures, after the close of fact and expert discovery, after the deadline for Texas to file proposed findings of fact, and less than two weeks before the start of trial.[7]

Therefore, absent a continuance of the trial date, it is unlikely in the extreme that information from non-party federal databases will be available in time to be usable in this litigation, as this Court has already recognized. *See* Order, at 3-4, May 22, 2012 (Doc. 137); Telephonic Conf. Tr. 51:20, May 18, 2012. Despite this reality, Texas has expressly declined to seek a continuance of the trial. *See* Order, at 4, May 22, 2012 (Doc. 137). In these circumstances, it would be unreasonable and burdensome to compel five different federal agencies to expend resources identifying and producing data that are unlikely to be used in this litigation. The Court should deny Texas's motion to compel for this reason.

### 2. Texas's requests for disability-related information are overbroad.

In addition, the Court should deny Texas's motion to compel a response to Requests 6 and 7 of Texas's First Request for Production because those requests are overbroad and seek information that has no possible relevance to this litigation. Requests 6 and 7 seek information identifying all Texas residents determined to have a disability by the SSA or VA. But under Section 1 of S.B. 14, a Texas voter is only eligible to apply for a disability exemption to the

---

[7] And even this estimate assumes that there are no data or other issues with the production of information from the non-party agencies. As the Court is aware, it took Texas nearly 7 weeks to produce accurate and usable information from state databases in this litigation.

13

photographic identification requirement of the law if the voter can *both* present written documentation of a qualifying disability from SSA or VA (S.B. 14 § 1(i)(1)), *and* also completes a statement that the voter does not have any of the allowable forms of photographic identification (S.B. 14 § 1(i)(2)). Texas's request that SSA and VA produce a list of every Texas resident with a qualifying disability is therefore both overbroad and irrelevant, because disability status is only applicable to S.B. 14's disability exemption if the voter also lacks all allowable identification documents.[8] Compelling a response to Requests 6 and 7 would be unduly burdensome in that it would require the production of millions of records regarding individuals who are not qualified to apply for a disability exemption, and Texas's motion to compel a response to these requests should be denied.

### 3. There is no way to identify all passport-holders who reside in Texas.

The Court should also deny Texas's motion to compel a response to Request 4 of Texas's First Requests for Production, which seeks "databases that identify Texas residents who possess a United States passport or passport card." Because the State Department's databases contain electronic information on the mailing address listed by a passport applicants, which need not be the applicant's residence address; and because there is no way of knowing whether permanent address information is up-to-date in any event (because passports issued to anyone older than 16 are valid for ten years), there is in fact no database within the State Department that would allow it to identify with any accuracy all Texas residents who possess a passport.[9] It is therefore not

---

[8] The Attorney General advised Texas of this overbreadth nearly three weeks ago on May 7, *see* Notice Concerning Federal Non-Party Databases at 3, May 7, 2012 (Doc. 106), but Texas has elected not to withdraw Requests 6 and 7 or replace them with tailored discovery requests seeking information actually relevant to this litigation.

[9] Again, the Attorney General first advised Texas of this deficiency in Texas's discovery requests nearly a month ago on April 26, but Texas has chosen neither to withdraw Request 4 nor to replace it with any discovery requests aimed at obtaining passport-related information that the State Department may in fact

14

possible to respond to Request 4 as written, and the Court should deny Texas's motion to compel a response to this request.

### III. Conclusion

Texas's discovery requests seek information from five different federal agencies that are not parties to this litigation. Despite being advised more than a month ago that the only proper method for attempting to access this information is through Rule 45 subpoenas, and despite the extraordinary efforts of both the Court and the Attorney General to date to facilitate that process, Texas has instead insisted on seeking this information through the inapplicable means of Rule 33 interrogatories and Rule 34 document requests. The Court and the Attorney General have no further obligation to cure Texas's discovery errors or to remedy the consequences of Texas's strategic litigation decisions. To the contrary, doing so at this point would be profoundly inequitable to the non-party federal agencies.

Because Texas's motion to compel amounts to little more than an effort to make an end run around the Rule 45 process, the motion should be denied in its entirely. Without Rule 45 subpoenas, neither this Court nor the Attorney General has the authority to compel the Department of Defense, Department of Homeland Security, State Department, Social Security Administration, or Department of Veterans Affairs to produce information to Texas in this declaratory judgment action under the Voting Rights Act.

