**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **OUTMEMPHIS,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**BILL LEE, in his official capacity as Governor of Tennessee, and JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter of Tennessee,**<br><br>    **Defendants** | **Case Nos. 2:23-cv-2670, 2:24-cv-2101**<br><br>**CHIEF JUDGE LIPMAN** |
| **UNITED STATES OF AMERICA,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**STATE OF TENNESSEE, and TENNESSEE BUREAU OF INVESTIGATION,**<br><br>    **Defendants** | |

---

### UNITED STATES' REPLY IN SUPPORT OF ITS MOTION TO COMPEL

The State of Tennessee, represented by Tennessee's Attorney General, is resisting discovery requests as to certain state agencies, asserting that the State lacks "control" over state agencies' documents.  But Tennessee law grants authority to the Attorney General when litigating on behalf of the State and its interests, such that the State has control here.  *See* ECF No. 73-1 at 6-8.  The United States respectfully requests that this Court compel Tennessee to

1

produce these documents.[1]

## ARGUMENT

The United States has met its burden of establishing the documents sought are within the State' control, a showing which the State has failed to meaningfully place at issue.

### I.      The United States has Established Control by the State.

The United States met its burden of establishing that the State has control over the requested documents, contrary to the State's assertions.  A party may be deemed to have control where it has "the legal right to obtain the documents on demand," *In re Bankers Tr. Co.*, 61 F.3d 465, 469 (6th Cir. 1995), and the scope of discovery under the Federal Rules of Civil Procedure "and falls "within the broad discretion of the trial court," *Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  The inquiry for control is fact-specific and, where government entities are concerned, requires examining a state's constitutional or statutory scheme.  *See, e.g.*, *New York ex rel. Boardman v. Nat'l R.R. Passenger Corp.*, 233 F.R.D. 259, 263 (N.D.N.Y 2006); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, No. 22-md-03047, 2024 WL 4125618, at *6 (N.D. Cal. Sept. 6, 2024).[2]  Determinations of control must be "firmly placed in reality," and a party need not show "'unfettered access' to all documents under all circumstances."  *In re Soc. Media*, 2024 WL 4125618, at *9, *18.

---

[1] The United States' second set of discovery requests included a request concerning documents of the Tennessee General Assembly, bringing the total number of state entities implicated by the United States' discovery request to four, not "myriad entities and officials."  ECF No. 75 at 3-4. To the extent the State has concerns about scope or burden of searches, the United States remains amenable to discussing reasonable limits on searches *within* those entities' documents.

[2] Courts should consider state constitutions and laws to determine control for purposes of Rule 34.  However, "comity-based arguments do not require a finding of a lack of control as a matter of law" and are "not sufficient to bar a party seeking discovery in a federal court under federal law."  *In re Soc. Media*, 2024 WL 4125618, at *8.  The State's comity-based concerns are alleviated by the control inquiry grounded in the State's laws, the basis of the United States' motion.

As set forth in the United States' Motion, the State has control over its state agencies' documents. Tennessee's Attorney General represents the State of Tennessee and its interests in this litigation. Tennessee law assigns to the Attorney General the duty of representation as to the "trial and direction of all civil litigated matters" in which the state or its agencies "may be interested." Tenn. Code Ann. § 8-6-109(b)(1). The Attorney General must "direct and supervise all . . . litigation necessary to the administration of the duties" of state entities, including departments and agencies, and when Tennessee's agencies require legal services, such services must be "rendered by, or under the direction of," the State's Attorney General. *Bd. of Educ. of Shelby Cnty. v. Memphis City Bd. of Educ.*, No. 2:11-cv-02101-SHM-cgc, 2012 WL 6003540, at *3 (W.D. Tenn. Nov. 30, 2012), *supplemented* 2012 WL 6607288 (Dec. 18, 2012) (quoting Tenn. Code Ann. §§ 8-6-301(a)-(b)).[3] The duty to render or direct all legal services for the State and its agencies places the agencies' documents within the State's "control" for discovery, especially when the Attorney General serves as counsel. *See, e.g.*, *In re Soc. Media*, 2024 WL 4125618, at *16 ("When a state agency is mandated to use the state attorney general as its exclusive legal counsel, this mandate carries with it an indication that the attorney general has legal control over the agency's documents."). Thus, the provisions of state law and legal authorities cited by the United States in its Motion establish control.[4]

---

[3] While Tennessee agencies may employ general counsel for certain functions, Tennessee's Attorney General must either render or direct any legal services in litigation involving the agencies, Tenn. Code Ann. § 8-6-301(a)-(b), so all litigation matters, such as coordinating discovery or responding to subpoenas, are the responsibility of the Attorney General. *Cf. In re Soc. Media*, 2024 WL 4125618, at *16 ("Here, the recognition that a state Attorney General, presumptively counsel for its state agencies, has legal duties to supervise the collection of (and possibly directly obtain) documents from those agencies for discovery leads logically to the conclusion that the state Attorneys General have the legal right to access those documents.").

[4] While the Supreme Court has held that Rule 34 cannot be used to compel documents in the possession of a party's counsel, *see Hickman v. Taylor*, 329 U.S. 495, 504 (1947), this case does not speak to whether the State has control of agency documents by virtue of common counsel.