For the reasons set out in this memorandum, the Attorney General respectfully requests that this Court deny Texas's motion to compel. The Court should instead issue a protective order, as authorized by Fed. R. Civ. P. 37(a)(5)(B) and 26(c)(1), directing that no response be made to Requests 3, 4, 6, and 7 in Texas's First Request for Production of Documents;

---

possess. *See* Notice Concerning Federal Databases at 4, Apr. 26, 2012 (Doc. 94); Notice Concerning Federal Non-Party Databases at 3, May 7, 2012 (Doc. 106).

15

Interrogatory 10 in Texas's First Interrogatories; and Interrogatories 1 and 2 in Texas's Second Interrogatories.

Date: May 24, 2012

Respectfully submitted,

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*/s/ Elizabeth S. Westfall*
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL
BRUCE I. GEAR
JENNIFER L. MARANZANO
DANIEL J. FREEMAN
Attorneys
Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

16

# **CERTIFICATE OF SERVICE**

        I hereby certify that on May 24, 2012, I served a true and correct copy of the foregoing via the Court's ECF system on the following counsel of record:

Jonathan Franklin Mitchell
Adam W. Aston
Matthew Hamilton Frederick
Patrick Kinney Sweeten
Office of the Attorney General of Texas
jonathan.mitchell@oag.state.tx.us
adam.aston@oag.state.tx.us
matthew.frederick@oag.state.tx.us
Patrick.sweeten@texasattorneygeneral.gov

Adam K. Mortara
John M. Hughes
Bartlit Beck Herman Palenchar & Scott LLP
adam.mortara@bartlit-beck.com
john.hughes@bartlit-beck.com

*Counsel for Plaintiff*

John Tanner
john.k.tanner@gmail.com

Nancy G. Abudu
M. Laughlin McDonald
Katie O'Connor
Arthur B. Spitzer
American Civil Liberties Union
nabudu@aclu.org
lmcdonald@aclu.org
koconnor@aclu.org
artspitzer@gmail.com

*Counsel Texas Legislative Black Caucus Intervenors*

Debo P. Adegbile
Leah C. Aden
Elise C. Boddie
Ryan Haygood
Dale E. Ho
Natasha Korgaonkar
NAACP Legal Defense and Education Fund
dadegbile@naacpldf.org
laden@naacpldf.org
eboddie@naacpldf.org
rhaygood@naacpldf.org
dho@naacpldf.org
nkorgaonkar@naacpldf.org

Michael Birney de Leeuw
Douglas H. Flaum
Adam M. Harris
Fried, Frank, Harris, Shriver & Jacobson
douglas.flaum@friedfrank.com
adam.harris@friedfrank.com
michael.deleeuw@friedfrank.com

*Counsel for Texas League of Young Voters Intervenors*

Jon M. Greenbaum
Mark A. Posner
Lawyers' Committee for Civil Rights
mposner@lawyerscommittee.org
jgreenbaum@lawyerscommittee.org

Ezra David Rosenberg
Michelle Hart Yeary
Dechert LLP
ezra.rosenberg@dechert.com
michelle.yeary@dechert.com

Robert Stephen Notzon
Robert@notzonlaw.com

Gary L. Bledsoe
Law Office of Gary L. Bledsoe and
 Associates
garybledsoe@sbcglobal.net

Myrna Perez
Wendy Robin Weiser
Ian Arthur Vandewalker
The Brennan Center for Justice
myrna.perez@nyu.edu
wendy.weiser@nyu.edu
ian.vandewalker@nyu.edu

*Counsel for NAACP Intervenors*

Nina Perales
Amy Pederson
Mexican American Legal Defense &
 Educational Fund, Inc.
nperales@maldef.org
apederson@maldef.org

*Counsel for Rodriguez Intervenors*

J. Gerald Hebert
hebert@voterlaw.com

Chad W. Dunn
Brazil & Dunn
chad@brazilanddunn.com

*Counsel for Kennie Intervenors*

*s/ Daniel J. Freeman*
DANIEL J. FREEMAN
Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530