The Court's prior decision in *Memphis City* is correct.  There, a third-party plaintiff moved to compel documents from non-parties, the Tennessee General Assembly and the Governor's Office, in a suit against Tennessee's Attorney General, who was both party and counsel.  The movant set forth the state law basis as to why the documents were within the control of the Attorney General for purposes of Rule 34,[5] and the State failed to respond to the motion, *Memphis City*, 2012 WL 6003540, at *1.  The Court then relied on the proffered Tennessee law to conclude that the documents were within the Attorney General's control under Rule 34.  *Id.* at *1, *3.  The Court did not, as the State suggests, inappropriately place an affirmative burden on the Attorney General to cite a legal basis for lack of control.  Rather, the Court noted that because the Attorney General did not respond, the State had not introduced "any explicit provision" of law, or any information in the record, to contest that it had the legal right to obtain responsive documents.  *Id.*, 2012 WL 6607288, at *1, and 2012 WL 6003540, at *2.[6]  Thus, the decision in *Memphis City* rests on sound legal footing.

## II.    The State has Failed to Defeat this Showing of Control.

The United States has carried its burden of establishing that the requested documents are within the State's control, and the State has failed to introduce any authority to the contrary.

---

Courts regularly conclude that "a legal services provider, particularly a state Attorney General, representing both a party and a third party (particularly a state agency)" has control of state agencies' documents.  *In re Soc. Media*, 2024 WL 4125618, at *18-19 (collecting cases); *see also Washington v. GEO Grp., Inc.*, No. 3:17-cv-05806-RJB, 2018 WL 9457998, at *3 (W.D. Wash. Oct. 2, 2018) (noting that, because the Attorney General's Office "is the law firm to the State of Washington," the office "should respond to and produce discovery on behalf of the State . . . including its agencies").

[5] Memo. at 7-10, *Memphis City*, No. 11-cv-2101, (W.D. Tenn. Nov. 7, 2012), ECF No. 442-1 (attached as Ex. A).

[6] The State's suggestion that the United States should have named the specific agencies as parties has no bearing on whether the State, represented by its Attorney General, has control over the agencies' documents.  *Cf. In re Soc. Media*, 2024 WL 4125618, at *12 (explaining that "a third party's status as a third party to the case is no basis on which to find a lack of control").

4

Thus, this Court should compel production. Courts considering discovery disputes implicating state agencies' documents regularly consider whether a state resisting discovery has failed to introduce authorities contradicting the authorities establishing control. *See, e.g.*, *In re Generic Pharms. Pricing Antitrust Litig.*, 699 F. Supp. 3d 352, 357-61 (E.D. Pa. 2023) (rejecting state attorneys general's arguments where states failed to identify specific provisions barring them from obtaining documents). For example, a court recently compelled production from non-party state agencies over the objections of 28 states, in part because of a lack of any "statutory, legal, or administrative rule cited" prohibiting the state attorneys general from accessing the documents. *In re Soc. Media*, 2024 WL 4125618, at *27, *33-35, *38, *45, *49-51, *54-56, *59, *61, *64-66, *70, *75, *79, *82-83, *87, *92, *95, *98, *103, *111-12, *115. The State has failed to present any authorities prohibiting the Attorney General from accessing the documents sought, and thus failed to dispute the United States' showing of control.[7]

### III.  The United States Should Not Have Been Required to Serve Subpoenas.

As indicated in its Motion, *see* ECF No. 73-1 at 4 n.3, to protect its interests, the United States served Rule 45 subpoenas to state agencies likely to have responsive documents. That the United States has received some responses to these requests does not alter the fact that the United States should not have had to resort to subpoena practice at all, as it had already properly made the requests under Rule 34. While the State may questionably claim it "more onerous" to comply with discovery under Rule 34, that "does not mean that it is not required under the

---

[7] Defendants' cherry-picked language about sovereignty from other contexts have limited value because control under Rule 34 is highly fact specific. *See, e.g.*, ECF No. 75 at 6-7 (citing *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998), concerning *Brady* obligations; *SEC v. Biopure Corp.*, No. 05-00506, 2006 WL 2789002, at *4 (D.D.C. Jan. 20, 2006), regarding whether the FDA was a "person" under Rule 45; and *People ex rel. Lockyer v. Superior Court*, 19 Cal. Rptr. 3d 324, 337 (Cal. Ct. App. 2004), where a California *state* court determined *California*'s control of agencies' documents). And cases concerning the proper scope of discovery as to the United States are not determinative, as they do not consider Tennessee law.

Federal Rules of Civil Procedure." *Memphis City*, 2012 WL 6607288, at *1 (footnote omitted). That counsel for the State would feel burdened in serving as a middleman does not negate that the discovery is proper under Rule 34. *In re Soc. Media*, 2024 WL 4125618, at *23 (explaining that it "elevates form over substance" to require service of Rule 45 subpoenas "on a multitude of state agencies" where same counsel is obligated to represent agencies). "As counsel for a party subject to discovery, a state Attorney General has the legal authority and duty to take action," including serving as middleman. *Id.* at *14.[8]

## CONCLUSION

The United States has established that the State has control of the documents sought and the State has failed to defeat that showing of control. For the foregoing reasons, the United States respectfully requests that the Court grant its Motion to Compel (ECF No. 73).

---

[8] Counsel's suggestion that it cannot cooperate with client agencies to authenticate documents runs counter to their legal duties to "work cooperatively to improve the administration of civil justice." *See* Fed. R. Civ. P. 1 advisory committee's note to 2015 amendment.

Dated: October 2, 2024

REBECCA B. BOND
Chief

*/s/ Ali N. Szemanski*
KEVIN KIJEWSKI
Deputy Chief
STEPHANIE M. BERGER
NY Bar #5201439
ALI N. SZEMANSKI
PA Bar #327769
ANNA G. BOBROW
DC Bar #1743249
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street NE
Washington, D.C. 20002
202-307-0663
Stephanie.Berger@usdoj.gov
Ali.Szemanski@usdoj.gov
Anna.Bobrow@usdoj.gov

*Counsel for United States*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing was filed and served via the

Court's electronic filing system on this the 2nd day of October 2024, upon:

Cody N. Brandon
Managing Attorney
Assistant Attorney General

David M. Rudolph
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37202
Off. (615) 532-2552
Fax (615) 532-4892

Cody.Brandon@ag.tn.gov
David.Rudolph@ag.tn.gov
*Counsel for Defendants*

Alexis Agathocleous
Alexis Alvarez
Jon W. Davidson
Rachel Meeropol
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
AAgathocleous@aclu.org
AlexisA@aclu.org
JonDavidson@aclu.org
RMeeropol@aclu.org

Stella Yarbrough
Lucas Cameron-Vaughn
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.org
Lucas@aclu-tn.org

Lynly S. Egyes
Milo Inglehart
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org
*Counsel for Plaintiff OUTMemphis*

*/s/ Ali N. Szemanski*
Ali N. Szemanski

Ex. A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| THE BOARD OF EDUCATION OF SHELBY COUNTY, TENNESSEE, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| v. | ) No. 2:11-cv-02101-SHM-cgc |
| | ) |
| THE MEMPHIS CITY BOARD OF EDUCATION; *et al.*, | ) |
| | ) |
| Defendants. | ) |

| | |
|---|---|
| THE BOARD OF COUNTY COMMISSIONERS OF SHELBY COUNTY, | ) |
| | ) |
| | ) |
| Third Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ROBERT E. COOPER, JR., in his official capacity as Attorney General of the State of Tennessee, *et al.*, | ) |
| | ) |
| Third Party Defendants. | ) |

**COUNTY COMMISSION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION FROM STATE DEFENDANTS**

COMES NOW Third-Party Plaintiff the Board of County Commissioners of Shelby County, Tennessee (hereinafter referred to as the "County Commission"), by and through counsel and pursuant to Federal Rule of Civil Procedure 37, and respectfully files this Memorandum in Support of its Motion to Compel Production from the Third-Party State Defendants, Robert E. Cooper, Jr., Attorney General for the State of Tennessee, Tre Hargett,

Secretary of State for the State of Tennessee, Mark Goins, Coordinator of Elections for the Tennessee Department of State, The Tennessee Department of State Division of Elections, the Tennessee Department of Education, and Kevin Huffman, Commissioner of the Tennessee Department of Education (hereinafter the "State Defendants") to produce all documents in response to the County Commission's Second Set of Requests for Production of Documents and Things, which was served on the State Defendants on September 21, 2012.  In support of this Motion, the County Commission states as follows:

## INTRODUCTION AND FACTUAL BACKGROUND

On or about September 21, 2012, the County Commission timely served the State Defendants with its Second Set of Requests for Production of Documents and Things in this matter.  The County Commission's Second Set of Requests for Production and Things was limited to only one request:

> Produce any and all documents or communications received by the Tennessee General Assembly, or any of its legislators in either the House or the Senate, or any representatives or agents thereof, or by the Governor's Office, its Staff, or any representatives or agents thereof, in any format, including electronic mail, from any citizen constituent, resident or anyone else, concerning or related to the consolidation of the Memphis City School system with the Shelby County School system, the creation of municipal or special school districts in Shelby County and any legislation, bill, ordinance or resolution related thereto, including but not limited to the Schools Acts.

As the Court is aware, the issues in this phase of the case relate to whether that Chapter 1(b)(3), Chapter 905, and Chapter 970 of the Public Acts of the 107th Tennessee General Assembly (collectively the "Municipal School Acts"), and the Municipal Ordinances enacted pursuant to the Municipal School Acts (collectively the "Municipal Ordinances"), violate the Fourteenth Amendment to the United States Constitution and the Class Legislation Clause of the Tennessee Constitution, and are in conflict with 42 U.S.C. § 1983.

2

The County Commission has alleged that, because of the racial demographics of Shelby County, any application of the Municipal School Acts and Municipal Ordinances within Shelby County will disproportionality and unconstitutionally impact African-Americans residing therein, (*See e.g.,* DE 430-1 at ¶ 117), and will result in more racially segregated schools in Shelby County, in violation of both the Fourteenth Amendment's Equal Protection guarantees and 42 U.S.C. § 1983. (*See e.g.,* DE 430-1 at ¶ 112) (collectively, "Equal Protection Claims"). Moreover, the County Commission has alleged the Municipal School Acts and the Municipal Ordinances, and the municipal school districts created under their authority, will have a statistically disparate impact on the racial makeup of the schools located in Shelby County, creating racially homogenous schools in Shelby County. (DE 430-1 at ¶¶ 119, 121-124).

Additionally, the County Commission has alleged that passage of the Municipal School Acts and the Municipal Ordinances was motivated, at least in part, by an intent to achieve such a disparate racial impact. (*See, e.g.,* DE 430-1 at ¶¶ 116, 133, 145, 155). Ultimately, therefore, the Municipal School Acts and Municipal Ordinances were intended to and, if not struck down, will result in (1) the re-segregation of the schools in Shelby County, (2) the children of Shelby County being deprived of the right to be educated in a racially integrated school system, and (3) the unconstitutionally disparate treatment of similarly situated individuals within Shelby County being. (DE 430-1 at ¶¶ 125-127, 132, 159). Therefore, any application of the Municipal School Acts or the Municipal Ordinances would result in impermissible and unconstitutional discrimination in Shelby County.

In considering allegations of equal protection violations, the Sixth Circuit has stated:

> Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.' *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1979). Evidentiary sources might include the disproportionate adverse impact on one race, the 'historical background of the decision,' the 'specific sequence of events leading up to the challenged decision,' departures from procedural or substantive norms, legislative or administrative history, and <u>contemporary statements by decisionmakers</u>. *Id.* at 266-68.

*Paskvan v. City of Cleveland Civil Service Com'n*, 70 F.3d 1272 (6th Cir. 1995) (emphasis added). Additionally, it is well-settled that:

> [T]o establish the requisite intent, a plaintiff need not show that a discriminatory purpose was the sole motivation of the defendant's conduct. Rather, the discriminatory purpose need only be <u>a motivating factor</u>.

*United States v. City of Birmingham, Michigan*, 538 F.Supp. 819, 827 (E.D. Mich. 1982), aff'd 727 F.2d 560 (6th Cir. 1984) (citing *Village of Arlington Heights v. Metropolitan Housing Development Authority*, 429 U.S. 252, 265-66 (1977)) (emphasis added). In conducting this analyses, as a general rule, "absent arbitrariness or irrationality," "courts are loathe to review the merits" of a governmental decision-making body. *Id.* at 827-28. However, "<u>racial discrimination is not just another competing consideration</u>," *Id.* at 828 (emphasis added), therefore, when there is proof that a discriminatory purpose has been a motivating factor in a decision, such judicial deference is no longer justified. *Id.* (citing *Arlington Heights*, 429 U.S. at 265-266). As a result, courts will consider evidence that a decision-making body took certain actions knowing it would have a discriminatory effect. *Id.* Evidence of such knowledge, when considered with other relevant evidence, may well establish that the decision-making body

intended to cause that effect. *Id.* (citing *Columbus Board of Education v. Penick*, 443 U.S. 449, 464-65 (1979); *Dayton Board of Education v. Brinkman*, 443 U.S. 526, 536 n.9 (1970).

Moreover, to prove its Equal Protection claims, the Shelby County Commission is not required to prove that the Tennessee General Assembly "<u>itself</u> intended to discriminate on the basis of race in order to establish that the [State] acted with a racially discriminatory intent. *City of Birmingham*, 538 F. Supp. at 828 (emphasis added). Rather, courts have imputed private biases to public officials in various instances. For instance, where it was shown only that "the decision making body acted for the sole purpose of effectuating the desires of private citizens, <u>that racial considerations were a motiving factor behind those desires</u>, and that members of the decision-making body were aware of the motivations of the private citizen." *Id.* (citing *United States v. City of Blackjack, Missouri*, 508 F.2d 1179, 1185, n. 3 (8th Cir. 1974) (emphasis added)); *see also United States v. Birmingham*, 727 F.2d 560, 564 (6th Cir. 1984) (conducting a *general inquiry* and recognizing that consideration and imputation of the motivations expressed by constituents was proper because "[m]unicipal officials acting in their official capacities seldom, if ever, announce on the record that they are pursuing a particular course of action because of their desire to discriminate against a racial minority. Even individuals acting from invidious motivations realize the unattractiveness of their prejudices when faced with their perpetuation in the public record. It is only in private conversation, with individuals assumed to share their bigotry, that open statements of discrimination are made, so it is rare that these statements can be captured for purposes of proving racial discrimination in cases such as this"). "Any other rule of law would permit a legislative body to place its official stamp of approval on private racial discrimination. *Id; see also United States v. Yonkers Board of Education*, 837 F.2d 1181, 1224 (2nd Cir. 1987), *cert denied*, 486 U.S. 1055 (1988) (A governmental body may not

5

escape liability under the Equal Protection Clause merely because its discriminatory action was undertaken in response to the desires of a majority of its citizens.

In its Second Request for Production of Documents and Things the County Commission has sought documents and communications in possession of the Tennessee General Assembly, and specifically its legislators in the House and Senate (or their agents), and documents and communications in possession of the Governor's Office, which relate to the consolidation of the Memphis City School system with the Shelby County School system, the creation of municipal or special school districts in Shelby County and any legislation, bill, ordinance or resolution related thereto, including but not limited to the Municipal Schools Acts. Such documents and communications would include correspondence from constituents to their legislators discussing the Municipal School Acts. Moreover, the information and documents requested in the County Commission's Second Set of Requests for Production of Documents and Things are directly relevant to the determination of whether "racial considerations were a motivating factor behind those desires." *City of Birmingham, Michigan*, 538 F. Supp. 819 at 828.

On or about October 24, 2012, the State Defendants filed their Response to the County Commissions Second Set of Requests for Production of Documents and Things. The State Defendants declined to produce even a single document; and, as discussed herein, instead chose to raise a variety of objections.[1]  None of the State's Objections have any merit.

---

[1] As noted in the Certificate of Consultation included with this Motion, the State Defendants have now agreed to produce responsive documents from the Governor's Office. As a result, this Motion now only seeks production of responsive documents from the General Assembly.

## ARGUMENT

I.  **The State's Objection that the Tennessee General Assembly Is Not A Named Defendant in this Litigation is Without Merit and Does Not Allow the State Defendants to Decline to Produce Documents Responsive to the County Commission's Request.**

In attempting to avoid complying with its discovery obligations in this matter, the State Defendants have attempted to draw an improper and arbitrary line between themselves and other highly relevant divisions of the State—namely, the General Assembly.  As discussed above, this case centers upon whether the Municipal School Acts—each an Act of the 107th General Assembly—are unconstitutional.  In challenging these Acts, the County Commission correctly named as a defendant, the Attorney General, who is the legal representative of, *inter alia*, the State of Tennessee, the Governor of Tennessee, and the General Assembly, as well as the individuals against whom injunctive relief is sought.  The practice of naming such defendants in similar actions is well accepted.  *See e.g., Mayhew v. Wilder*, 46 S.W.3d 760, 775 n.1 (Tenn. Ct. App. 2001) (noting that the Attorney General, the Comptroller, and the Treasurer were named parties although there were no allegations of their wrongdoing because injunctive relief against enforcement of a Bill was sought against them).  However, despite the County Commission's proper pleading, the State Defendants have asserted the novel position that because the General Assembly was not a named Defendant in this lawsuit, its records and documents (that are in the custody and control of the State) are immune from production.[2]  The State Defendants' position is incorrect.

First, the Attorney General is the legal representative of the State of Tennessee, the Governor of Tennessee, and the General Assembly and the records of each are under the "control" of the Attorney General.  The Attorney General is the chief executive officer of the

---

[2] In fact, it is uncertain whether the General Assembly, the Senate, or the House of Representatives could ever be sued for prospective or declaratory relief.  *See, e.g., Mayhew*, 46 S.W.3d at 775 n.1.

Legal Department of state government. *See* Tenn. Code Ann. §§ 4-3-111, 4-3-1502, and 8-6-102. Therefore, by statute, the Attorney General is responsible for "[t]he trial and direction of all civil litigated matters and administrative proceedings in which the state of Tennessee or any officer, department, agency, board, commission or instrumentality of the state may be interested." Tenn. Code Ann. § 8-6-109(b)(1). In this regard, the Attorney General "shall represent all offices, departments, agencies, boards, commissions or instrumentalities of the state now in existence or which may hereafter be created," Tenn. Code Ann. § 8-6-301(a), and shall "direct and supervise all investigations and litigation necessary to the administration of the duties of the various offices, departments, agencies, boards, commissions or instrumentalities of the state, and no such entities shall institute any civil proceeding except through the [A]ttorney [G]eneral and [Reporter]." Tenn. Code Ann. § 8-6-301(b). In addition to the Attorney General's role as the State's principal litigator, the Attorney General is obligated to give the governor, secretary of state, comptroller of the treasury, members of the general assembly and other state officials, when called upon, legal advice and formal written opinions regarding the official discharged of their duties. Tenn. Code. Ann. § 8-6-109(b)(5), (6). Moreover, **"[a]ll legal services required by such offices, departments, agencies, boards, commissions or instrumentalities of the state shall be rendered by, or under the direction of, the [A]ttorney [G]eneral and [R]eporter**." Tenn. Code Ann. § 8-6-301(a) (emphasis added).[3]

---

[3] In fact, Fed. R. Civ. P. 5.1 requires "A party that files a pleading, written motion, or other paper drawing into question the constitutionality of a federal or state statute must promptly: … serve the notice and paper on the … state attorney general if a state statute is questioned[.]" Similarly, Tenn. R. Civ. P. 4.04(6) provides that "The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary. Service shall be made as follows: … Upon the state of Tennessee or any agency thereof, by delivering a copy of the summons and of the complaint to the attorney general of the state or to any assistant attorney general." Additionally, Tenn. Code Ann. § 29-14-107 provides that "In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and **if the statute**, ordinance, or franchise is of statewide effect and **is alleged to be unconstitutional, the attorney general and reporter shall also be served with a copy of the proceeding and be entitled to be heard.**" (emphasis added).

Given these statutorily mandated duties and powers, it cannot be seriously questioned that the Attorney General has "control" over the records of the General Assembly. In fact, Courts have previously done precisely what the State Defendants argue cannot be done in this matter, namely ordering the production of documents in the possession of the Governor and his staff, despite the fact that only separate departments of the state were named defendants. *See, e.g., John B. v. Goetz*, No. 3:98-0168, 2010 WL 8754110, at *103 (M.D. Tenn. Jan. 28, 2010) (finding that "Defendants d[id] not cite any legal authority to exclude the Governor from discovery and such exclusion runs counter to the Supreme Court's principle that 'there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule.'") (citing *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996); *see also id.* at *99 ("Nor does it make any sense to allow the state, under whose color of authority officers have allegedly violated rights, to limit unilaterally the availability of evidence.") (citing *Logenbach v. McConigle*, 750 F. Supp. 178, 180-81 (E.D. Pa. 1990)).

As a result of the foregoing, it is evident that records from the General Assembly are under the "control" of, and readily available to, the Attorney General—its legal representative. Therefore, because it is well-established that Fed. R. Civ. P. 34(a) permits document request for documents in a party's possession, custody or control, such documents must be produced. *See, e.g., John B. v. Goetz*, No. 3:98-0168, 2010 WL 8754110, at *58 (M.D. Tenn., Jan. 28, 2010) (finding it is well-established that Fed. R. Civ. P. 34(a) permits document request for documents in a party's possession, custody or control, such documents must be produced). "Control" has been broadly construed to mean "the legal right, to obtain the documents requested upon demand ... even though [the party] presently may not have a copy of the document in its possession." *Id.*

9

(citing 7 Moore's Federal Practice at § 34.14[2][b] (Matthew Bender 3d Ed.)); *see also In re NTL, Inc. Securities Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) (sanctioning a defendant who argued that ESI were not in their control because a nonparty with whom the defendant contracted had the ESI, and noting that when a duty to preserve evidence arises, a defendant is required to issue a litigation hold to maintain responsive information and materials).   Here, the State Defendants, without authority, object that despite the fact that responsive documents are in their "control" such documents are not required to be produced because the General Assembly is not a party to the instant lawsuit.  As discussed above, this is not the law.  The standard does not look to whether the General Assembly is a party to the lawsuit; but rather, looks at whether the documents requested are in the control of the Attorney General.  In this case, they are.  As such, the State Defendants' attempt to draw arbitrary lines around certain state entities fails on its face.[4]  This is especially true given that direct suit against the General Assembly is impossible. *See Bradley v. Mallory*,  1989 WL 25523, 1 (6th Cir. 1989)("State legislators are entitled to absolute immunity from liability for actions taken in their legislative capacities.").  Instead, to have a law declared unconstitutional and to enjoin it enforcement, courts have long recognized that the State Attorney General is the proper party to sue. *See Cummings v. Beeler*, 223 S.W.2d

---

[4] Notably, the State Defendants' attempt borders on frivolous given the fact that it has statutorily been charged by the General Assembly with providing legal services and representation to numerous state entities.  *See e.g., State Com'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 774 n. 60 (Tenn. Ct. App. 2001) ("It is not uncommon for the General Assembly to instruct the Attorney General to provide legal advice and representation to specific governmental entities.  *E.g.,* Tenn. Code Ann. § 2–10–109(a)(1) (1994) (county election commissions, primary boards, and registrars at large); Tenn. Code Ann. § 2–10–109(a)(3) (Registry of Election Finance); Tenn. Code Ann. § 3–10–105(b) (Supp.2000) (Office of Legislative Services, Office of Legal Services, Office of Legislative Administration, and Office of Management Information); Tenn. Code Ann. § 4–15–101(b) (1998) (Building Commission); Tenn. Code Ann. § 8–7–301 (1993) (District Attorneys General Conference); Tenn. Code Ann. § 8–34–308(a) (1993) (Board of Trustees of the Tennessee Consolidated Retirement System); Tenn. Code Ann. § 12–1–108 (1999) (Department of General Services in condemnation matters other than for roads); Tenn. Code Ann. § 49–50–702 (1996) (Goodwyn Institute); Tenn. Code Ann. § 50–3–905 (1999) (OSHA violations); Tenn. Code Ann. § 62–6–114 (Supp.2000) (Board of Accountancy); Tenn. Code Ann. § 62–13–203(d) (1997) (Real Estate Commission); Tenn. Code Ann. § 62–19–105(b) (1997) (Tennessee Auctioneers Commission); Tenn. Code Ann. § 62–26–303(d) (1997) (Private Investigation Commission); Tenn. Code Ann. § 63–9–111(f) (Supp.2000) (Board of Osteopathic Examination).").

913, 917 (Tenn.1949)(Noting that in action to challenge constitutionality of state statute "the Attorney General is a necessary and proper party defendant to this suit").   Because the documents sought by the County Commission are under the "control" of the Attorney General, the State Defendants have an obligation to preserve and produce those documents.  Independent of the rules of procedure, a legal duty to preserve relevant information arises when a person "knew or should have known that the documents would become material at some point in the future then such documents should have been preserved." *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir.2004).  As to when this duty arises, the federal courts have held that the duty to preserve relevant information clearly arises when a complaint is filed with a court. *See, e.g., Computer Associates Intern., Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 169 (D.Colo.1990); *Telectron Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 127 (S.D.Fla.1987). A duty to preserve may also arise before the filing of the complaint, if a party has notice that litigation of a matter is likely to be filed.  *See, e.g., Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D.Minn.1989); *Alliance to End Repression v. Rochford*, 75 F.R.D. 438, 440 (N.D.Ill.1976). While the duty to preserve does not include evidence that the party "had no reasonable notice of the need to retain." *Danna v. New York Tel. Co.*, 752 F.Supp. 594, 616 n. 9 (S.D.N.Y.1990), it includes information that party "has control and reasonably knew or could reasonably foresee was material to a potential legal action." *Krumwiede v. Brighton Associates, LLC*, No. 05 C 3003, 2006 WL 1308629 at *8 (N.D.Ill. May 8, 2006) (citations omitted).  Finally, this preservation duty extends to potential evidence relevant to the issues in the action, including electronic information. *Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004).

It cannot be seriously contested that communications between the General Assembly and citizens within Shelby County were not reasonably known or reasonably foreseen to be material

to an action challenging the constitutionality of legislative acts because the passage of the Acts were motivated, in part, by race. As such, the documents sought by the County Commission in its Second Set of Requests for Production of Documents and Things should have been both retained by the various departments of the State of Tennessee, including the Attorney General's Office, and produced in response to the County Commission's requests. Therefore, the County Commission respectfully requests this Court order the State Defendants to produce such documents.

II. **NEITHER THE DELIBERATIVE PROCESS PRIVILEGE NOR THE LEGISLATIVE PRIVILEGE ARE APPLICABLE TO THE STATE DEFENDANTS IN THIS MATTER AND THEREFORE DO NOT ALLOW THE STATE DEFENDANTS TO DECLINE TO PRODUCE DOCUMENTS RESPONSIVE TO THE COUNTY COMMISSION'S REQUEST.**

The State Defendants have also declined to respond to Request No. 1 of the County Commission's Request for Production of Documents by asserting that the documents requested are protected by the deliberative process and Speech and Debate Clause privileges. Neither privilege may be asserted to shield the documents requested.

A. *The Speech or Debate Clause Privilege*

"For more than three centuries it has now been recognized as a fundamental maxim that the public ... has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950) (citations omitted)).

The Speech and Debate Clause is derived from the federal Constitution. The Clause states, in pertinent part, that "for any Speech or Debate in either House," federal lawmakers "shall not be questioned in any other Place." U.S. Const. art. I, § 6, cl. 1. The federal Speech or

12

Debate Clause does not apply to state or local legislators. *See Doe v. Nebraska*, 788 F. Supp. 2d 975, 984 (D. Neb. 2011) ("The Speech and Debate Clause only applies to members of Congress and Senators and does not, by its plain language, apply to state legislators."); *Florida Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 164 F.R.D. 257, 266 (N.D. Fla. 1995) ("[T]he Speech and Debate Clause does not apply at all to state and local legislators."); *Committee for Fair & Balanced Map. v. Illinois State Board of Elect.*, 2011 WL 4837508, at *5 (N.D. Ill. Oct. 12, 2011) ("The Speech and Debate Clause, by its terms, does not apply at all to state and local legislators.")

It is well-settled that when jurisdiction is premised upon a federal question, privilege is a matter of federal law. *See Hancock v. Hobbs*, 967 F.2d 462, 467 (11th Cir. 1992). Because jurisdiction in this case is premised upon federal law, i.e., the Equal Protection Clause and 42 U.S.C. § 1983, the State Defendants may not assert a privilege pursuant to Article I, Section 6 of the United States Constitution.

Thus, for purposes of this Motion, the County Commission assumes that the State Defendants are attempting to assert the Speech and Debate Clause privilege contained in the Constitution of the State of Tennessee. Article II, Section 13 of the Tennessee Constitution provides:

> Senators and representatives shall, in all cases, except treason, felony, or breach of the peace, be privileged from arrest during the session of the General Assembly, and in going to and returning from the game; and for any speech or debate in either House, they shall not be questioned in any other place.

Tennessee Courts look to federal courts for guidance on how Tennessee's Speech and Debate Clause should be interpreted. *See Mayhew v. Wilder*, 46 S.Wl.3d 760, 774 (Tenn. Ct. App. 2001). An answer to the question of whether the Speech and Debate Clause privilege applies in this case can be found in *United States v. Gillock*, 445 U.S. 360, 100 (1980). In

13

*Gillock*, a Tennessee state senator was federally indicted and charged with accepting money for, among other things, using his influence to try to block the extradition of a criminal defendant from Tennessee to Illinois. Senator Gillock filed a pre-trial motion to suppress all evidence related to his legislative activities pursuant to the Speech and Debate Clause found in the Constitution of the State of Tennessee. The district court granted the motion, relying on Rule 501 of the Federal Rules of Evidence. In essence, the district court reasoned that a federal common law privilege comparable to that afforded to federal legislators under the Speech and Debate Clause applied to state legislators. *See Gillock*, 445 U.S. at 362–63.

In evaluating the district court's decision, the Supreme Court considered two arguments in support of a privilege for state legislators: (1) that the privilege was ensconced in the federal common law and (2) that the Tennessee privilege was "compelled by principles of federalism rooted in our constitutional structure." *Gillock*, 445 U.S. at 366. The Court rejected both contentions. As to the federal common law, the Court observed that an earlier effort to amend the Federal Rules of Evidence had included nine specifically enumerated privileges. *See id.* at 367. The Court reasoned that the absence of a legislative privilege from the proposed rules "suggest[ed] that the claimed privilege was not thought to be either indelibly ensconced in our common law or an imperative of federalism." *Gillock*, 445 U.S. at 368. The Court further determined that the existence of a state law privilege in Tennessee's constitution did not mandate a different result. *Id.*

While *Gillock* discussed the Speech and Debate Clause in the context of a criminal prosecution of a state legislator, the Court's analysis is equally applicable in the civil context. In *Gillock*, the Court explained that "[t]wo interrelated rationales underlie the Speech and Debate Clause: first, the need to avoid intrusion by the Executive or Judiciary into the affairs of a

14

coequal branch, and second, the desire to protect legislative independence." Id. at 369 (internal citation omitted). The court noted that the first rationale "rest[s] solely on the separation of powers doctrine, [and] gives no support to the grant of a privilege to state legislators in federal criminal prosecutions ." Id. at 370. With respect to the second rationale, "the need to insure legislative independence," the Court acknowledge that in Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), "this Court was cognizant of the potential for disruption of the state legislative process" when it "held that a state legislator's common-law absolute immunity from civil suit survived the passage of the Civil Rights Act of 1871." Gillock, 445 U.S. at 372. The Court distinguished Tenney, however, because "[t]he issue there . . . was whether state legislators were immune from civil suits for alleged violations of civil rights under 42 U.S.C. § 1983." Gillock, 445 U.S. at 371. (emphasis supplied). The Court opined "that although principles of comity command careful consideration, our cases disclose that where important federal interests are at stake . . . comity yields." Id.

Here, the principle of separation of powers is not a concern because the Tennessee Legislature and the federal judiciary are not coordinate, equal branches of government. To the extent that the State Defendants intend to rely on Tenney, the Court there addressed immunity from suit, not an evidentiary privilege that would prevent a state legislator from producing documents. Certainly, the threat of interference with the legislative process is greater when a state legislator is called upon to defend him or herself against a lawsuit than when he or she is asked to comply with a document request in a civil case. Therefore, this Court should not extend the immunity from suit to an evidentiary privilege in this case. Moreover, Defendants have already provided the complete legislative history of the Schools Acts without any objection

15

based on privilege. For these reasons, the Court should compel the State Defendants to comply with the County Commission's discovery request.

### B. The Deliberative Process Privilege

The State Defendants also assert the "deliberative process privilege" in its response to the County Commission's discovery request. As an initial matter, the deliberative process privilege is a qualified privilege that "only protects documents which are both (1) pre-decisional and (2) deliberative." *See Qamhiyah v. Iowa State Univ. of Science and Tech.*, 245 F.R.D. 393, 396 (S.D. Iowa 2007) (citations omitted). Even where the deliberative process privilege does apply, "it may be overcome by a showing that the non-governmental party's need for the information outweighs the government's interest in non-disclosure." *Id.* (citations omitted).

Importantly, however, in cases "where the law casts a light on the deliberative process itself **there is no room for the privilege**." *Id.* at 397 (emphasis added).

> If the plaintiff's cause of action is directed at the government's intent ... it makes no sense to permit the government to use the privilege as a shield. For instance, it seems rather obvious to us that **the privilege has no place in a ... constitutional claim for discrimination**. ... **[I]f either the Constitution or a statute makes the nature of governmental official's deliberations *the* issue, the privilege is a nonsequitur.** The central purpose of the privilege is to foster government decision-making by protecting it from the chill of potential disclosure . . . . **If Congress creates a cause of action that deliberately exposes government decision-making to the light, the privilege's raison d'etre evaporates**.

*In re Supoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) (italics in original, additional emphasis added) (citations omitted).

"**Thus, the deliberative process privilege simply does not apply in civil rights cases in which the defendant's intent to discriminate is at issue**." *United States v. Lake County Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005) (emphasis supplied). In such cases, "the

16

privilege does not enter the picture at all" and, therefore, there is "no need to engage in the balancing test applied in deliberative process privilege cases." *In re Supoena Duces Tecum*, 145 F.3d at 1424.

Here, the intent to discriminate is clearly at issue. As such, the deliberative process privilege simply does not apply. Accordingly, the State Defendants should be compelled to comply with the County Commission's discovery requests.

## CONCLUSION

For all of the above reasons, the County Commission respectfully asks this Court for an Order compelling the State Defendants to fully and completely respond to the County Commission's Second Set of Requests for Production of Documents and Things within 5 business days.

Respectfully submitted this 7th day of November, 2012.

BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.

/s/ Lori H. Patterson
Leo Bearman, Jr. (#8363)
David L. Bearman (#17876)
Lori H. Patterson (#19848)
Imad  I. Abdullah (#24285)
Gabriel P. McGaha (#27413)
Matthew G. White (#30857)
165 Madison Avenue, Suite 2000
Memphis, Tennessee  38103
Telephone:  (901) 526-2000
Facsimile:  (901) 577-0717
lbearman@bakerdonelson.com
dbearman@bakerdonelson.com
lpatterson@bakerdonelson.com
gmcgaha@bakerdonelson.com
iabdullah@bakerdonelson.com
mwhite@bakerdonelson.com

*Attorneys for The Board of Commissioners
of Shelby County Tennessee*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 7th day of November, 2012, a true and exact copy of the foregoing was filed using the CM/ECF system and will be sent by operation of the Court's electronic filing system to all counsel indicated on the electronic filing receipt.

/s/ Lori H. Patterson